**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

LAZY S RANCH PROPERTIES, LLC, an Oklahoma limited liability company,

Plaintiff,

v.

VALERO TERMINALING AND DISTRIBUTION COMPANY; VALERO PARTNERS OPERATING CO. LLC; and VALERO PARTNERS WYNNEWOOD, LLC,

Defendants.

Case No. 19-cv-425-JWB

**DEFENDANTS' PRELIMINARY MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES**

## I. INTRODUCTION

Plaintiff owns the Lazy S Ranch located in Carter County, Oklahoma which is traversed by a pipeline owned by Defendants. Plaintiff is asserting claims against Defendants based upon alleged contamination at its Ranch. The gist of Plaintiff's claims is that because Plaintiff has found parts-per-billion amounts of hydrocarbons on its Ranch, Defendants' pipeline must be the source and must have been leaking for several years. However, ***Plaintiff has not identified any place where Defendants' pipeline is leaking on its Ranch***. Without a fact witness who can testify about the existence of a pipeline leak anywhere on its Ranch, or sampling/data that points to the location of a pipeline leak, Plaintiff leans on a group of experts to support its theory of environmental contamination and harm, working backwards in an attempt to connect dots and meet Plaintiff's desired conclusions.[1] Plaintiff then extrapolates those findings to create a site-wide cleanup worth tens of millions of dollars. However, given the lack of evidence supporting Plaintiff's claims, its team of experts depart from accepted methodologies and work from numerous baseless assumptions to reach misleading, speculative, unsupported, and/or distorted results. Accordingly, the Court should not allow these experts to testify.

Plaintiff has identified six (6) expert witnesses to opine on matters related to pipeline integrity, the condition and remediation of soil, surface water, groundwater, and air at the Ranch, the present market value of the Ranch, and damages. Defendants have identified eight (8) expert witnesses in response to Plaintiff's disclosed experts. As a collective, all of these experts have produced twenty-one (21) expert reports. However, as of the date of this filing, ***none*** of the fourteen (14) expert witnesses identified by the parties have been deposed or scheduled for deposition.

In recognition of this fact, and various other examples of the disconnect between the schedule and the current state of this case, Defendants have filed multiple motions seeking to vacate the June 7, 2022, trial date and all pretrial deadlines. *See, e.g.*, Doc. Nos. 204, 207, and

---

[1] *See, e.g.,* Plaintiff's May 9, 2022, Motion for Partial Summary Judgment which contains purported "Undisputed Material Facts" that depend on testimony from Plaintiff's experts. *See* Doc. No. 212 at UMF Nos. 21, 22, and 24.

215.[2] As more fully set forth in those filings, multiple pending motions will have a material effect on the scope of fact discovery, expert discovery, and the evidentiary record. For example, the Court's disposition of several pending filings may materially alter the scope of, and/or the evidentiary basis for, Plaintiff's proffered expert testimony[3] and whether Trae Jennings Miller III will be permitted to offer expert testimony on behalf of Plaintiff.[4]

However, these various motions are still pending and today is the current deadline for parties to file *Daubert* motions. Therefore, in an abundance of caution, Defendants are filing this Motion to preliminarily identify, challenge, and preserve arguments related to whether Plaintiff's proffered experts and/or expert and rebuttal opinions would be inadmissible evidence at trial. Defendants expressly reserve their right to amend and/or supplement this filing following resolution of pending motions and as information is obtained through expert depositions or further discovery in this case so that this Court can make decisions upon a full record.

## II. STANDARD OF REVIEW

Federal Rule of Evidence 702 provides the basic framework for the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. ("FRE") 702

---

[2] Defendants have also filed a motion requesting the Court to set this matter for a status conference to provide the Court and the parties an opportunity to discuss a new pretrial schedule and trial date that reflects the needs of this case. *See* Doc. No. 205.

[3] *See* Plaintiff's March 15, 2022, filing of Supplemental Materials to be Considered With J. Berton Fisher's Expert Report. *See* Doc. Nos. 142, 143, 144; Defendants' March 17, 2022, Emergency Response in Opposition to Plaintiff's "Motions" to Supplement Expert Disclosures (Doc. No. 145); and Dr. Geoffrey Canty's Motion to Quash Subpoena Duces Tecum (Doc. No. 214).

