UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **Lazy S Ranch Properties, LLC, an Oklahoma Limited Liability Company,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )   Case No. 19-cv-425-JWB<br>) |
| **Valero Terminaling and Distribution Company;**<br>**Valero Partners Operating Co. LLC; and**<br>**Valero Partners Wynnewood, LLC,** | )<br>)<br>)<br>) |
| **Defendants.** | ) |

**PLAINTIFF LAZY S RANCH LLC'S *DAUBERT* MOTION TO PRECLUDE**
**EXPERT TESTIMONY OF DEFENDANTS' WITNESS BERT SMITH**
<u>**AND INTEGRATED BRIEF IN SUPPORT**</u>

Plaintiff Lazy S Ranch LLC (Plaintiff or "Ranch") pursuant to Fed. R. Evid. 104 and 702, and *Daubert v. Merrell Dow Pharmaceuticals*, Inc. 509 U.S. 579 (1993), moves this Court for an Order precluding the expert testimony of Defendants' witness Bert Smith ("Mr. Smith") on the subject of Oklahoma law concerning applicable cleanup requirements.

## I.   INTRODUCTORY STATEMENT

Plaintiff owns and runs a cattle operation on 6,150 acres of real property in Carter County, Oklahoma. Defendants ("Valero") operate a thirty-mile Pipeline from their refinery in Ardmore, Oklahoma, north to a product terminal and storage tanks in Wynnewood, Oklahoma (the "Pipeline"). Approximately three miles of the Pipeline runs across the Ranch. Beneath the north and east 2/3 of the Ranch lies the Arbuckle-Simpson Aquifer ("ASA"), a sole source aquifer that provides the sole source of drinking water for the people and landowners residing in the area. A portion of that Pipeline travels directly over the ASA.

1

This case concerns gasoline and diesel fuel leaking from the Pipeline into the fractures, sinkholes, crevices, caves, and voids of the fractured karst aquifer that makes up the Arbuckle Mountains and the ASA on and under the Ranch. These refined petroleum products leaked from the 47-mile, 12-inch Valero Pipeline. The Ranch is seeking compensation and other relief for injuries to its property, including replacement/repair of the Pipeline, remediation of the ASA groundwater located on the Ranch, loss of use and enjoyment of its property, personal annoyance, inconvenience, aggravation, and diminished property value, caused by the leaks in the Pipeline. The Ranch has claims under several legal theories, including negligence, nuisance, trespass, and *res ipsa loquitur*.

Valero's expert Bert J. Smith's Report [Dkt. 171] stated that he "compared the levels of contaminants to regulatory levels and to levels that have been established for cleanup" by regulatory agencies. [Dkt. 171 (Smith Report p. 10, Summary of Opinion (B)]. He further opines that, based on his experience "dealing with regulatory agencies," the pollution present at the Ranch does not "require further investigation or remediation by any regulatory agency." [*Id*. at p. 13, Summary Opinion (N)]. Similarly, his Summary Opinion asserts that the pollution found at Lazy S Ranch is "below any established standard used by *any regulatory agency with jurisdiction*." [*Id*. at p. 13] (Emphasis added). His Summary Opinion S contends that no regulatory agency "would require cleanup based upon trace level [sic] of toluene, TPH or xylenes." [*Id*. at pp. 14, 43, 45, and 47; *see also* Appendix M to Smith's Report (citing Oklahoma Department of Environmental Quality Cleanup guidelines)]. [1] In his deposition, Mr. Smith admits that he cannot render an expert

---

[1] In his report, Mr. Smith relies on and cites the following inapplicable legal authorities to support his opinions:
  1. Oklahoma Water Quality Standards, Title 785, Chapter 45 (OWRB).
  2. General Water Quality, Title 252. Chapter 611 (ODEQ).
  3. Risk-based levels for Total Petroleum Hydrocarbons (TPH), ODEQ, Oct. 2012 (Guidance).

legal opinion on the applicable regulatory clean-up or regulatory standards for contamination because he is not an attorney. [See Exhibit "A" – Deposition of Mr. Smith, p. 206, lines 8-12 and following] As such, Mr. Smith's testimony is based upon his unqualified opinion, which, as discussed below, are incorrect and/or statements of the "law" which cannot assist the jury in resolving the issues in this case.

