# Exhibit "A"

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF OKLAHOMA

RANCH PROPERTIES, LLC, AN      )
OKLAHOMA LIMITED LIABILITY     )
COMPANY,                       )
                               )
        Plaintiff,             )
                               )
        vs.                    )   CASE NO. 19-cv-425-JWB
                               )
VALERO TERMINALING AND         )
DISTRIBUTION COMPANY; VALERO   )
PARTNERS OPERATING CO., LLC,   )
AND VALERO PARTNERS            )
WYNNEWOOD, LLC,                )
                               )
        Defendants.            )
```

                    * * * * *

          VIDEO DEPOSITION OF BERT SMITH

        TAKEN ON BEHALF OF THE PLAINTIFF

            IN OKLAHOMA CITY, OKLAHOMA

               ON OCTOBER 7, 2022

            COMMENCING AT 9:30 A.M.

                    * * * * *


          WORD FOR WORD REPORTING, L.L.C.
                620 NORTH ROBINSON
                    SUITE 202
          OKLAHOMA CITY, OKLAHOMA   73102
                  (405)232-9673

        REPORTED BY DEBRA GARVER, CSR, RPR

```
 1                    A P P E A R A N C E S

 2
     FOR THE PLAINTIFF:
 3
              DAVID P. PAGE, ESQ.
 4            ENVIRONMENTAL ENERGY & NATURAL RESOURCES
              ADVOCATES, PLLC
 5            1921 South Boston Avenue
              Tulsa, OK  74119
 6            918.764.8984
              dpage@eeradvocates.com
 7

 8   FOR THE DEFENDANT:

 9            PHIL CANTWELL, ESQ.
              DOWD BENNETT
10            7733 Forsyth Blvd., Suite 1900
              Clayton, MO  63105
11            (314)889-7300
              pcantwell@dowdbennett.com
12

13   PRESENT VIA SPEAKERPHONE:

14            MARK DONATELLO, ESQ.
              The Valero Companies
15

16   ALSO PRESENT VIA ZOOM:

17            Charles Roos
              Cinco Roos
18            Roger Olson
              Dr. Bert Fisher
19

20   VIDEOGRAPHER:   Jon Womastek

21

22

23

24

25
```

```
 1                        C O N T E N T S
 2                                                              PAGE
 3    Appearances . . . . . . . . . . . . . . . . . . . . . . 2
 4    BERT SMITH
 5    Examination By Mr. Page      . . . . . . . . . . . . . . 4
 6    Examination By Mr. Cantwell . . . . . . . . . . . . . 259
 7    Further Examination By Mr. Page . . . . . . . . . . . 265
 8    Reporter's Certificate  . . . . . . . . . . . . . . . 269
 9    Jurat . . . . . . . . . . . . . . . . . . . . . . . . 270
10    Errata Sheet  . . . . . . . . . . . . . . . . . . . . 271
11
12
13
14                             EXHIBITS
15    NO.            DESCRIPTION                         IDENTIFIED
16     1    Expert Report . . . . . . . . . . . . . . . . . . 7
17     2    Blocker v. ConocoPhillips Expert report . . . 144
18     3    Ground Water Monitoring in Karst Terranes . . 254
19
20                            * * * * *
21
22
23
24
25
```

