**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

LAZY S RANCH PROPERTIES, LLC, an
Oklahoma limited liability company,

      Plaintiff,

v.

VALERO TERMINALING AND DISTRIBUTION
COMPANY; VALERO PARTNERS OPERATING
CO. LLC; and VALERO PARTNERS
WYNNEWOOD, LLC,

      Defendants.

Case No. 19-cv-425-JWB

**VALERO'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE**
**VALERO'S EXPERT BERT JAMES SMITH**

Defendants' expert, Bert James Smith, is a geologist who has specialized in the
investigation, characterization, assessment, evaluation, and remediation of impacts to
groundwater, surface waters, and soils from industrial, oil and gas-related operations, nuclear
operations, commercial operations, and agricultural operations (among many other types of sites)
for over 42 years. Dkt. 171 (Smith Report) at 8 of 75. He has worked on dozens of site
characterizations that involve evaluation of possible hydrocarbon releases from oil and gas
pipelines or related sites in Oklahoma, including several in Carter County, Oklahoma. *Id.* Some of
these projects involved environments with karst formations that had a topography similar to the
Ranch. Ex. 1 (Smith Dep.) at 69:16-71:18. He has collected samples, directed the collection of
samples, conducted quality assurance/quality control, reviewed and interpreted thousands of
laboratory analytical reports data related to soil, groundwater, and spring/surface water samples;
he is an expert in the assessment and interpretation of those data, and in the comparison of those
laboratory analyses to applicable standards. Dkt. 171 (Smith Report) at 8 of 75. He has also been
involved in taking and interpreting soil and groundwater data and preparing remediation programs,

design, and costs for impacted soil and groundwater. *Id.* at 3 of 75. He has prepared soil and groundwater remedial programs related to salt and hydrocarbon impacted soils/groundwater caused by oil and gas operations. *Id.* He has also done this same work for many other types of industrial properties where soil and groundwater impacts have occurred that required remediation. *Id.*

Smith's opinions and testimony in this case are set forth in his expert report. Primarily, Smith opines that there are numerous potential sources of any alleged trace hydrocarbons on the Lazy S Ranch ("Ranch") other than the Wynnewood Pipeline. *See, e.g.*, Dkt. 171 (Smith Report) at pages 11 through 12 of 75 (opinions D through J); pages 31 through 42 of 75. Plaintiff does ***not*** seek to exclude Smith's testimony regarding other possible causes. Instead, Plaintiff asks the Court to exclude Smith's testimony only "on the subject of Oklahoma law concerning applicable cleanup requirements." Dkt. 272 (Pl.'s Mot. to Preclude Smith) ("Pl.'s Br.") at 1.

As set forth in Valero's Motion for Summary Judgment, Dkt. 267, the Court should dismiss Plaintiff's claims as a matter of law because Plaintiff has shown no injury through substantial interference with its property and/or no loss of any beneficial uses under any legal standard. Smith's expertise and testimony reinforces that no substance identified in any environmental sampling exceeds regulators' health-based criteria. But if, the Court denies Valero's summary judgment motion, then Smith's testimony should be admitted because it is reliable, relevant, and helpful to the jury to understand the implausibility of Plaintiff's outlandish damages claims.

More specifically, Smith will testify that, after reviewing the sampling data from the Ranch and in light of his expertise conducting environmental cleanups and working with regulatory agencies, Smith identified no "potential impact to air, soil, surface water, groundwater, or spring water that would require further investigation or remediation by any regulatory agency in the

United States or Oklahoma" Dkt. 171 (Smith Report) at 13 of 75. This testimony will allow the jury to understand, first, that even if the Wynnewood Pipeline was the source of alleged contaminants (it is not), the amounts at issue fall far below established regulatory criteria, which constitutes evidence that any alleged contamination should not be considered a "substantial interference" with the Ranch. Plaintiff's contrary argument is premised largely on its erroneous position that "Oklahoma law does not require a minimum threshold of pollution" to determine Valero's liability in this matter—despite conceding that *the very law it relies on* defines "pollution" to mean "quantities" of substances not present in this case. Pl.'s Br. at 5, 7 (citing 27 OS 1-1-201(10)). Second, Smith's testimony will allow the jury to understand the implausibility of the hypothetical eight-figure remediation and clean-up plan that Plaintiff proposes for the Ranch because, based on the samples collected from the Ranch, no regulatory agency or standard would require *any* remediation of its soil, air, or waters at all, and the property already meets even the most conservative cleanup criteria. Smith's opinions do not constitute legal opinions or invade the province of the Court or jury, and they should be admitted in full.

