IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAZY S RANCH PROPERTIES, LLC, an Oklahoma limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>VALERO TERMINALING AND DISTRIBUTION COMPANY; VALERO PARTNERS OPERATING CO. LLC; and VALERO PARTNERS WYNNEWOOD, LLC,<br><br>  Defendants. | Case No. 19-cv-425-JWB |

**VALERO'S REPLY IN SUPPORT OF FED. R. EVID. 702 MOTION TO EXCLUDE
J. BERTON FISHER (ECF NO. 264)**

  Plaintiff has failed to meet its burden to establish the admissibility of Fisher's testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993). Notably, Plaintiff ignores many of Valero's well-reasoned arguments that Fisher should be excluded. Indeed, although Valero cited significant case support in its motion, Plaintiff failed to distinguish or even address a *single* case, other than to argue two cases support Plaintiff's opinion—with no further elaboration. Because Plaintiff has failed to even address—let alone, rebut—many of Valero's arguments, and for the added reasons herein, the Court should grant Valero's motion to exclude Fisher, Dkt. 264.

  **I. PLAINTIFF MISSTATES THE RULE 702 AND *DAUBERT* STANDARD.**

  Plaintiff seems to argue that reliance on "flawed" data or other "faults in . . . methodology" are ***never*** grounds for exclusion, but instead, affects the weight accorded an expert's testimony. *See* Pl.'s Br. at 4-5.[1] This position directly contradicts Federal Rule of Evidence 702 and *Daubert*.

---

[1] There is no clear distinction between Fisher's methodology and "the factual basis of [his] expert opinion," including his flawed "data set." Pl.'s Br. at 4. For example, in Valero's Motion to Exclude Fisher, Valero argues that Fisher's opinions based on samples collected using polypropylene cloths and Bio-Traps® should be excluded because this methodology is unreliable and untested. Defs.' Mot. at 11. It is not merely "data" (which can also be excluded as unreliable) but Fisher's entire sampling methodology, that is problematic. This is a proper basis for exclusion. *See,*

Rule 702 provides that expert testimony may be admitted only if, among other things, it is "based on sufficient facts or data" and "the product of reliable principles and methods." The *Daubert* Court held a trial court ***must*** make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *id.* at 597 ("trial judge" must ensure "expert's testimony . . . rests on a reliable foundation"). The cases Plaintiff cites in support of its position confirm that flawed methodology, including reliance on flawed data, is a proper basis for exclusion. *Hose v Chicago Northwestern Transp.*, 70 F.3d 968, 974 (8th Cir. 1995) (opinion "so fundamentally unsupported that it can offer no assistance to the jury" should be excluded); *Tingey v. Radionics*, 193 F. App'x 747, 766 (10th Cir. 2006) ("touchstone of admissibility . . . is whether the scientific evidence presented is reliable").

## II.     PLAINTIFF IGNORES THE FLAWS IN FISHER'S CAUSATION OPINION.

Plaintiff concedes no one can identify a single leak anywhere on the Wynnewood Pipeline. Dkt. 284 (Pl.'s Mot. to Exclude Ede) at 5. Yet, Plaintiff argues that two facts support Fisher's opinion that the Wynnewood Pipeline is the source of the alleged hydrocarbons on the Ranch. ***First***, Plaintiff claims Fisher identified possible subsurface pathways between the Wynnewood Pipeline and certain springs on the Ranch. Pl.'s Br. at 5-6. But all Fisher did was look at "[t]he nature of the geology" and "topography" of the Ranch and "derive estimated groundwater flow directions beneath the Lazy S Ranch" before concluding there are "multiple and effective vertical and horizontal pathways for the movement of refined petroleum product hydrocarbons leaving from the Valero Pipeline into groundwater." *Id.* at 6. He did <u>not</u> identify an actual hydrocarbon

---

*e.g.*, *Koch v. Shell Oil Co.*, 49 F. Supp. 2d 1262, 1269 (D. Kan. 1999) (testimony inadmissible in part because the expert's "test results are not reliable" and, ultimately, "the court is unable to find that the results of his testing were valid and reliable").