[4] *See* Defendants' March 8, 2022, Motion to Disqualify at Doc. No. 133.

Because Rule 702 contemplates "regulation of the subjects about which an expert may testify," the Supreme Court has established a "gatekeeping role for the [trial] judge." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 597 (1993). In performing the "gatekeeper" function, a trial court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver and Rio Grande W.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citing *Daubert*, 509 U.S. at 592). As the Supreme Court has stated, admissible expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is actually known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590.

In assessing whether an expert satisfies the requirements of Federal Rule of Evidence 702, "the proponent of the expert proffer bears the burden of establishing admissibility by a preponderance of proof." *Daubert*, 509 U.S. at 592 n. 10; accord Ralston, 275 F.3d at 965 n. 4 ("The Plaintiffs have the burden of proving that the testimony of their expert witness is admissible pursuant to Fed. R. Evid. 702 and the standards set forth in Daubert."). To determine whether an expert opinion is admissible, a district court must undertake a two-part analysis. First, the court must determine whether "the expert [is] qualified by 'knowledge, skill, experience, training, or education' to render an opinion," and, second, if the expert is so qualified, "whether [the expert's] opinions [are] 'reliable' under the principles set forth under Daubert." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

Within the "reliability" prong is a mandate that the testimony both must be "reliable" and have a proper "fit" to the facts of the case. As the Tenth Circuit has stated, "the Daubert standard ensures that the proffered evidence is both 'reliable' and 'relevant.' Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002) (internal citations omitted); *Skycam, Inc. v. Bennett*, 2011 WL 2551188, at *2-4 (N.D. Okla. June 27, 2011) (describing test as a "two-prong" inquiry that requires the court to assess the "reliability" of the testimony and its "fit," or relevancy "to the task at hand").

In assessing the "fit" of the proffered testimony, a court must determine "whether the [expert's] reasoning or methodology can be properly applied to the facts in issue." *Daubert*, 509

U.S. at 593. The court must "look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler v. AO Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004). Moreover, "[i]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel*, 215 F.3d at 1088. "[A]n expert's conclusions may be subject to particular scrutiny when they move beyond the boundaries of rational inference into the realm of speculation." *Ingram v. Solkatronic Chemical, Inc.*, No. 04-CV-0287, 2005 WL 3544244, at *8 (N.D. Okla. Dec. 28, 2005); *accord Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 2013 WL 441453, at *32 (S.D. Tex. 2013 Feb. 5, 2013) (noting that where "experts' testimony piled 'speculation on speculation and inference on inference,'" it may be excluded or disregarded by the court). In assessing "fit" or "relevance," the Supreme Court has stated:

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert.

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Tenth Circuit has affirmed that "the expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1205 (10th Cir. 2002) citing Gen. Elec., 522 U.S. at 147. "[A]ny step that renders the analysis unreliable renders the expert's testimony inadmissible." *Palmer v. Asarco Inc.*, 2007 WL 2381242, at *2 (N.D. Okla. Aug. 13, 2007). Here, Plaintiff's experts make broad assumptions and impermissible leaps that render their testimony inadmissible.

## III. ARGUMENT

### A. Some or All of Dr. Fisher's Testimony is Inadmissible

#### 1. Preliminary Statement of Reasons Why Dr. Fisher's Testimony is Inadmissible

Plaintiff's expert, Dr. J. Berton Fisher, opines on the existence and cause of alleged contamination at the Ranch. Each of these opinions is inadmissible because it departs from accepted scientific methodology, is unsupported by the facts, and impermissibly reaches misleading conclusions from limited data through speculation. Accordingly, Dr. Fisher's testimony is neither relevant nor fit.

Defendants have not yet had an opportunity to depose Dr. Fisher. Therefore, Defendants' challenge to the admission of Dr. Fisher's testimony is necessarily limited. Defendants hereby reserve their right to challenge the admissibility of Dr. Fisher's testimony after Defendants have an opportunity to test his methodology and opinions through deposition questioning.