## II. THE LEGAL FRAMEWORK FOR DETERMINING THE ADMISSIBILITY OF EXPERT WITNESS TESTIMONY: THE COURT'S GATEKEEPER ROLE UNDER *DAUBERT*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 permits testimony only by experts qualified by "knowledge, skill, expertise, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that testimony will "assist the trier of fact in understanding the evidence or in determining a fact in issue." Fed. R. Evid. 702. "In evaluating the admissibility of expert testimony, trial courts are guided by a trilogy of Supreme Court cases: *Daubert*, 509 U.S. at 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); and *General Electric Co. v. Joiner*, 522 U.S. 136 (1997). Together these cases clarify the district court's gatekeeper role under Federal Rule of Evidence 702." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) *cert. denied*, 127 S. Ct. 420 (2006).

In *Daubert*, the Supreme Court held that before the admission of expert testimony, the trial court "must ensure that any and all scientific testimony or evidence admitted is not only relevant

---

4. The OCC Pollution Abatement Department, Oil and Gas Conservation Division, Guardian Guidance for the Assessment and Cleanup of Complex Crude Oil, Condensate, and Other Hydrocarbon Release Sites, Including Historically Impacted Sites, July 2014 (OCC) (Guidance).
5. EPA Primary and Secondary Drinking Water Standards for public drinking water supplies. [Dkt. 171, Appendix D and M]. Below, Plaintiff explains testimonials issues associated with these Smith Opinions.

but reliable." *Daubert*, 509 U.S. at 589. The burden is on the expert testimony's proponent to establish the testimony's admissibility under Rule 702 based on a preponderance of the evidence. *See Id*. at 593 n. 10. In *Kumho Tire*, the Supreme Court "conclude[d] that Daubert's general holding - setting forth the trial judge's general 'gatekeeping' obligation - applies not only to testimony based on 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 141.

Finally, *General Electric* set forth an abuse of discretion standard in reviewing the decision of a district court to exclude or admit expert testimony. *General Electric*, 522 U.S. at 146. "The objective of the [gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony." *Kumho Tire*, 526 U.S. at 152. "The Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable." *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (citing *Kumho Tire*, 526 U.S. at 147) (emphasis added).

Thus, the testimony of an expert, even if found to be reliable under *Daubert*, must be excluded if the proposed testimony is not relevant to an issue in the case. While the district court is required to exercise the gatekeeper function, it retains broad discretion in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment and determining reliability. *Rodriguez-Felix*, 450 F.3d at 1123 (upholding district court's exclusion of expert testimony that did not meet *Daubert's* reliability standards) (internal quotations omitted). However, despite this broad discretion, the Tenth Circuit has held that "a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

In sum, the gatekeeping requirement's objective is to ensure expert testimony's reliability and relevancy. "It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Defendants have not met this burden. Furthermore, the proposed expert testimony also creates a significant risk of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. Consequently, this Court should exclude the proposed expert testimony based upon irrelevant and unreliable standards for analyzing Valero's pollution of the Lazy S Ranch under Oklahoma law.

### III. ARGUMENT AND AUTHORITIES

There are several reasons why Smith should not be permitted to testify concerning applicable clean-up requirements in Oklahoma:

1. Admittedly, he is not a lawyer. Only a lawyer has the requisite expertise to determine applicable legal principles in a lawsuit.;

2. By offering such opinion(s) Smith invades the province of both the Court and the Jury; and

3. Smith, given his lack of education, clearly fails to be informative because he misinterprets and applies inapplicable rules to the circumstances of this case. Thus, this Court should exclude such opinion testimony because it is unreliable, irrelevant, will mislead the jury, and usurps this Court's role as the adjudicator of law in this case and the jury's role as a decision maker.

**A. OKLAHOMA LAW DOES NOT REQUIRE A MINIMUM THRESHOLD OF POLLUTION TO HOLD VALERO LIABLE FOR ITS POLLUTION OF LAZY S RANCH**

It is axiomatic under Oklahoma law that there is no minimum pollution threshold before a polluter may be held responsible for damaging private property. In other words, in the circumstances of this case, *all polluting activity is unlawful* and will support a claim for negligence,

nuisance and/or trespass. Despite this, Valero's expert witness, Mr. Smith, plans to provide testimony stating the exact opposite of this established Oklahoma law. His expert report asserts that Valero is not liable for the pollution on the Lazy S Ranch because it does not exceed "regulatory agency clean-up standards".