```
 1      Q.   Are you a toxicologist?
 2      A.   No, I'm not.
 3      Q.   Are you a risk assessor?
 4      A.   I'm not a risk assessor.
 5      Q.   Were you involved with the development of the
 6 screening levels that are used by any agency in Oklahoma?
 7      A.   The development of those, no.
 8      Q.   Okay.  And I think you testified earlier you're
 9 not qualified to give a legal opinion as to the
10 applicability of those regulatory levels on contamination
11 at the Lazy S Ranch, correct?
12      A.   I don't think that was my testimony, no.
13      Q.   Okay.  Well, do you believe that you can give
14 an opinion as to the applicability of a regulatory
15 cleanup matter on Lazy S Ranch?
16      A.   I can make the comparison to regulatory levels.
17 That's what I've done most of my career, you know, done
18 that thousands of times.
19      Q.   Right.
20      A.   You know --
21      Q.   Is this a regulatory case, sir?
22      A.   Pardon me?
23      Q.   Is this a regulatory case?
24      A.   At this point it is not a -- it hasn't been
25 under the purview of any regulatory agency, but these are
```

1  typically -- you know, you make your comparison to
2  regulatory standards that -- typically to apply to issues
3  like this.
4      Q.   Because you're typically representing
5  contaminators or polluters that are being -- have
6  enforcement actions by regulatory agencies, correct?
7           MR. CANTWELL:   Objection.
8      Q.   (By Mr. Page)   I mean, your -- your career has
9  been primarily representing oil companies or other
10 companies that cause pollution and you're helping these
11 companies avoid cleanup at contaminated sites, correct?
12          MR. CANTWELL:   Objection.  Argumentative.
13 Misstates testimony.
14          THE WITNESS:   No, that's not correct.
15     Q.   (By Mr. Page)   It's not correct.
16          So earlier when I asked if you primarily
17 represented companies, did I misunderstand you when you
18 said you primarily do represent companies throughout your
19 career?
20     A.   I primarily represent industry.
21     Q.   Industry.
22     A.   Yeah.
23     Q.   And they are primarily, in the paradigm we're
24 talking about here, the people that cause contamination
25 of air, soil, and water, correct?

```
 1            MR. CANTWELL:  Objection.
 2            THE WITNESS:  There are instances where
 3   they've contaminated or caused impacts to air, soil, and
 4   water.
 5       Q.   (By Mr. Page)  And in those instances where
 6   you've said you -- thousand of times you've applied
 7   regulatory standards, those were all circumstances where
 8   the regulatory agency was focusing on a cleanup of
 9   contamination caused by your clients, correct?
10       A.   Well, those regulations were in -- put in place
11   as a guideline on when cleanup was needed.
12       Q.   By regulatory agencies, correct?
13       A.   By regulatory agencies.
14       Q.   Right.  Is this a regulatory action that we're
15   involved with here?
16       A.   The DEQ or the OCC at this point in time have
17   not been involved, so --
18       Q.   No?
19       A.   -- no.
20       Q.   Is it your understanding that the
21   Arbuckle-Simpson aquifer is a sole-source aquifer?
22       A.   Yes.
23       Q.   What's a sole-source aquifer in your
24   understanding?
25       A.   Well, there's a definition and I'd have to
```

6:19-cv-00425-JWB   Document 272-1   Filed in ED/OK on 10/27/22   Page 8 of 8

209

```
 1    reference it, but it's an EPA designation of a aquifer
 2    that's of very good quality and of -- just, a lot
 3    generally, there's no other source of water in that area.
 4         Q.   Okay.   So it's a -- it's sole source because
 5    it's a sole drinking water source for that -- the people
 6    that live in that area, correct?
 7         A.   Yeah.   And there's a -- there's a definition
 8    that I would default to that's the EPA actually has.
 9         Q.   But is that generally the gist of it?
10         A.   That's generally what I mentioned, yes.
11         Q.   Is the Arbuckle-Simpson aquifer a sole-source
12    aquifer in your understanding?
13         A.   In what?
14         Q.   I'm sorry.
15              Is the Arbuckle-Simpson aquifer a sole-source
16    aquifer?
17         A.   Yeah, I just answered that, yes.
18         Q.   Yes.   Okay.
19              And what is your understanding of Oklahoma
20    policy to prevent contamination of sole-source aquifers
21    in Oklahoma?
22         A.   That there are regulatory programs that they
23    have to meet.   Yeah, I mean, those -- those parameters
24    are -- still fall under the purview of regulatory
25    agencies.
```