## ARGUMENT

I.  **Smith's Testimony is Relevant to Show Plaintiff Has Not Suffered Any Cognizable Injury as Required Under Oklahoma Law.**

Smith will testify that, even if the Wynnewood Pipeline was the source of alleged contaminants (it is not), the amounts at issue fall far below established regulatory criteria. This constitutes admissible evidence that any alleged contamination does not substantially interfere with or otherwise injure the Ranch, as Plaintiff is required to show to succeed on any of its claims. Plaintiff argues Smith's testimony is irrelevant, unreliable, and misleading because "Oklahoma law does not require a minimum threshold of pollution." Pl.'s Br. at 10. However, Plaintiff misstates Oklahoma law; even the statutes and regulations on which Plaintiff relies for its position

3

*expressly state* minimum quantity requirements in the state of Oklahoma. Plaintiff's misstatement of the law in an attempt to invent a more stringent standard that fits Plaintiff's trace-level allegations and minimal investigation efforts cannot form a basis to exclude Smith's testimony.

### A. To Succeed on any of its Claims, Plaintiff Has to Prove it was Injured by the Alleged Contamination.

Not every perceived harm constitutes a nuisance. *See, e.g.*, *Laubenstein v. Bode Tower, L.L.C.*, 392 P.3d 706, 710 (Okla. 2016) ("claims founded solely on aesthetic harms are not actionable"); *see also City of McAlester v. King*, 317 P.2d 265, 270 (Okla. 1957). Instead, in Oklahoma, "[o]ur jurisprudence demands evidence of substantial interference with the use and enjoyment of property." *Laubenstein*, 392 P.3d at 710 (citing cases finding substantial interference, including, for example, causing raw sewage to flow across a plaintiff's property, leading to the death of livestock and making plaintiff's home uninhabitable; saltwater pollution from drilling operations rendering a landowner's water well permanently unpotable; and leaking hydrocarbons from drilling activity poisoning cattle grazing on plaintiff's property). A plaintiff is not entitled to recovery where it is "fastidious and acutely sensitive to" perceived injuries but cannot establish "substantial injury to comfort, health, or property." *Id.*

The Oklahoma Statutes provide a cause of action for "statutory nuisance." *See* 50 O.S. 2011 § 1; *Taylor v. Del. Cnty. Solid Waste Tr. Auth.*, 503 P.3d 1216, 1221 (Okla. Civ. App. 2021). Section One provides:

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
>
> First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or
>
> Second. Offends decency; or

Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or

Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.

50 O.S. 2011 § 1.

However, the statute merely "defines the generic term 'nuisance' -- not nuisance per se, nuisance per accidens, public or private nuisance." *Taylor*, 503 P.3d at 1221 (quoting *State ex rel. Fallis v. Mike Kelly Const. Co.*, 638 P.2d 455 (Okla. 1981)). Accordingly, courts have held that "sufficient evidence to satisfy § 1 is not dispositive. Private nuisance requires a substantial interference with the use and enjoyment of real property, and § 1 does not abrogate that principal." *Taylor*, 503 P.3d at 1221. This confirms that, even where a claim for nuisance is based in statute and might appear to satisfy the statute's requirements for nuisance, the substantial interference element nonetheless applies.