pathway between the Wynnewood Pipeline and Tulip Springs. Dkt. 264-1 (Fisher Dep.) 118:10-14; *see also* Dkt. 264-2 (Ede Dep.) at 178:2-3. **Second**, Plaintiff argues Fisher identified refined petroleum products in water and soil on the Ranch. Pl.'s Br. at 6-7. As an initial matter, this is not true. For example, what Fisher identified in the soil was TPH-DRO which he says is "***consistent with*** contamination by refined petroleum hydrocarbons." Dkt. 264-1 (Fisher Dep.) at 56:2-5; Dkt. 131 (Fisher Report) at 8 of 56. Low-level detections of TPH-DRO in soil samples is common in the absence of pipeline leaks because it is associated with plant wax and other naturally occurring organic matter, lab contamination, or even pipeline coating. Ex. 15[2] (Coleman Dep.) 58:1-18, 59:9-60:4, 76:2-10; Ex. 16 (Stout Dep.) 205:4-208:15, 225:19-226:1, 228:14-229:2, 244:8-245:14; Dkt. 178 (Coleman Report) at 9; Dkt. 179 (Stout Report) at 8-10, 13-16, 19-21; Dkt. 171 (Smith Report) at 56. Yet Fisher apparently made no effort to determine background concentration levels in soil in the region. Dkt. 131 (Fisher Report). This renders his opinion unreliable. But even if Fisher ***had*** identified refined petroleum products on the Ranch, that does not show it automatically came from the Wynnewood Pipeline. Because none of this alleged evidence shows the Wynnewood Pipeline is the source of any alleged hydrocarbons, Fisher's opinion that the Pipeline is the source is based wholly on his speculative and incorrect contention there are no other possible hydrocarbon sources.

### III. PLAINTIFF FAILS TO REBUT VALERO'S ARGUMENT THAT THE METHODOLOGY UNDERLYING FISHER'S CAUSATION OPINION IS UNRELIABLE.

Plaintiff does not dispute that Fisher was required to identify and eliminate other potential sources of hydrocarbons on the Ranch. Rather, Plaintiff argues Fisher's investigation of other potential hydrocarbon sources was adequate because he identified the only other "plausible" source—the Blue Knight Pipeline—and ultimately concluded it was ***not*** a plausible source because

---

[2] There were 14 exhibits to Valero's motion to exclude Fisher (Dkt. 264), and Exhibits 15-17 are attached hereto.

it currently carries crude oil. Plaintiff ignores Valero's well-reasoned argument that this fact is insufficient to rule out the Blue Knight Pipeline, as set forth in Valero's Motion. Dkt. 264 (Defs.' Mot to Exclude Fisher) at 8-10. Plaintiff also ignores that Fisher failed to describe the methodology he used to reach his conclusion that there were no other plausible sources. *Id.* at 5-8. Fisher's obligation to describe the steps he took to identify and rule out other reasonably possible sources is distinct from his interest in rebutting additional potential sources identified by Valero's expert.

Rather than address Valero's arguments, Plaintiff argues that Smith's opinions regarding other possible sources are "entirely speculative." Even if that were true of a *documented* LUST site or abandoned 1940s pipeline (it is not), it would not remedy **Fisher's** failure to set forth his methodology in his report. In any event, Plaintiff's misplaced critiques of Smith highlight flaws in Fisher's own work. For example, Plaintiff states Smith opines that "underground storage tanks are present within drainage that might flow to Tulip Springs but fails to produce a [sic] unqualified example of any leaking underground storage tank." Pl.'s Br. at 11. But all Fisher can say is that a hypothetical leak from the Wynnewood Pipeline might flow to Tulip Springs, and Plaintiff—and Fisher himself—admit no one identified a leak. Dkt. 284 (Pl.'s Mot. to Exclude Ede) at 5; Dkt. 264-1 (Fisher Dep.) 45:5-9, 46:10-11, 195:4-7, 228:22-24. It was **Fisher's burden** to rule out other possible sources—not Smith's burden to prove the source. *See* Dkt. 284 (Pl.'s Mot. to Exclude Ede) at 4 (citing cases). Fisher's incomplete investigation is not scientifically reliable.