As a threshold matter, Dr. Fisher's opinions rest, in large part, on the novel use of passive or unproven environmental sampling technology. For example, Dr. Fisher has used "Bio-Trap Samplers" to support his conclusions regarding the presence and extent of hydrocarbon contamination in groundwater beneath the Ranch. However, Dr. Fisher's unconventional use of this technology is not supported in the literature, and has not been peer-reviewed. The sampling cannot be replicated, nor was it provided to Defendants for analysis.[5]

Dr. Fisher is also offering opinions on causation which are based on his analysis of the geophysical properties of the Ranch. Dr. Fisher employed an "electric resistivity" survey of the geological features beneath the Ranch to develop this opinion on a potential pathway through which hydrocarbons from Defendants' pipeline could have traveled beneath Plaintiff's Ranch. Dr. Fisher's use of this survey technique was flawed in multiple ways, and generates an interpretation that is equally flawed and misleading. Dr. Fisher relies on multiple assumptions to reach these misleading conclusions, including the assumption that the Valero Pipeline is leaking. Again, ***Dr. Fisher cannot point to a single place where Defendants' pipeline has leaked on Plaintiff's Ranch***. Therefore, Dr. Fisher's opinions in this regard would not be helpful to the jury because the jury should not be tasked with considering hypothetical claims based on questionable science, novel methodology, and "leaks" never proven to exist.

Specifically, Dr. Fisher opines that:

1) The Arbuckle-Simpson Aquifer is contaminated by refined petroleum product hydrocarbons released from Valero's 12-inch petroleum products pipeline that crosses the Lazy S Ranch.

    a) This opinion is conclusory, unreliable as it is unsupported by data, is scientifically invalid and based upon flawed sampling and analysis, is contrary to regulatory requirements, and is based upon speculation and flawed assumptions. *See* FRE 702(b)-(d). As with all of Dr. Fisher's opinions that rely on the assumption that the Valero Pipeline is leaking (all opinions except Opinion Two and Opinion Four), Dr. Fisher's opinion is inadmissible

[5] Although Defendants' experts have identified these flaws in Dr. Fisher's novel methodology and thus, why his opinions resulting therefrom are unreliable, Defendants still need to depose Dr. Fisher to test his asserted justification for this approach and to fully develop a record that will support Defendants' challenge to the admissibility of Dr. Fisher's opinions in this regard.

because he fails to properly account for alternative explanations, and his opinion is not supported by the facts of the case. *Id.* Similarly, as with all opinions relying on sampling data, Dr. Fisher fails to rely on generally accepted, peer-reviewed, replicable sampling methods. *Id.* Valero challenges all such opinions below as if these FRE 702 arguments were incorporated therein.

2) Tulip Springs on the Lazy S Ranch discharges groundwater from the Arbuckle-Simpson Aquifer, the source of drinking water for nearly 40,000 persons.

   a) This opinion is irrelevant and disconnected from the facts of this case such that it will not be helpful to a trier of fact. *See* FRE 702(a). In addition, this opinion is unreliable as it is unsupported by data, misleading, and is based upon speculation. *See* FRE 702(b)-(d).

3) Groundwater flowing from Tulip Springs and other springs discharging groundwater from the Arbuckle-Simpson Aquifer on the Lazy S Ranch is contaminated by refined petroleum product hydrocarbons released from the Valero Pipeline.

   a) This opinion is unreliable as it is unsupported by data, is conclusory, impermissibly extrapolates to draw its conclusion, is scientifically invalid and based upon flawed sampling and analysis, and is based upon speculation. *See* FRE 702(b)-(d).

4) Air flowing from Tulip Springs on the Lazy S Ranch is contaminated by refined petroleum product hydrocarbon gases.

   a) This opinion is irrelevant to the claims in the case as it is unrelated to the Valero Pipeline. *See Id.* at 702(a). This opinion is unreliable as it is unsupported by data, is scientifically invalid and based upon flawed sampling and analysis, is contrary to regulatory requirements, and is based upon speculation. *See* FRE 702(b)-(d).