Oklahoma was founded on the principle that property owners enjoy certain natural rights respecting property ownership. Indeed, the Oklahoma Constitution has two explicit protections for private property: "No private property shall be taken or damaged for private use, with or without consent of the owner." Okla. Const. Art. 2, § 23. The Oklahoma Constitution also provides: "[n]o person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. Art. 2, § 7. Unlike the law of many states, Groundwater in Oklahoma is considered private property and it is owned by the person who owns the surface of the land under which the water lays. *See*, Okla. Stat. tit. 60 § 60. *See also*, *Messer-Bowers Co., Inc. v. State ex rel. Oklahoma Water Resources Bd.*, 2000 OK 54, ¶ 6, 8 P.3d 877, 879 ("Thus, groundwater and diffuse surface water are owned by the surface landowner subject to beneficial use"). The Plaintiff has not consented to the Defendants taking, damaging, or otherwise using groundwater on the Ranch. Indeed, the Valero easement makes no allowance to Defendants for pollution – in any amount. *See*, Exhibit B, Grant of Easement. Valero's actions have damaged Plaintiff without consent and violated the Constitution and deprived Plaintiff of the use and enjoyment of its property without due process of law, also in violation of the Constitution. In addition to these Constitutional prescriptions, and contrary to Mr. Smith's opinions, the public policy of Oklahoma, its statutes, and its regulations prohibit pollution – regardless of quantity or amount.

The State of Oklahoma, contrary to the opinion of Mr. Smith, has specific antipollution, antidegradation, and restoration policies and positive laws that make the pollution of Plaintiff's Ranch unlawful. These laws include the following:

>   (1) **27A O.S. Sec. 2-6-105 A**: "… [it is] unlawful for any person to cause pollution of waters of the state or place or caused to be placed any wastes where they are likely to cause pollution of any … waters of the state".

Both "pollution" and "waters of the state" are defined terms and broad definitions: "Waters of the State" is defined by State statute to include the ground and spring waters on the Ranch: "[it] means all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems and all other bodies or accumulations of water, surface and underground, natural or artificial, public or private, which are contained within, flow through, or border upon this state or any portion thereof. 82 O.S. §1084.2, and 27A O.S. § 1-1-201(20).

Similarly, "Pollution" has a broad remedial, curative definition that includes the presence in the environment *of any substance*, contaminant, or pollutant, *or any other alteration of the physical, chemical or biological properties of the environment* or the release of any liquid, gaseous or solid substance into the environment in quantities which are or will likely create a nuisance or which render or will likely render the environment harmful or detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, or to property. 27A O.S. § 1-1-201(10). (Emphasis added).

On the other hand, the "Oklahoma Authority" cited by Mr. Smith suggests that an environmental agency, such as the Oklahoma Department of Environmental Quality or the Oklahoma Corporation Commission, is simply *guidance material* where the agency *may choose*

to exercise its discretionary police power and not fully mandate removal of pollution in actions in which it is the agency driving cleanup.

Similarly, Mr. Smith references Oklahoma Water Resources Board (OWRB) rules (Water Quality Standards) to support his view that pollution of the groundwater on the Ranch is not mandated by the OWRB. Again, Mr. Smith is incorrect. Indeed, Oklahoma has adopted antidegradation rules that protect groundwater quality such as the groundwater and springs on the Lazy S Ranch property. These rules are the most stringent anti-pollution legal requirements because they prohibit all groundwater degradation in these circumstances:

> (2) **OAC 785:45-3-1(b):** "It is the policy of the State of Oklahoma to protect all waters of the state from degradation of water quality… "
>
> (3) **OAC 785:45-7-4(b)(1): Criteria for groundwater quality protection**: "The groundwaters of the state *shall be maintained to prevent alteration of their chemical properties by harmful substances not naturally found in groundwater*."

(Emphasis added). Simply put, refined gasoline and diesel fuels are not "naturally found in groundwater".

The Oklahoma Administrative Code also explicitly prohibits pipeline companies like the Valero Defendants from polluting:

> (4) **OAC § 165:10-7-5**: "All operators, contractors, drillers, service companies, pit operators, transporters, pipeline companies, or other persons shall at all times conduct their operations in a manner that will not cause pollution."
>
> (5) **82 O.S. §1084.1: "…** the pollution of the waters of this state constitutes a menace to public health and welfare, creates public nuisances, is harmful to wildlife, fish and aquatic life, and impairs domestic, agricultural, industrial, recreational and

8

>other legitimate beneficial uses of water, it is hereby declared to be the public policy of this state to conserve and utilize the waters of the state and to protect, maintain and improve the quality thereof for public water supplies…"

Given the statutory definitions discussed above, there can be no doubt that Smith's opinions are gravely mistaken and rely on guidance rather than laws and regulations. Despite the above black-letter law statements of the Oklahoma law regarding pollution, Valero's proposed expert disregards the relevant Oklahoma laws under which private property pollution must be analyzed and protected. He also conflates regulatory enforcement with the right of an owner of private property to redress trespass and nuisance injury on private property as if regulators and their practices can somehow preempt Oklahoma statutory, regulatory, and common law.