Likewise, Plaintiff will have to show some injury to succeed on any of his other claims. *See, e.g.*, *MBA Com. Const., Inc. v. Roy J. Hannaford*, 818 P.2d 469, 474 (Okla. 1991) ("In order for a litigant to maintain a negligence action to a successful conclusion, the litigant must allege injury or damages that are certain and not speculative."); *Barton v. Ovintiv Mid-Continent*, 2021 WL 1566451, at *2-3 (W.D. Okla. Apr. 21, 2021) (to succeed on trespass claim, plaintiff required to show "substantial damage to… property" where alleged intrusion is impalpable, such as fumes, emissions, and droplets of petroleum fluid "spattered" around the property); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon*, 2008 WL 11338389, at *4 (W.D. Okla. July 1, 2008) (claim for unjust enrichment requires showing of "resulting injustice"); *Howard v. Zimmer, Inc.*, 299 P.3d 463, 474 (Okla. 2013) ("[T]o prevail on a claim for negligence per se, the [plaintiff] must not only demonstrate violation of the regulation but also that the violation caused his injury along with the

extent to which the injury may support an award of damages."); *Specialty Beverages, L.L.C. v. Pabst Brewing*, 537 F.3d 1165, 1180-81 (10th Cir. 2008) (damages are an element of constructive fraud); *Hausler v. Felton*, 739 F. Supp. 2d 1327, 1331 (N.D. Okla. 2010) (absent an express contractual or legal obligation to the contrary, "a cause of action for indemnity from loss does not arise until the loss is paid.").[1]

Plaintiff did not plead a cause of action under Article 2 § 23 of the Oklahoma Constitution yet quotes to it in its Motion to suggest that Defendant is liable for a "taking" of Plaintiff's property. *See* Pl.'s Mot. at 6. Even if Plaintiff had attempted to plead such a claim, Plaintiff still would be required to show "unreasonable interference . . . which would constitute a taking of private property so as to allow damages under that constitutional provision." *Champlin Petroleum Co. v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 526 P.2d 1142, 1145 (Okla. 1974). In short, Plaintiff will be required to show some sort of injury or impairment to succeed on any of its claims. Smith's expertise and testimony will help the factfinder understand that there is no injury or impairment to the Lazy S Ranch.

## B. Nothing in the Regulations and Statutes Plaintiff Cites Supports Plaintiff's Position That a Single Molecule of Alleged Pollution is Actionable.

Plaintiff cites no case law in any of its motions for the position that "any" amount of alleged contamination is actionable in Oklahoma. Instead, Plaintiff cites a variety of statutes out of context to suggest that, contrary to Oklahoma case law, a single molecule of alleged "pollution"—even without evidence of substantial interference—constitutes nuisance per se. A more careful look at

---

[1] Because Plaintiff's claim for punitive damages is dependent on the underlying claims, injury is required to pursue a claim for punitive damages, as well. *See Rodebush ex rel. Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993). Likewise, as set forth below in Section VII, Plaintiff's Amalgamation and Single Enterprise claims are asserted as a "means to an end: either to impress direct liability on [a non-owner/operator] or under a theory designed to collapse the distinctions between the Non-Owner/Operator Defendants and the Owner/Operator Defendants as merely a single enterprise-in-fact." Dkt. 50 at 6. Therefore, to the extent these claims are still at issue, they are dependent on a finding of liability on other claims and require a finding of injury.

these sources reveals Plaintiff misinterprets Oklahoma law. The statutes Plaintiff cites are, in fact, consistent with Oklahoma common law in that they require concentrations of pollutants in *quantities* that cause injury.

### 1. Oklahoma Environmental Quality Code

Plaintiff cites the Oklahoma Environmental Quality Code, set forth in Oklahoma Statute Title 27, which says it is "unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land, or waters of the state. Any such action is hereby declared to be a public nuisance." § 2-6-105(A). But, as Plaintiff *concedes*, the definition of "pollution" explicitly incorporates a minimum quantitative threshold:

> [T]he presence in the environment of any substance, contaminant or pollutant, or any other alteration of the physical, chemical or biological properties of the environment or the release of any liquid, gaseous or solid substance into the environment *in quantities which are or will likely create a nuisance or which render or will likely render the environment harmful or detrimental or injurious* to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, or to property….

Pl.'s Br. at 7 (quoting Okla. Stat. Ann. tit. 27A, § 1-1-201 (West) (emphasis added)). Accordingly, Section 2-6-105(A) cannot be read to suggest a single molecule of a pollutant is actionable.