IV. **PLAINTIFF IGNORES VALERO'S ARGUMENTS THAT POLYPROPYLENE CLOTH IS UNTESTED AND UNRELIABLE AND CONCEDES FISHER DOES NOT RELY ON BIO-TRAP® DATA.**

Plaintiff argues the polypropylene cloth data is admissible because Stout and Larson allegedly admit that "valuable information" can be obtained from "non-traditional sampling," "polypropylene cloths demonstrate that the hydrocarbons captured on the cloths were FREE PHASE fuels—that is, liquid hydrocarbons not dissolved in water," and "do not dispute that a

4

mixture of diesel and gasoline was found in storm flow from Tulip Springs." Pl.'s Br. at 13. However, Plaintiff does not cite to portions of the record that support these allegations. Moreover, even if Plaintiff had accurately characterized Plaintiff's experts' testimony, it would not render polypropylene cloths any more reliable. Plaintiff does not address any of Valero's arguments concerning the reliability of polypropylene cloths, including for example, that the cloths remained in place for at least four days without any monitoring. Plaintiff has not demonstrated that polypropylene cloths are a reliable method for sampling spring water.[3]

Nor does Plaintiff address Valero's concerns regarding the Bio-Trap® data. Plaintiff simply represents that "Fisher did not reply on any of the Bio-Trap® data in forming his opinions." Pl.'s Br. at 14. Therefore, Fisher cannot testify regarding the Bio-Trap® data at trial.

V. **EDE AND FISHER'S OPINIONS ARE INCONSISTENT, OR EDE'S WEATHERING OPINION IS FLAWED BECAUSE IT IS BASED ON A FUNDAMENTAL MISUNDERSTANDING OF FISHER'S OPINION.**

Plaintiff argues Fisher and Ede do not contradict each other regarding whether there is a hydrocarbon plume on the Ranch because "Dr. Ede defers to Fisher in his deposition testimony since Ede admits that Fisher is best qualified on this issue." Pl.'s Br. at 15. But Ede derives his opinion that there must be a "fresh" source of petroleum from the fundamental assumption that there is not a plume on the Ranch and repeatedly testified that very little weathering or evaporation would occur in a subsurface plume. Ex. 17 (Ede Dep.) at 69:16-70:15, 75:18-25, 83:19-84:14, 180:24-181:4. If Plaintiff maintains its position that Fisher and Ede's opinions are not inconsistent, but that Ede simply misunderstood Fisher's opinion regarding the presence of a plume, then Ede's opinion is based on an admittedly flawed assumption as part of his deference to Fisher. This is further evidence that Valero's Motion to Exclude Ede should be granted. Dkt. 263.

---

[3] Valero did not "ignore" Fisher's consideration of air samples. Its argument is limited to "Fisher's testimony regarding *water sample* gas chromatographs." Pl.'s Br. at 12 (citing Dkt. 264 (Defs.' Mot. to Exclude Fisher) at 11-14).

Dated: November 18, 2022

Respectfully Submitted,

By: */s/ Matthew E. Johnson*

James F. Bennett, MO Bar # 46826
Megan S. Heinsz, MO Bar # 56377
Matthew E. Johnson, CO Bar # 40984
Philip A. Cantwell, MO Bar # 65505
DOWD BENNETT LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
(314) 889-7300 Telephone
(314) 863-2111 Facsimile
jbennett@dowdbennett.com
mheinsz@dowdbennett.com
mjohnson@dowdbennet.com
pcantwell@dowdbennett.com

Stephen L. Jantzen, OBA # 16247
Phillip G. Whaley, OBA # 13371
Grant M. Lucky, OBA # 17398
RYAN WHALEY
400 N. Walnut Ave.
Oklahoma City, OK 73104
(405) 239-6040 Telephone
(405) 239-6766 Facsimile
sjantzen@ryanwhaley.com
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 18, 2022, a true and accurate copy of the foregoing was electronically transmitted to the Clerk of Court using the ECF System for filing and transmitting to the following ECF registrants:

  David P. Page
  Jessica C. Ridenour
  Thomas E. Rogers
  David Mitchell Garrett, Jr.
  Christopher L. Camp
  Krystina E. Phillips
  Charles E. Geister, III
  William A. Johnson
  Elizabeth A. Price

                  By: /s/ *Matthew E. Johnson*