5) The Arbuckle-Simpson Aquifer beneath the Lazy S Ranch is contaminated by refined petroleum product hydrocarbons released from the Valero Pipeline; and

6) Soil within the Valero Pipeline corridor on the Lazy S Ranch is contaminated with refined petroleum product hydrocarbons released from the Valero Pipeline.

   a) As to Opinions Five and Six, the opinions are unreliable as unsupported by data, scientifically invalid and based upon flawed sampling and analysis, contrary to regulatory requirements, conclusory, and based upon speculation. *See* FRE 702(b)-(d). There is also no tie to the Valero Pipeline and/or refined products and the alleged contamination referenced in these opinions. *See* FRE 702(a).

7) The source of the refined petroleum hydrocarbon contamination of groundwater and air flowing from Tulip Springs and water flowing from other springs on the Lazy S Ranch and the refined petroleum hydrocarbon contamination in soil is releases from the Valero Pipeline.

   a) This opinion is unreliable as it is unsupported by data, is scientifically invalid and based upon flawed sampling and analysis, is contrary to regulatory requirements, and is based

upon speculation. *See* FRE 702(b)-(d). The opinion fails to properly account for alternative sources and impermissibly extrapolates to an unsupported conclusion. *Id.*

8) The Valero Pipeline on the Lazy S Ranch may have been releasing refined petroleum product hydrocarbons to the environment for many years.

   a) The "Opinion" that the Pipeline "may have" done anything is so speculative as to be irrelevant to assisting a trier of fact in this case and is inadmissible on that basis. *See* FRE 702(a). Similarly, "may have" opinions do not rise to requisite level of scientific certainty required for an admissible expert opinion. *See* FRE 702(b)-(d). In addition, this opinion is unreliable as it is unsupported by data, is scientifically invalid and based upon flawed sampling and analysis, is contrary to regulatory requirements, and is explicitly based upon only speculation and conjecture. *Id.*

9) The nature of the geology of the Lazy S Ranch (through which the Valero Pipeline passes) provides multiple vertical and horizontal pathways for the movement of contaminants from refined petroleum product hydrocarbons leaking from the Valero Pipeline to groundwater.

   a) This opinion is not relevant to the facts of this case because the Valero Pipeline is not leaking. *See* FRE 702(a). In addition, this opinion is unreliable as it is unsupported by data, is scientifically invalid and based upon flawed sampling and analysis as to the resistivity analysis conducted by Dr. Fisher, is contrary to regulatory requirements, and is based upon speculation. *See* FRE 702(b)-(d).

10) The nature of the geology of the Lazy S Ranch through which the Valero Pipeline passes presents a risk to the integrity of the Valero Pipeline.

   a) This opinion is inadmissible because Dr. Fisher is not qualified to evaluate pipeline integrity. *See* FRE 702(a). Further, this opinion is unreliable as it is unsupported by data, is conclusory as to potential integrity "risks," is scientifically invalid and based upon flawed analysis beyond the scope of Dr. Fisher's purported expertise, is contrary to regulatory requirements, and is based upon speculation. *See* FRE 702(b)-(d).

11) Soil and groundwater contaminated by refined petroleum product hydrocarbons released from the Valero Pipeline can be remediated using existing and well known remedial technologies including soil/rock excavation and groundwater pump and treat.

   a) This opinion is unreliable as it is unsupported by data, is scientifically invalid and based upon flawed sampling and analysis, is contrary to regulatory requirements including accepted industry and regulatory cleanup and treatment standards, and is based upon speculation. *See* FRE 702(b)-(d). The opinion is also irrelevant to the facts of the case. *See* FRE 702(a).

Dr. Fisher's rebuttal opinions are similarly unreliable.

## B. Some or All of Dr. Boyle's Testimony is Inadmissible

### 1. Preliminary Statement of Reasons Why Dr. Boyle's Testimony is Inadmissible

Plaintiff has disclosed Dr. Kevin J. Boyle as an expert witness. In his Expert Report, Dr. Boyle opines on the alleged lost market value of groundwater beneath the Lazy S Ranch due to alleged contamination. Like Dr. Fisher, Dr. Boyle's entire report is based on sweeping and conclusory assumptions not based in fact regarding the contamination and any ties to the Valero Pipeline, and the rest of his opinion lacks accepted methodology. *See* FRE 702(b)-(d).