### B. EXPERT WITNESS SMITH DISREGARDS OKLAHOMA LAW REGARDING POLLUTION ON PRIVATE PROPERTY AND, INSTEAD, RELIES ON IRRELEVANT REGULATORY SCHEMES

As noted above, Valero's expert Smith [Dkt. 171] stated that he "compared the levels of contaminants to regulatory levels and to levels that have been established for cleanup" by regulatory agencies. [Dkt. 171, Report of Smith, p. 10, Summary of Opinion (B)]. He further notes that, based on his experience "dealing with regulatory agencies," the pollution present at the Lazy S Ranch does not "require further investigation or remediation by any regulatory agency." [*Id*. at p. 13, Summary Opinion (N)]. Similarly, his Summary Opinion asserts that the pollution found at Lazy S Ranch is "below any established standard used by any regulatory agency with jurisdiction." [*Id*. at p. 13]. His Summary Opinion S contends that no regulatory agency "would require cleanup based upon trace level [sic] of toluene, TPH or xylenes." [*Id*. at pp. 14, 43, 45, and 47; *see also* Appendix M to Bert J. Smith's Report (citing Oklahoma Department of Environmental Quality Cleanup guidelines)]. As discussed in Section II. A, above, these conclusions are misplaced. They misinterpret Oklahoma law. They seek to apply the wrong, inapplicable "standard" in a private

dispute. This Court should exclude any proposed testimony by Smith opining on cleanup standards or requirements in this case.[2].

### C. VALERO'S EXPERT TESTIMONY REGARDING REGULATORY AGENCY STANDARDS IS UNRELIABLE BECAUSE IT MISSTATES OKLAHOMA LAW.

As noted in Sections II A & B, above, the reliability inquiry under Fed. R. Evid. 702 and *Daubert* is a flexible one. *See Daubert*, 509 U.S. at 589-90. This investigation focuses solely on the experts' principles and methodologies, not on the conclusions they generate. *Id*. at 595. In this case, the experts' proposed testimony is unreliable insofar as it misapplies and thereby misstates Oklahoma law.

However, as detailed in Subsections A and B, above, Oklahoma law does not require a minimum threshold of pollutants to find that Valero has polluted the Ranch and thereby caused a nuisance. A jury could reasonably hold Valero liable for its historical and continued pollution of the Ranch's groundwater. Underlying these Smith opinions is the premise that a regulatory agency must act for Valero to be held accountable for polluting private property. This is not true today and never has been the law in Oklahoma.

Accordingly, this case does not require a determination as to whether pollution reached an imagined state or federal regulatory agency clean-up level, as is asserted by the proposed expert witness. Instead, the critical issue, in this case, is whether the Pipeline is the source of *any* pollution contaminating the soil and waters of the Ranch and, as a result, what is the injury the Plaintiff has

---

[2] Smith, like other Defendants' experts, also refers to the Safe Drinking Water Act 42 USC §§ 300f et seq. (the "Act") water quality stands for public water suppliers. First, the obvious inapplicability is apparent – the Ranch is not a "public water system" as defined under the Act. 42 USC §300f (4). Second, due to the cost and engineering feasibility, the Act allows for a public water supplier to serve polluted water. 42 USC §300f (1)(C). Those policy considerations do not apply to the natural spring waters flowing on the Ranch and are not intended to be clean-up standards for such spring waters.

suffered. The proposed expert testimony of Mr. Smith results from applying incorrect principles of Oklahoma law to this case.

### D. DEFENDANTS' EXPERT WITNESS SMITH'S TESTIMONY REGARDING REGULATORY AGENCY LAWS WILL MISLEAD AND CONFUSE THE JURY

Expert testimony amounting to an unreliable and improper statement of Oklahoma law is also irrelevant. Evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence. Evidence that is not relevant is inadmissible. Fed. R. Evid. 401, 402. Furthermore, Fed. R. Evid. 702 requires that the expert evidence or testimony assist the trier of fact in understanding the evidence, or in determining a fact in issue and aiding the jury in resolving a factual dispute. *Daubert*, at 591. Anything tending to confuse the jury because of irrelevance would be at odds with these Rules.