### 2. Oklahoma Statutes Title 82

Plaintiff also cites § 82-1084.1, which, again, sets forth a public policy statement regarding "pollution of the waters of this state." But the very next provision confirms:

> "Pollution" means contamination… as will or is likely to create a nuisance or render such waters harmful or detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life.

Oklahoma Statute tit. 82 § 1084.2 In other words, the "pollution" described in this section must create or be likely to create a nuisance (which, as set forth above, requires a showing of substantial

7

interference) *or* render such waters "harmful or detrimental or injurious" in one of the specified manners. It cannot support the argument that the existence of a single molecule of a contaminant is actionable.

### 3.   Oklahoma Administrative Code Title 785

Plaintiff cites Oklahoma Administrative Code Title 785, which covers topics related to the Oklahoma Water Resources Board, and specifically chapters 45, which contains the Oklahoma Water Quality Standards. Plaintiff points to a portion of the Code that indicates the general purpose of the chapter is to protect the waters of Oklahoma. OAC 785:45-3-1(b). But on its face, the purpose statement does not establish that the presence of a single molecule of an alleged contaminant constitutes a claim.

Then, Plaintiff points to 785:45-7-4(b)(1), which provides: "The groundwaters of the state shall be maintained to prevent alteration of their chemical properties by harmful substances not naturally found in groundwater." But a law that requires preventive measures to "prevent alteration" does not mean that a single molecule of an alleged contaminant is actionable. Moreover, the preceding subsection, 785:45-7-4(a), specifically states that these criteria "do not require improvement over naturally occurring background concentrations." Here, as set forth in Valero's Motion for Summary Judgment, Plaintiff has made no effort to characterize background levels of naturally-occurring TPH in any media at the site for comparison with this regulation. Ex. 2 (Stout Dep.) 205:4-208:15, 225:19-226:1, 228:14-229:2, 244:8-245:14. And the <u>following sentence</u> provides: "Protective measures shall also be sufficient to minimize the impact of pollutants on groundwater quality." This sentence acknowledges only that impacts from pollutants must be "minimized:" Nothing in the regulation suggests a zero-tolerance standard.

Next, Plaintiff points to § 165:10-7-5(a), which says "pipeline companies [and] other persons shall at all times conduct their operations in a manner that will not cause pollution." However, the Title 165 expressly incorporates the OCC's "Guardian Guidance document" wherein the OCC establishes the standards above which "pollution" requires remediation. *See* 165:10-7-2 ("Site assessments and remediation projects for petroleum and produced water pollution should adhere to the general practices appearing in the Oil and Gas Conservation Division's Guardian Guidance document…."). In turn, The Guardian Guidance document provides that the purpose of site assessments is to "document whether or not there is impact at/from the site that could cause a significant risk to human health or the environment requiring a clean up." Ex. 3 (Dec. 27, 2021 Guardian Guidance) at 6. Operators are required to clean up soil and/or water only to the OCC's established levels "to ensure that standards are met at the point of compliance." *Id.* at 12.

Other provisions support reading Oklahoma law to require a minimum quantities threshold for actionable claims. Even where any substance <u>is</u> found in concentrations exceeding background levels, "corrective action <u>may</u> be required." OAC 785:45-7-4(b)(4) (emphasis added). It is not *always* required. And notably, "[g]roundwater that has been polluted as a result of human activities shall be restored to a quality that will support the beneficial uses designated in OAC 785:45-7-3 for that groundwater, or as otherwise specified in a site-specific remediation plan approved by an agency of competent jurisdiction." 785:45-7-5. The remediation standard cited by Plaintiff does not require the total absence of any molecules of pollutant; rather, the pollution must interfere with the land's beneficial use before remediation is required.

Nowhere does the OAC state that a single molecule of alleged pollutant is actionable or even constitutes "pollution." Rather, the OAC is replete with provisions demonstrating that in order to be actionable, any pollutants must exist in quantities that interfere with certain uses. *See,*

*e.g.*, 785:45-7-2 ("Whenever existing groundwater quality <u>exceeds the level necessary for</u> <u>beneficial uses</u> to be maintained and protected, the existing groundwater quality shall be maintained and protected…."); 785:45-3-2(d) ("No water quality degradation <u>which will interfere</u> <u>with the attainment or maintenance of an existing or designated beneficial use</u> shall be allowed."); 785:45:5-10(2)(A) ("There shall be no discharge of radioactive materials <u>in excess of the criteria</u> <u>found</u> in Title 10 Code of Federal Regulations Part 20, Appendix B, Table 2."). This supports Smith's testimony and proves its relevance.