Specifically, Dr. Boyle opines that:

> The loss to the Lazy-S Ranch due to the poorly installed and maintained, leaking Valero pipeline contaminating the groundwater below the ranch is $22,537,045. The loss is directly related to the inadequate maintenance of the pipeline, the ongoing threat it causes and the groundwater contamination it has caused that are preventing the owners from selling the water for a beneficial use, drinking water, without risk that the water is contaminated by petroleum products. My opinion is based on the facts of the case presented by the other plaintiff's experts and the analysis document herewith that follows established practice as outlined in U.S. EPA guidance for economic analyses.

Defendants have not yet had an opportunity to depose Dr. Boyle. Therefore, Defendants' challenge to the admission of Dr. Boyle's testimony is necessarily limited. Defendants hereby reserve their right to challenge the admissibility of Dr. Boyle's testimony after Defendants have an opportunity to test his methodology and opinions through deposition questioning. Notwithstanding the foregoing, Defendants stated that some or all of Dr. Boyle's testimony is not admissible for the reasons set forth below.

Opinions related to installation, maintenance, alleged leaks on the Valero Pipeline, and the fate and transport of any such allegations are not within Dr. Boyle's expertise and his conclusory opinions related thereto are not relevant to assisting the trier of fact. *See* FRE 702(a). In addition, Dr. Boyle is not an appraiser. Instead, Dr. Boyle is an economics professor whose area of expertise lies in estimated non-market valuation techniques such as the "benefits transfer" model, which is primarily used by the Environmental Protection Agency ("EPA") for economic analyses evaluating proposed environmental regulations and policies and is considered by the EPA as a speculative methodology and a last resort to extrapolate impacts when facts needed for other accepted methodologies are not available. *See* FRE 702(b)-(d). Since he is not an appraiser, Dr.

Boyle is not qualified by licensure or experience to develop an opinion of market value. Moreover, Dr. Boyle ignores site data, regulatory standards, and requirements, and attempts to use a "benefits-transfer" model that is misapplied and has a significant rate of error. *Id.* Dr. Boyle's rebuttal opinions are similarly unreliable.

**C. Some or All of Dr. Ede's Testimony is Inadmissible**

**1. Preliminary Statement of Reasons Why Dr. Ede's Testimony is Inadmissible**

Plaintiff has disclosed Kenneth F. Ede, Ph.D., CHMM as an expert witness. In his Expert Report, Dr. Ede opines that:

> The Defendants' Valero Facility 12-inch pipeline (the "Valero Pipeline") that transports refined petroleum products that underlies and traverses the Lazy S Ranch is leaking refined petroleum product hydrocarbons into the environment. These petroleum products have contaminated the groundwater, soil, springs and air on and beneath the Lazy S Ranch.

Dr. Ede's one-opinion report lacks support for his conclusions and assumptions, and is not based in accepted science. *See* FRE 702(b)-(d). In his rebuttal report, Dr. Ede also offers the opinions: (1) in an attempt to demonstrate that the magnitude (total mass) of these man-made petroleum pollutants is significant; and (2) it is extremely improbable for the specific organic molecules observed at Tulip Springs to exist for any long period of time making the identified potential "multiple sources" also extremely improbable. These opinions, like those from his Expert Report, are not reliable, not based upon a scientifically valid approach, and are speculative. *Id.* The opinions run counter to accepted science, are misleading, and based on broad assumptions not supported by the facts of this case. *Id.*

Defendants have not yet had an opportunity to depose Dr. Ede. Therefore, Defendants' challenge to the admission of Dr. Ede's testimony is necessarily limited. Defendants hereby reserve their right to challenge the admissibility of Dr. Ede's testimony after Defendants have an opportunity to test his methodology and opinions through deposition questioning. Some or all of Dr. Ede's testimony is inadmissible because it is not based upon sufficient facts or data, is based on a flawed background "understanding" of the site, it is the product of unreliable principles and methods, and because Dr. Ede has not applied the principles and methods reliably to the facts of this case. *Id.*