The Ranch alleged that Valero is liable under several legal theories, including negligence, nuisance, trespass, and *res ipsa loquitur*. Nowhere in its Complaint, or any other pleading, does the Ranch allege Valero is liable for polluting beyond some regulatory agency threshold. Thus, in this case, the only issues are whether pollution is present on the Lazy S Ranch (a fact Valero's experts admit) and whether the Pipeline is the source of that pollution. Valero's expert's incorrect and irrelevant so-called regulatory agency standard does not make the existence or source of the pollution on Lazy S Ranch any more or less probable. Furthermore, it will not assist the jury in determining any other fact in issue or resolving the factual dispute set before it. The only purpose it will serve is to mislead and confuse the jury concerning the applicable law in Oklahoma. Accordingly, this Court should exclude the testimony from Mr. Smith.

**E. VALERO'S PROPOSED EXPERT TESTIMONY USURPS THE COURT'S ROLE AS ADJUDICATOR OF THE LAW IN THE CASE AND THE JURY'S ROLE AS WELL**

Valero's proposed expert, Mr. Smith, plans to testify that a polluter's liability in Oklahoma is subject to standards set by regulatory agencies. In addition to being an unreliable and irrelevant misstatement of Oklahoma law, the proposed testimony would usurp the Court's role of adjudicating the law for the jury's benefit. *Specht v. Jensen*, 853 F.2d 805, 808-809 (10th Cir. 1988). Valero's expert's misstatement of Oklahoma law will impermissibly "direct the jury's understanding of the legal standards upon which their verdict must be based" and, therefore, cannot be allowed. *Id.*

Expert testimony may improperly invade the province of the jury or the court by offering legal conclusions as to comportment with industry standards resulting in testimony excluded for invading the province of the judge. Rule 702's helpfulness requirement incorporates the traditional relevance analysis of Rules 401 and 402. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (quoting Fed. R. Evid. 702). Under Rule 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id*. The Federal Rule of Evidence 704(a) specifically permits an expert to proffer testimony that "embraces an ultimate issue to be decided by the trier of fact." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). However, in *Stroud v. Liberty Mutual Insurance Company,* 2016 WL 10043498 (N.D. Oklahoma) *1, the court found that the proposed expert testifying as to industry standards usurps "the fact-finding province of the jury by repeatedly answer[ing] the ultimate issue." The court also found that [the expert's] discussion of "industry standards" is "at best, superfluous, and at worst," confusing. *Id*. In the instant case, presenting such testimony about inapplicable so-called regulatory standards to the jury would not just be "unhelpful," it would subvert the court's role as the sole

arbiter of the law in the case and subvert the jury's fact-finding province as well. Therefore, it should be excluded.

## IV. CONCLUSION

Mr. Smith's conclusions are suspect, and his Report [Dkt. 171] is predicated on his lack of competency to testify on the law of Oklahoma. Mr. Smith's opinions are not reliable per Fed. R. Evid. 702. More importantly, neither are Mr. Smith's opinions relevant. Therefore, Plaintiff moves this Court for an order to preclude argument, questioning, or introduction of "evidence" by Valero's expert, Smith, at trial concerning cleanup standards.

    Respectfully submitted,

*/s/ David P. Page*
David P. Page, OBA #6852
James Kelly, OBA #16510
Environmental Energy & Natural
Resources Advocates, PLLC
1921 S. Boston Ave.
Tulsa, OK 74119
918.764.8984 Telephone
dpage@eenradvocates.com
jkelly@eenradvocates.com

and

D. Mitchell Garrett, Jr.
Christopher L. Camp
Garrett Law Center
320 South Boston Ave., Suite 825
Tulsa, OK 74103
mitchell@garrett.legal
camplawfirm@gmail.com

and

>Jeffery L Carmichael
>Morris Laing Law Firm
>300 N Mead, Ste. 200
>Wichita, KS 67202
>316.262.2671 Telephone
>316.262.6226 Facsimile
>jcarmichael@morrislaing.com
>
>***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2022, a true and accurate copy of the foregoing was electronically transmitted to the Clerk of Court using the ECF System for filing and transmitting to the following ECF registrants:

Stephen L. Jantzen
Phillip G. Whaley
Grant M. Lucky
James F. Bennett
Megan S. Heinsz
Matthew E. Johnson
Philip A. Cantwell
Krystina E. Phillips
Charles E. Geister, III
William A. Johnson
Elizabeth A. Price

>*/s/ David P. Page*