### C. Smith's Proposed Testimony Is Relevant and Helpful to Assist the Jury in Determining Whether Any of Plaintiff's Claims Succeed.

As set forth in Sections A and B, if a trial occurs in this case, Plaintiff will be required to establish that any alleged pollutants have substantially interfered with the use and enjoyment of its property, impaired a beneficial use, or other similar harm depending on the cause of action. Smith's proposed testimony is directly relevant to this issue. If Plaintiff's claims survive summary judgment (and they should not), the jury will be asked to determine whether Plaintiff has been so injured as a matter of fact. Smith's testimony is therefore highly relevant and helpful.

Smith has worked on dozens of site characterizations involving the evaluation of possible hydrocarbon releases from oil and gas pipelines or related sites in Oklahoma. Dkt. 171 (Smith Report) at 8 of 75. As part of this work, he prepared remediation programs, design, and costs for impacted soil and groundwater. *Id.* at 3 of 75. To do so, he assessed and interpreted sampling data and "ma[de] the comparison to regulatory levels," "thousands of times" in his career. *Id.* at 8 of 75; Ex. 1 (Smith Dep.) at 206:13-18. In this case, after reviewing the sampling data from the Ranch and in light of his expertise working with regulatory agencies, Smith identified no "potential impact to air, soil, surface water, groundwater, or spring water that would require further

investigation or remediation by any regulatory agency in the United States or Oklahoma." Dkt. 171 (Smith Report) at 13 of 75.

These opinions will assist the jury in determining whether Plaintiff's use and enjoyment of his Ranch has been impaired in any way. Without testimony like Smith's and that of Defendants' other experts, the jury would be forced to evaluate sampling data in a vacuum without any means to decide whether trace hydrocarbons are harmful or not as alleged.

Plaintiff provides no authority for its position that statutes and regulations setting forth health-based criteria for pollution levels are entirely irrelevant to determining whether a plaintiff has been injured. In fact, many courts have found regulatory standards highly relevant to the determination of a defendant's liability. *See, e.g.*, *Rose v. Union Oil Co. of Calif.*, 1999 WL 51819, at *6 (N.D. Cal. Feb. 1, 1999) (finding no evidence that levels of contamination on plaintiffs' property were a risk to health or substantially or unreasonably interfered with the use of their land after considering that "[t]he California guidelines for *drinking water*" allowed higher concentrations of BTEX than those found in environmental samples (emphasis in original)); *Baker v. Chevron USA, Inc.*, 2009 WL 3698419, at *6 (S.D. Ohio Nov. 4, 2009) (EPA report "reflect[ing] test results well below the level considered safe by the EPA" "support[ed] the conclusion that the plume ha[d] not caused any injury or damage to plaintiff"); *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 618-25 (Ky. Ct. App. 2003) (no injury where nuisance simply based on existence of contaminant without regard to regulatory action levels and evidence of cleanup liability). Smith's expert opinion regarding how the samples from the Ranch compare to regulatory health-based criteria is helpful in assisting the jury in determining whether Plaintiff has been injured. Should a jury ultimately find Valero liable to Plaintiff, Smith's testimony will also assist the jury in making a damages determination. Moreover, Plaintiff concedes that Smith relies on the <u>same</u> legal

11

authorities Plaintiff cites as setting forth the legal standards in this case. *Compare* Pl.'s Br. at 2 n.1 (Smith relied on Title 785, Chapter 45) *with id.* at 8 (describing Title 785, Chapter 45 as rules setting forth the "most stringent anti-pollution legal requirements").