### D. Some or All of Dr. Macbeth's Testimony is Inadmissible

#### 1. Preliminary Statement of Reasons Why Dr. Macbeth's Testimony is Inadmissible

Plaintiff has disclosed Tamzen W. Macbeth, P.E., PhD, BCEE as an expert witness. Dr. Macbeth's testimony is inadmissible because it is not based on a scientific methodology, relies on broad, flawed assumptions, is speculative, and unsupported by the facts here. *See* FRE 702(b)-(d). To the extent the report relies on any generally accepted methods of evaluating contamination overall, the opinion is rendered inadmissible and irrelevant by the speculation and assumptions underlying those conclusions that make the findings factually inapplicable and confusing to a trier of fact. *See* FRE 702(a). In her Expert Report, Dr. Macbeth opines that:

> Given the extent of pollution from refined petroleum products on and beneath the Lazy S Ranch property, the estimated cleanup cost in terms of total cost is $43,292,000 which includes escalation rate of 3.2% over 30 years of operation and the Total Present Value is $35,814,000 assuming a discount rate of 2.25%.

Defendants have not yet had an opportunity to depose Dr. Macbeth. Therefore, Defendants' challenge to the admission of Dr. Macbeth's testimony is necessarily limited. Defendants hereby reserve their right to challenge the admissibility of Dr. Macbeth's testimony after Defendants have an opportunity to test her methodology and opinions through deposition questioning. Dr. Macbeth's opinions must be excluded because the methodology expressed in her expert report does not comply with standards and controls, nor is it accepted in the scientific community. Dr. Macbeth fails to consider relevant regulatory requirements, process, and cleanup standards, and Dr. Macbeth fails to consider site environmental analytical data demonstrating that there are no impacts to soil, groundwater, springs, and cattle supply wells above cleanup criteria. *See* FRE 702(a). The report impermissibly relies on broad assumptions and is unsupported by and often in direct conflict with the facts of the case. *See* FRE 702(b)-(d).

### E. Some or All of Mr. Miller's Testimony is Inadmissible

#### 1. Preliminary Statement of Reasons Why Mr. Miller's Testimony is Inadmissible

Plaintiff has disclosed Trae Jennings Miller III as an expert witness. Some or all of Mr. Miller's testimony is inadmissible because it is not based upon sufficient facts or data, it is the product of unreliable principles and methods, and because Mr. Miller has not applied the principles and methods reliably to the facts of this case. Mr. Miller's rebuttal opinions are similarly

unreliable. *See* FRE 702(b)-(d). Mr. Miller also opines on entirely irrelevant issues not related to the alleged contamination in the case or the Valero Pipeline at all. *See* FRE 702(a). In his Expert Report, Mr. Miller opines that:

1) The 12" Valero to Wynnewood Pipeline is leaking.

    a) This opinion is inadmissible as conclusory, unreliable as it is unsupported by data, is scientifically invalid, counter to the facts of the case, and is based upon speculation. *See* FRE 702(b)-(d).

2) Given the highest number of dents and extremely high number of corrosion anomalies are upon the Lazy S Ranch, particularly in the Arbuckle Mountain uplift area, there is at least one, if not several, smaller seeps upon the Lazy S Ranch property.

    a) To the extent the location of anomalies is accurate at all, the opinion is irrelevant as to leaks and contamination alleged in this case and is therefore irrelevant. *See* FRE 702(a). Further, this opinion is unreliable as it is unsupported by data, runs counter to industry standards and prior work by Kiefner, is scientifically invalid, is not based on generally accepted methodology, runs counter to regulatory obligations and standards of prudent pipeline operators, is not a peer-reviewed method of evaluating pipeline integrity, is conclusory, and is based upon speculation. *See* FRE 702(b)-(d).

3) The Valero pipeline is visibly leaking at the Mt. Vica Dr. main line valve station (BV2) onto the Lazy S Ranch property; the line is improperly supported; and the line has severe gouges and surface corrosion.

    a) This opinion is inadmissible because valve inspection is irrelevant to the claims and allegations in this case. *See* FRE 702(a). Further, this opinion is unreliable as it is unsupported by data, is factually incorrect, is scientifically invalid, runs counter to industry standards and regulatory requirements for pipeline operators, and is based upon speculation. *See* FRE 702(b)-(d).