Additionally, Plaintiff argues the federal Safe Drinking Water Act is inapplicable because Plaintiff is not a "public water supplier" to whom the Act applies. Pl.'s Br. at 10 n.2. Smith does not suggest this source directly impacts Plaintiff's current use of the Ranch. Notably, Plaintiff ***does*** purport to want to sell the water to be used as drinking water, however speculative that might be. Plaintiff's expert, Kevin Boyle, opines Plaintiff has lost over $22 million in potential groundwater sales because the Wynnewood Pipeline allegedly "prevents the owners of the Ranch from guaranteeing the delivery of uncontaminated drinking water." *See* Dkt. 129 (Boyle Rep.) at 12 of 18; *see also id.* at 6 of 80 (opining that "[t]o be issued a groundwater usage permit the landowner must put the water to a beneficial use where potable drinking water is one of the beneficial uses. Thus, the intended purpose of the Lazy-S Ranch to market the groundwater under the ranch property fits the criteria for beneficial use"); *id.* at 7, 10 of 80. However, Valero agrees wholeheartedly that Plaintiff is not actually selling (or even trying to sell) its groundwater, and these are merely speculative uses and speculative damages. In any event, Smith's point is admissible: The water on the Ranch is so clean that it satisfies federal safety standards for commercial drinking water without being filtered—even though Plaintiff is not even using it for this purpose and the property owners are the only people that currently drink the water. In fact, the water satisfies federal safety standards for ***any*** purpose, no matter how speculative. This provides information that will assist the jury in determining whether the trace hydrocarbons rise to the level of actionable pollution at all.

Smith's proposed testimony should be admitted to assist the jury in determining whether Plaintiff has proven substantial interference or any other injury.

## II.    Smith's Proposed Testimony Is Relevant and Helpful to Assist the Jury in Determining Plaintiff's Alleged Damages.

In the event Plaintiff is successful in proving any of its claims despite the overwhelming lack of supporting evidence, the jury will need to quantify Plaintiff's alleged damages. Pl.'s Br. at 10-11 (conceding that a "critical issue" in this case is "what is the injury the Plaintiff has suffered"). Smith's proposed testimony is relevant and helpful because it rebuts Plaintiff's assertions of damages. For example, and as discussed above, Plaintiff's expert Kevin Boyle seeks to testify that Plaintiff has suffered over $22 million in lost groundwater sales because "the Lazy-S Ranch is unable to guarantee the delivery of uncontaminated, potable water to municipal or other buyers." Dkt. 129 (Boyle Rep.) at 1, 10 of 80. Smith's testimony is therefore highly relevant to explain that the environmental agencies charged with regulating water quality would not prohibit the sale of groundwater on the Ranch based on any sampling data taken from the Ranch. Likewise, Plaintiff's expert, Philip Isaacs, seeks to testify that the alleged contamination has significantly decreased the value of the property due in part to "uncertainty regarding the health, use and risks inherent in ownership," the "potential for long-term remediation," and the owner's "expanded … liability." Dkt. 127 (Isaacs Rep.) at 28 of 83. Smith's opinion that no agency would require remediation based on sampling on the Ranch is necessary for the jury to evaluate Plaintiff's experts' claims. Valero is entitled to rebut Plaintiff's alleged damages, and Smith's testimony will assist the jury in making its determination in the unlikely event that Valero is found liable for any contamination.

## III.   Smith Will Not Testify that the Statutes and Guidance He Considered Determine Valero's Liability Or Otherwise Make Legal Claims.

Plaintiff repeatedly alleges that Smith has stated opinions regarding the legal standard in this case or Valero's ultimate liability in this case. *See* Pl.'s Br. at 6 (Smith's "expert report asserts

13

that Valero is not liable for the pollution on the Ranch because it does not exceed 'regulatory agency clean-up standards'"); *id.* at 10 ("Underlying these Smith opinions is the premise that a regulatory agency must act for Valero to be held accountable for polluting private property"); *id.* at 12 ("Valero's proposed expert, Mr. Smith, plans to testify that a polluter's liability in Oklahoma is subject to standards set by regulatory agencies."). Notably, none of these assertions are supported with citations to Smith's expert report or deposition testimony, and that is because Smith has offered no such opinion.