4) This pipeline is ~47 years old and was fabricated with custom, thin wall pipe that leaves no room for corrosion over time. Other, thicker wall pipe is more suitable to the terrain crossed by this pipeline; and

5) The choice of thin wall thickness pipe makes this line more susceptible to dents which can cause the pipeline to leak.

    a) Opinion Four and Five are inadmissible as irrelevant to the claims and allegations in this case and misleading to a trier of fact. *See* FRE 702(a). Further, these opinions are unreliable as unsupported by data, conclusory, scientifically invalid and misleading to the extent is suggests a tie to contamination or leaks, factually inaccurate, run counter to generally accepted industry and regulatory standards and prior work by Kiefner on the pipeline, and are based upon speculation. *See* FRE 702(b)-(d).

6) The pipeline has significant corrosion and an additional unusual type of corrosion called selective seam weld corrosion (SSWC) that make it a greater risk and more hazardous to the environment and surroundings;

   a) This opinion is irrelevant and confusing to the extent all instances of SSWC have been mitigated on the Valero Pipeline. *See* FRE 702(a). In addition, this opinion is unreliable as it is unsupported by data including pipeline integrity evaluations and in-line assessments, is scientifically invalid, runs counter to generally accepted industry and regulatory standards, and is based upon speculation. *See* FRE 702(b)-(d).

7) This pipeline generally has very poor protective coatings, which is a violation of PHMSA Code, but, the disbonded coating is more of a problem because it significantly reduces the cathodic protection system from prevent future corrosion damage which cause leaks.

   a) This opinion is irrelevant and confusing to the extent it alleges violations of "PHMSA Code" that do not exist on the Valero Pipeline. *See* FRE 702(a). In addition, this opinion is unreliable as it is unsupported by data and disassociated from the facts of this case, is scientifically invalid, and is based upon speculation.

8) Valero's conducts internal line inspections (ILI) every 3 years out of necessity and the historical "state-of-the-art" smart ILI tool selection by Valero was the wrong tool for the job.

   a) This opinion is irrelevant as not connected to the facts, allegations, or claims in this case. *See* FRE 702(a). Moreover, this opinion is unreliable as conclusory, it is unsupported by data and based on insufficient facts, is scientifically invalid, and is based upon speculation. *See* FRE 702(b)-(d).

9) Valero's leak detection system and emergency flow restricting devices are ineffective against smaller leaks; therefore, it is my opinion that this pipeline is currently seeping (leaking) product into the environment.

   a) This opinion is irrelevant to the facts, claims, and allegations in this case and relies on insufficient data to make a baseless and misleading conclusion. *See* FRE 702(a). Further, this opinion is unreliable as it is unsupported by data, ignores alternative information and data produced in this case, is scientifically invalid, runs counter to generally accepted regulatory and industry standards that govern this precise issue, is conclusory, and is based upon speculation. *See* FRE 702(b)-(d).

10) Valero is unable to accurately calculate the volume of spilled product from their leaks in violation of PHMSA Rule 49 CFR §195.52(c); and

11) Valero has failed to identify the Lazy S Ranch Property as a high consequence area (HCA) in violation of PHMSA code. Valero's Operations, Maintenance and Emergency Procedures Manual for hazardous liquid pipelines demonstrates this failure; and

12) Valero is falsifying documents, e.g., disseminating incorrect information about this pipeline and otherwise removing damaging statements about this pipeline from their reports in an unethical effort to comply with operational records by creating confusion; and

13) Valero's Comprehensive Risk Assessments are understated, incomplete and do not adequately serve to protect this pipeline and the public;

    a) Opinions 10, 11, 12, and 13 are not relevant to Plaintiff's claims and have nothing to do with pipeline integrity or allegations of contamination. *See* FRE 702(a). Further, these opinions are unreliable as unsupported by data, factually incorrect, misleading, scientifically invalid, counter to commonly accepted industry and regulatory standards, conclusory, and based upon speculation. *See* FRE 702(b)-(d).

14) Pipeline repair backfills are not being performed correctly which will continue to unnecessarily cause more future damage to the pipeline and to the Lazy S Ranch Property.

    a) However, this opinion is unreliable as it is unsupported by data, is conclusory, is scientifically invalid, and is based upon speculation. *See* FRE 702(b)-(d).