Rather, his expertise qualifies him to testify that regulators would not require further investigation or remediation based on the sampling data from the Ranch, which he determined after comparing it to regulatory levels," something he has done "thousands of times" in his career. Ex. 1 (Smith Dep.) at 206:13-18. Smith readily agreed that this action is not "under the purview of any regulatory agency." *Id.* at 206:21-207:3. Indeed, Plaintiff has not even reached out to any regulator regarding the alleged contamination. As set forth in Sections I(C) and II, *supra*, his opinion is highly relevant to determine whether and to what extent Plaintiff has actually suffered any injury in this case, and if so, what damages it has incurred.

Plaintiff cites *Stroud v. Liberty Mut. Ins. Co.*, 2016 WL 10043498, at *1 (N.D. Okla. Oct. 7, 2016) in support of its contention that a proposed expert testifying to industry standards usurps "the fact-finding province of the jury by repeatedly answer[ing] the ultimate issue" and is "at best, superfluous, and at worst," confusing. Pl.'s Br. at 12. In *Stroud*, the plaintiff alleged his insurer handled his claim in bad faith. The plaintiff's expert sought to testify regarding certain claim-handling practices he considered to be "industry standards," without providing a source, and then suggested that the violation of those standards constituted bad faith—in other words, he sought to opine on the ultimate issue of liability. These opinions are fundamentally different than Smith's.

14

First, the "industry standards" Smith applied are found in various statutes and regulations. Second, Smith does not suggest that the violation of any standard or guidance results in liability, or that compliance with the same does not. Rather, he applies these standards to provide the jury with another data point to assist it in determining whether Plaintiff has suffered any injury, and if so, the extent of its damages. Finally, the language Plaintiff cites in *Stroud* is actually a quote from *Higgins v. State Auto Property & Cas. Ins. Co.*, 2012 WL 2369007, at *2 (N.D. Okla. June 21, 2012). An Oklahoma state court pointed out that *Higgins* "directly contradict[s] the holdings of the Oklahoma Supreme Court on this issue" because "Oklahoma has consistently recognized the assistance of experts in this area." *Linn v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2020 OK CIV APP 62, ¶ 7, 479 P.3d 1013, 1017 (citing cases).

Smith does not seek to assert any legal opinions in this case or opine on Valero's ultimate liability. Instead, he will opine that, based on his extensive experience investigating and remediating sites, regulators would not require remediation based on the sampling data from the Ranch. As set forth in Sections I(C) and II, *supra*, his opinion is highly relevant.

Dated: November 9, 2022                    Respectfully Submitted,

                                           By: */s/ Philip A. Cantwell*

                                           James F. Bennett, MO Bar # 46826
                                           Megan S. Heinsz, MO Bar # 56377
                                           Matthew E. Johnson, CO Bar # 40984
                                           Philip A. Cantwell, MO Bar # 65505
                                           DOWD BENNETT LLP
                                           7733 Forsyth Blvd., Suite 1900
                                           St. Louis, MO 63105
                                           (314) 889-7300 Telephone
                                           (314) 863-2111 Facsimile
                                           jbennett@dowdbennett.com
                                           mheinsz@dowdbennett.com
                                           mjohnson@dowdbennet.com
                                           pcantwell@dowdbennett.com

                                           Stephen L. Jantzen, OBA # 16247
                                           Phillip G. Whaley, OBA # 13371
                                           Grant M. Lucky, OBA # 17398
                                           RYAN WHALEY
                                           400 N. Walnut Ave.
                                           Oklahoma City, OK 73104
                                           (405) 239-6040 Telephone
                                           (405) 239-6766 Facsimile
                                           sjantzen@ryanwhaley.com
                                           pwhaley@ryanwhaley.com
                                           glucky@ryanwhaley.com

                                           ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2022, a true and accurate copy of the foregoing was electronically transmitted to the Clerk of Court using the ECF System for filing and transmitting to the following ECF registrants:

David P. Page
Jessica C. Ridenour
Thomas E. Rogers
David Mitchell Garrett, Jr.
Christopher L. Camp
Krystina E. Phillips
Charles E. Geister, III
William A. Johnson
Elizabeth A. Price

By:  /s/ *Philip A. Cantwell*