15) Despite numerous Federal violation notices, Valero continues to operate this pipeline in violation of the PHMSA code and their own IMP/OM&E manuals; and many of PHMSA's Notices of Violation to Valero are consistent with the findings of this report.

    a) This opinion is irrelevant as unrelated to the claims and allegations in this case. *See* FRE 702(a). Further, this opinion is unreliable as it is unsupported by data, conclusory, misstates commonly accepted industry standards and terminology, and is scientifically invalid

Defendants have not yet had an opportunity to depose Mr. Miller. Therefore, Defendants' challenge to the admission of Mr. Miller's testimony is necessarily limited. Defendants hereby reserve their right to challenge the admissibility of Mr. Miller's testimony after Defendants have an opportunity to test his methodology and opinions through deposition questioning. Defendants have also moved to disqualify Mr. Miller based on a conflict of interest from prior confidential communications regarding this pipeline and Defendants' pipeline integrity practices.

## F. Some or All of Mr. Isaacs' Testimony is Inadmissible

### 1. Preliminary Statement of Reasons Why Mr. Isaacs' Testimony is Inadmissible

Plaintiff has disclosed Phillip J. Isaacs as an expert witness. Both of Mr. Isaacs' opinions are inadmissible because they depart from accepted industry methodology and are unsupported by the facts of this case. *See* FRE 702(b)-(d). Specifically, in his Expert Report, Mr. Isaacs provides an estimate of damages to the market value of the Ranch, including land and building improvements, and opines that:

> The building improvements reportedly had deferred maintenance at the time of sale and the current owner invested approximately $750,000 in remodeling and repair. As the contaminated property suffers a change in its Highest and Best Use the $750,000 is considered a market loss and represents the damages to the building improvements.
>
> Based on the differences between the Unimpaired and Impaired Land Values, the Damages to the land …. Total land value damages are $12,300,000.

Defendants have not yet had an opportunity to depose Mr. Isaacs. Therefore, Defendants' challenge to the admission of Mr. Isaacs' testimony is necessarily limited. Defendants hereby reserve their right to challenge the admissibility of Mr. Isaacs' testimony after Defendants have an opportunity to test his methodology and opinions through deposition questioning. Some or all of Mr. Isaacs's testimony is inadmissible because it is not based upon sufficient facts or data, offers little or no explanation for much of his conclusory analysis, it is the product of unreliable principles and methods, and because Mr. Isaacs has not applied the principles and methods reliably to the facts of this case. *See* FRE 702(b)-(d). To the extent it opines on remodeling costs, it is irrelevant to this case. *See* FRE 702(a). Mr. Isaac's rebuttal opinions are similarly unreliable.

## IV. CONCLUSION

For the foregoing reasons, the opinions offered by Plaintiff's expert witnesses are inadmissible under Rule 702 and *Daubert* and its progeny. Defendants reserve their right to supplement this filing following the resolution of pending motions relating to Plaintiff's expert reports after expert discovery has been completed.

By: /s/ *Stephen L. Jantzen*
Stephen L. Jantzen, OBA # 16247
Phillip G. Whaley, OBA # 13371
Grant M. Lucky, OBA # 17398
RYAN WHALEY
400 N. Walnut Ave.
Oklahoma City, OK 73104
(405) 239-6040 Telephone
(405) 239-6766 Facsimile
sjantzen@ryanwhaley.com
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

James F. Bennett, MO Bar # 46826
Megan S. Heinsz, MO Bar # 56377
Matthew E. Johnson, CO Bar # 40984
Philip A. Cantwell, MO Bar # 65505
DOWD BENNETT
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
(314) 889-7300 Telephone
(314) 863-2111 Facsimile
jbennett@dowdbennett.com
mheinsz@dowdbennett.com
mjohnson@dowdbennet.com
pcantwell@dowdbennett.com
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2022, a true and accurate copy of the foregoing was electronically transmitted to the Clerk of Court using the ECF System for filing and transmitting to the following ECF registrants:

David P. Page
Jessica C. Ridenour
Thomas E. Rogers
David Mitchell Garrett, Jr.
Christopher L. Camp
Krystina E. Phillips
Charles E. Geister, III
William A. Johnson
Elizabeth A. Price

By: /s/ *Stephen L. Jantzen*