IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAZY S RANCH PROPERTIES, LLC, an OKLAHOMA LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VALERO TERMINALING AND DISTRIBUTION COMPANY, et al.,<br><br>Defendants. | Case No. 19-CV-425-JWB |

**MEMORANDUM AND ORDER**

Presently before the court are four motions filed by both parties. The primary focus of this order is the motion to alter or amend judgment filed by Plaintiff Lazy S Ranch Properties, LLC pursuant to Fed. R. Civ. P. 59(e). (Doc. 320.) Defendants Valero Terminaling and Distribution Company, Valero Partners Operating Co. LLC, and Valero Partners Wynnewood, LLC (collectively, "Defendants" or "Valero") filed a response. (Doc. 330.) Plaintiff did not file a reply and the time for doing so has now passed. Accordingly, this motion is ripe and ready for decision. Also pending before the court are Defendants' motion for attorney fees (Doc. 318), Defendants' motion for leave to file sealed documents (Doc. 329), and Plaintiff's motion for leave to conduct discovery with regard to attorney fees (Doc. 333). For the reasons stated below, these motions are DENIED.

**I.   BACKGROUND**[1]

This is an oil and gas pipeline case wherein Plaintiff alleges that Defendants' pipeline is leaking and contaminating the soil, water, and air on Plaintiff's ranch. Both parties hired a team

---

[1] The detailed background is set forth in the court's memorandum and order (Doc. 316) and will not be restated here.

1

of experts who took more than 100 environmental samples from various locations on and around the ranch. These samples were then tested for the existence of refined petroleum product hydrocarbons.

Defendants moved for summary judgment on the grounds that de minimis exposure to hydrocarbons, without more, is not sufficient to prove any of Plaintiff's claims. Defendants presented evidence showing that the majority of samples did not contain any hydrocarbons over the laboratory's practical quantitation limit (i.e., the minimum level at which a laboratory would feel comfortable reporting a quantitative value). And of the positive samples, the hydrocarbons that were detected were in miniscule quantities far below (in some cases 500-1,000 times lower) the lowest levels at which adverse health effects may occur, or remediation is required, according to applicable regulatory guidance.

Plaintiff did not controvert this evidence and conceded that none of the samples exceeded any regulatory thresholds. But Plaintiff opposed Defendants' motion, and moved for partial summary judgment in its own favor, on the grounds that there is *no* minimum threshold for pollution to be actionable under Oklahoma law. Thus, Plaintiff argued that the mere *existence* of hydrocarbons is sufficient, and that the hydrocarbon *concentration* levels were irrelevant to proving its claims.

These competing legal theories were central to each party's case, and the issue was briefed extensively by both parties in numerous filings throughout the record. After thoroughly reviewing the law and authorities, the court ultimately concluded that under Oklahoma law, the mere presence of hydrocarbons is insufficient to establish a legal injury. (Doc. 316 at 16.) Rather, a plaintiff must establish that the alleged contaminants exist in sufficient quantities to constitute a nuisance or to render the environment harmful, detrimental, or injurious. (*Id*.) The court then analyzed the

evidence and concluded that no reasonable jury could find that Plaintiff had a legally cognizable injury based on the small quantities of hydrocarbons that were detected in some of the samples. (*Id*. at 18-25.)  The court further found that even if Plaintiff could establish an injury, Plaintiff failed to establish that it was proximately caused by Defendants.  (*Id*. at 25-31.)  Thus, the court granted Defendants' motion for summary judgment, denied Plaintiff's motion for partial summary judgment, and entered judgment in favor of Defendants on December 7, 2022.[2]  (Docs. 316, 317.)

Defendants filed a motion for attorney fees and costs on December 21, 2022.  (Doc. 318.)  On January 4, 2023, Plaintiff filed its motion to alter or amend judgment.  (Doc. 320.)  The following day, Plaintiff filed a Notice of Appeal.  (Doc. 324.)  On January 18, 2023, Defendants filed a motion to seal an exhibit and a sentence in its response in opposition to Plaintiff's motion to alter or amend.  (Doc. 329.)  On January 23, Plaintiff filed a motion for leave to conduct discovery regarding Defendants' motion for attorney fees and costs.  (Doc. 333.)

## II.   LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to request reconsideration of a final judgment.  Such motions may be granted when "the court has misapprehended the facts, a party's position, or the controlling law."  *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation omitted).  But after entry of judgment, the public "gains a strong interest in protecting the finality of judgments."  *Id*.  For that reason, Rule 59 motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  *Id*. (citation omitted).  In other words, the motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been

---

[2] The court additionally granted summary judgment on Plaintiff's non-tort claims, and denied the remaining motions, including both parties' *Daubert* motions, both parties' motions in limine, Defendants' motion to strike, and Plaintiff's motion for leave to appear.  Plaintiff does not challenge the court's order with respect to these rulings.

3

raised prior to entry of the judgment." *Id*. (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

## III.   ANALYSIS

### A.   Plaintiff's Motion to Alter or Amend Judgment

Plaintiff argues that the court committed clear error of law when it failed to follow the Oklahoma Constitution, applicable Oklahoma State statutes defining pollution, and applicable Oklahoma case law regarding nuisance, trespass, and negligence in granting summary judgment for Defendants. Plaintiff additionally argues that the court erred in applying the summary judgment rules, by: (1) not accepting as true Plaintiff's properly supported facts; (2) not drawing reasonable inferences in the Plaintiff's favor; (3) failing to disregard evidence favorable to the Defendants; (4) impermissibly drawing inferences from evidence in Defendants' favor; and (5) impermissibly weighing the contested evidence by evaluating the credibility of witnesses.

#### 1.   Plaintiff has not demonstrated that the court committed clear error in interpreting Oklahoma law.

In Section II of its brief, Plaintiff argues that the court's interpretation of the Oklahoma Constitution, Oklahoma statutes, and applicable case law was erroneous. Specifically, Plaintiff challenges the court's conclusion that, for a plaintiff to establish a legal injury, the alleged contaminants must exist in sufficient quantities to constitute a nuisance or to render the environment harmful, detrimental, or injurious. (*See* Doc. 316 at 15-16 (quoting Okla. Stat. tit. 27A § 2-1-102(12)). Plaintiff contends that the court erred by requiring Plaintiff to establish a minimum quantity of toxicity and pollution, because, according to Plaintiff, Oklahoma law prohibits *all* pollution, so the presence of *any* contamination whatsoever is actionable.

Plaintiff's argument is composed of four parts. First, Plaintiff argues that the court's ruling conflicts with the Oklahoma Constitution. Plaintiff contends that Article 2, Section 23 expressly

prohibits any use or damage to Plaintiff's property without consent.[3] *See* Okla. Const. Art. 2, § 23 ("No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner."). Plaintiff further contends that the court ignored this provision in reaching its decision. The court disagrees. Beyond quoting the provision for the propositions that Defendants owe Plaintiff a duty of care, and Oklahoma property owners enjoy "natural rights," Plaintiff did not develop an argument based on Article 2, Section 23 in any of its briefs.[4] (*See* Doc. 212 at 9; Doc. 298 at 38, 40.) A motion to alter or amend judgment is not appropriate to advance arguments that Plaintiff failed to develop in prior briefing. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (stating that a motion to reconsider is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing").

To the extent Plaintiff is arguing that the language of Article 2, Section 23 is "explicit, plain, simple, and clear on its face," (Doc. 321 at 14), the court notes that the Oklahoma Supreme Court has held that this provision only "protect[s] a property owner against losses in the nature of *real and substantial injury* to his property, resulting from the use of adjacent or nearby property by its owner." *British-Am. Oil Prod. Co. v. McClain*, 126 P.2d 530, 532-33 (Okla. 1942) (emphasis added) (holding that an "unreasonable interference" with an owner's peaceful occupancy and enjoyment of his premises by the operation of a nearby business constitutes a taking of or damage to said premises within the meaning of Art. 2, § 23); *see also Stewart v. Rood*, 796 P.2d 321, 324

---

[3] In support of this argument, Plaintiff cites the Wynnewood Pipeline easement, which, according to Plaintiff, "does *not provide for any pollution*." (Doc. 321 at 13 (emphasis in original.)) Plaintiff did not present this argument or cite the easement in any of its summary judgment briefs. The court will not consider it for the first time on Plaintiff's motion to alter or amend judgment.

[4] Plaintiff has briefed its argument that Oklahoma prohibits all pollution in at least nine of its previous filings. (*See* Doc. 212 at 9-13; Doc. 218 at 4-9; Doc. 219 at 4-8; Doc. 220 at 5-7; Doc. 221 at 3-7; Doc. 265 at 8-11; Doc. 268 at 10-13; Doc. 272 at 5-11; Doc. 298 at 38-42.) Plaintiff did not develop an argument based on Article 2, Section 23 in any of them.

n.2 (Okla. 1990) (citing *McClain* and stating that Art. 2, § 23 authorizes landowners "who can show substantial injury to their property by operation of" business conducted on a neighboring property to recover damages in an action based on a private nuisance theory or other viable theory), *overruled on other grounds by DuLaney v. Okla. State Dep't of Health*, 868 P.2d 676 (Okla. 1993). This interpretation is consistent with the court's conclusion that contamination is not actionable under Oklahoma's pollution statutes unless it exists in sufficient quantities to constitute a nuisance[5] or to render the environment harmful, detrimental, or injurious. As such, Plaintiff has failed to demonstrate that the court's ruling contradicts the Oklahoma Constitution.

Second, Plaintiff argues that the court committed clear error in interpreting the Oklahoma Environmental Quality Code ("OEQC") statute defining pollution. *See* Okla. Stat. tit. 27A § 2-1-102(12). Plaintiff contends that the court ignored the commonly understood rules of grammar and plain language of the statute to reach an interpretation which "eviscerates the protections given by the Oklahoma legislature to Oklahoma waters." (Doc. 321 at 16.) The statutory interpretation issue has been thoroughly and extensively briefed by both parties. Plaintiff had many opportunities to advance this argument, but failed to do so. Moreover, the court finds Plaintiff's new proposed interpretation to be untenable. (*See id*. at 17.) For example, Plaintiff broadly defines pollution to include "the presence in the environment of any substance," and any "alteration of the physical properties of the environment," without qualification. (*Id*.) As such, even natural or harmless substances (e.g., water) and positive alterations to the environment (e.g., the act of pulling weeds)

---

[5] To constitute a nuisance, Oklahoma courts require evidence "of substantial interference with the use and enjoyment of property." *Laubenstein v. Bode Tower*, 392 P.3d 706, 710 (Okla. 2016) (citing *Kenyon v. Edmundson*, 193 P. 739, 740 (Okla. 1920)). The defendant must have "created an environment so inhospitable as to cause substantial injury to comfort, health, or property." *Id*. at 709. "[A] mere trifling annoyance, inconvenience, or discomfort" should not be deemed a nuisance." *Id*.

6

would constitute pollution.[6] *See Ledbetter v. Okla. Alcoholic Beverage Laws Enf't Comm'n*, 764 P.2d 172, 179 (Okla. 1988) ("Statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits.").

Plaintiff also argues that the court's interpretation of the pollution statute is limited solely to an "injury to public health." Plaintiff contends that this interpretation eviscerates traditional nuisance and trespass actions that are related solely to injuries to property that do not have a human health requirement. The court disagrees. The court interpreted § 2-1-102(12) as defining "pollution" to include contamination that exists in sufficient quantities to [1] "constitute a nuisance" or [2] "render the environment harmful, detrimental, or injurious." (Doc. 316 at 16.) With regard to the second clause, the environment must be harmful or detrimental or injurious to: "public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, or to property." Okla. Stat. tit. 27A § 2-1-102(12). When referring to this list, the court condensed it down to "public health, safety or welfare" for ease of reference.[7] But the court acknowledged that "pollution" can also exist under this definition if the environment is harmful, detrimental, or injurious to animals and property. (*See* Doc. 316 at 20 (noting there was no evidence of the alleged contamination having any effect on Plaintiff's ability to sell the ranch's water or use the property

---

[6] Plaintiff also contends that the court erred in rejecting the definition of "pollution" found in Title 82. *See* Okla. Stat. tit. 82 § 1084.2(1). In its memorandum and order, the court noted that this provision did not appear to be applicable to the facts of this case because "*the Title* where this definition is found governs OWRB administrative proceedings." (Doc. 316 at 14 (emphasis added.)) Plaintiff correctly points out that Title 82 of the Oklahoma statutes is titled "Water Rights." However, § 1084.2(1) is found in *Chapter* 14 of Title 82, which is titled "Oklahoma Water Resources Board." The court also notes that Plaintiff still cites no cases where § 1084.2 was used to establish liability outside of an OWRB proceeding. Instead, courts in similar cases have consistently applied the definition of "pollution" found in the OEQC. *See, e.g.*, *Alexander v. Halliburton Co.*, 2015 WL 4067808, at *4 (W.D. Okla. 2015) (applying OEQC definition of "pollution" in groundwater contamination case).

[7] The court also notes that public health, safety, and welfare was the parties' main focus, as Plaintiff was seeking tens of millions of dollars in damages for remediation of the Arbuckle-Simpson Aquifer, which provides drinking water for approximately 39,000 people in the region.

for recreational purposes); *Id*. at 21, 24 (noting that there was no evidence that the environment was harmful to animals and that Plaintiff's cattle continue to freely graze and drink the water on the property.))

Third, Plaintiff contends that the court erroneously used unenforceable regulatory thresholds in determining whether Plaintiff has a cause of action. This issue has already been briefed extensively. In fact, the court accepted Plaintiff's argument that it was not required to prove that the "pollution or contamination exceeds any specific level or threshold set by a regulatory body or other governmental department or agency." (Doc. 298 at 36; *see also* Doc. 316 at 12 ("But the court agrees with the rationale of the courts holding that a plaintiff is not required to prove that regulatory standards/guidance were exceeded to prevail on its claims.")) However, the applicable regulatory thresholds were still relevant to the extent that they provided a benchmark for the levels at which these hydrocarbons were known to be harmful. The court did not grant summary judgment for Defendants simply because the hydrocarbon levels were lower than the regulatory thresholds. Rather, the court granted summary judgment because Plaintiff did not present an alternative benchmark or any other evidence by which a reasonable jury could find that the hydrocarbon levels detected on the property were harmful. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) ("Scientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case.").

Fourth, Plaintiff contends that the court ignored established Oklahoma precedent. Plaintiff cites *City of Bethany v. Twin Lakes Gun Club*, 236 P.2d 255 (Okla. 1951) for the proposition that the plaintiff was allowed to establish injury with evidence of potential future lost sales of cabin rentals and fishing licenses and costs to remediate the lake to its original condition before the spill.

Plaintiff thus contends the court erred in not accepting Plaintiff's experts' opinions regarding diminished property value, lost water sales, and remediation costs to establish injury. But in *City of Bethany*, this evidence was not used to establish the plaintiff's *injury*. It was not contested that the defendant's sewerage plant constituted a nuisance after its sewerage, chemicals, and "other deleterious and harmful substances" had flowed into the lake, which "practically destroyed" all animal and fish life in the lake and caused it to become a "foul smelling body of water." *City of Bethany*, 236 P.2d at 256. The only issues on appeal concerned whether the court erred in admitting evidence relating to *damages*. The court held that the cost to restore the lake to its original condition and plaintiff's future loss of cabin rentals and fishing licenses were admissible "for determining the amount of the damages sustained as a result of the maintenance of such nuisance." *Id*. This case is therefore consistent with the court's conclusion that Plaintiff's experts merely provided a method of measuring damages, which is not relevant unless the plaintiff can establish an injury with other evidence, e.g., the destruction of a lake's animal and fish life.

Plaintiff also cites *Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272 (Okla. 1996) for the proposition that the plaintiff was not required to show "a certain quantity of pollution" or a "human health hazard" allowed to recover inconvenience, annoyance, and discomfort damages caused by defendant's interference with plaintiff's possessory interest in land. But again, it was not disputed that the plaintiffs in *Nichols* had been injured by a pipeline leak.[8] As a result of ingesting hydrocarbons from the leak, the plaintiffs' cattle "experienced prolapses, aborted or had

---

[8] The only relevant issues on appeal were whether the plaintiffs (who subleased the property) were "within the class of persons authorized to bring" nuisance claims, and whether the court erred in admitting evidence about one of the plaintiffs' medical condition. *Nichols*, 933 P.2d at 276-77, 281. The court held that plaintiffs, as possessors of the land, were entitled to bring a nuisance action, so there was no error in admitting "evidence of the physical conditions suffered by [one of the plaintiffs], which had a medically established nexus to the claimed injury." *Id*. at 277.

9

premature calves, demonstrated weight loss and/or died." *Nichols*, 933 P.2d at 275 n.2. Plaintiff did not present any similar evidence in this case.

Finally, the court notes that throughout Section II of its brief, Plaintiff repeatedly claims that the pipeline leak produced odors which made up to ten people "sick" and caused headaches on numerous occasions. (*See, e.g.*, Doc. 321 at 21.) At summary judgment, Plaintiff made just one reference to the odors "caus[ing] stress, including headaches." (Doc. 298 at 32.) In the cited deposition testimony, Robert Charles Roos IV states that the odor:

> smells like a refined diesel product. It's kind of a cross between diesel, gasoline, kerosene smell. I can't describe the smell. And it will—if you [stay] there very long it will give you a headache and you can taste it in your mouth. And—and visiting with my experts and everything, it—there is definitely a refined product and we can't think of any—it's not—it's not natural. It's a manmade product and it's the only source of the—of that manmade product or refined product anywhere around there.

(Doc. 298-13 at 176:10-20.) Construed in the light most favorable to Plaintiff, this testimony merely suggests that prolonged exposure to whatever the odor was emanating from this spring can cause a headache. It fails to support Plaintiff's present contention that the odor has caused multiple individuals to suffer from headaches, stress, or illness; nor does it establish the cause of the odor or who is responsible for it. To the extent that there is any evidence of the odor causing headaches, stress, or illness elsewhere in the record, Plaintiff failed to identify it with particularity to any part of the record as required by the federal and local rules governing summary judgment motions. *See Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1268 (10th Cir. 2008) (refusing to consider argument where appellant provided no citation within voluminous record to support factual claim). And a motion to alter or amend judgment is not appropriate to present new facts that could have been presented originally.

Accordingly, the court finds that Plaintiff has failed to show that the court's interpretation of the Oklahoma Constitution, Oklahoma statutes, and applicable case law was erroneous.

> **2. Plaintiff has failed to demonstrate that the court erred in applying the standards governing summary judgment.**

In Section III of its brief, Plaintiff argues that the court erroneously applied the summary judgment rules. First, Plaintiff contends that the court erred in not treating as true Plaintiff's experts' reports and testimony about the "loss of use and enjoyment (monetary damages by way of lost/diminished value and lost water sales, and created gas/diesel odors and headaches), the need for restoration, and the loss of property value." (Doc. 321 at 21, 32.) Plaintiff contends that this testimony "supports a substantial injury," and the weight to afford such testimony is for a jury to decide. (*Id.*)

The court disagrees. Plaintiff's experts assumed that Plaintiff had suffered a legally cognizable injury and merely provided opinion testimony about the nature and extent of Plaintiff's damages based on this assumption. For example, Macbeth testified that it would cost approximately $43 million to completely remediate the soil and water beneath the property, (Doc. 132 at 7-8), and Boyle testified that the "market value" of potable water beneath the property was approximately $22.5 million, (Doc. 129 at 2, 6, 10-12). But Macbeth did not offer any analysis of the alleged contamination or any other testimony by which a reasonable jury could conclude that such extensive remediation was necessary.[9] And Boyle did not offer any evidence or testimony establishing the groundwater was not potable or safe for consumption.[10] Thus, even accepting this

---

[9] Macbeth expressly disclaimed that she was offering any opinions about the "quantities of materials spilled" or the "extent of the contamination." (Doc. 132 at 8.)

[10] It was uncontroverted that Plaintiff filed an OWRB groundwater use permit application in October 2019, more than a year after the water at Tulip Springs was first tested. (Doc. 267-31.) As part of that proceeding, Plaintiff was asked in September 2021 to formally identify "all known or suspected contamination, both surface and subsurface," to which Plaintiff responded "None." (Doc. 267-32 at 4.) It was also uncontroverted that all the water samples that were taken satisfied federal and state drinking water standards for public water supplies.

testimony as true, it fails to establish that Plaintiff has been injured under Oklahoma law by the alleged contamination. *See Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 976-77 (10th Cir. 2018) (holding that while issue of whether something qualifies as an "inherent risk" is generally a question for the jury, expert witness's conclusory testimony was insufficient to defeat summary judgment because it "put the cart before the horse" by focusing on the defendant's alleged breach without first establishing the defendant had a duty to warn of a hazard beyond providing an "unsupported and conclusory statement"). And to the extent that Plaintiff's experts opined that Oklahoma prohibits all pollution (e.g., Doc. 132 at 12-13), such opinions were impermissible legal conclusions. *See Estate of Smart v. City of Wichita*, 2020 WL 3618850, at *2 (D. Kan. 2020).

Second, Plaintiff contends the court failed to view the evidence of contamination and evidence of a leak in the Wynnewood Pipeline in the light most favorable to Plaintiff. The court disagrees. Even accepting the positive samples as true, the mere existence of hydrocarbons in some of the samples is insufficient to establish a legal injury. Plaintiff failed to show that these particular hydrocarbons, in the quantities at which they were detected, will have some adverse effect on persons, animals, property, etc. *See Alexander v. Haliburton Co.*, 2015 WL 4067808, at *3-4 (W.D. Okla. 2015) (declining to adopt the EPA Health Advisory setting the threshold for perchlorate in groundwater at 15 ppb and denying defendant's motion for summary judgment because the landowners presented "evidence from their experts regarding the health hazards of perchlorate at levels lower than 15 ppb and have referenced regulatory actions of several states that have set perchlorate standards at levels much lower than 15 ppb"); *cf. Hall v. Conoco Inc.*, 886 F.3d 1308, 1317 (10th Cir. 2018) (explaining that a plaintiff ordinarily must present expert

testimony regarding the harmful level of exposure to a chemical and evidence quantifying the plaintiff's exposure to such chemical); *Twyman v. GHK Corp.*, 93 P.3d 51, 59-60 (Okla. Civ. App. 2004) (faulting an expert for his inability to identify the presence of a chemical at sufficient levels to have caused the alleged injury).

Nor did Plaintiff present sufficient evidence by which a reasonable jury could conclude that a leak in the Wynnewood Pipeline was the proximate cause of the hydrocarbons. "Ordinarily, what constitutes the proximate cause of an injury is a question of fact . . . [h]owever, the question of proximate cause becomes a question of law when the facts are undisputed and there is no evidence from which a jury could reasonably find a causal connection between the allegedly wrongful act and the injury." *Eck v. Parke, Davis & Co.*, 256 F .3d 1013, 1023 (10th Cir. 2001). Here, it was uncontroverted that Plaintiff could not identify the location of the alleged leak that Plaintiff contends was the source of the hydrocarbons. While the Wynnewood Pipeline did cause an extensive spill in April 2018, this occurred six miles south of Plaintiff's property and Plaintiff concedes that none of the contamination from that spill had migrated onto its property.[11] Plaintiff nevertheless contends that this leak demonstrates that the Wynnewood Pipeline suffers from "numerous anomalies and flawed construction" and "undetected weaknesses," so it can be inferred that a leak likely exists somewhere in the three-mile section that crosses Plaintiff's property. (Doc. 321 at 34.) But "[s]peculation is the antithesis of proximate cause."[12] *Butler ex rel. Butler v. Okla.*

---

[11] Plaintiff notes that Defendants asserted attorney-client and work-product privilege to "hide the ball" regarding the April 2018 spill. (Doc. 321 at 34.) But Plaintiff does not offer any meaningful challenge to the court's denial of Plaintiff's motion to compel the production of records and documents relating to this spill.

[12] Plaintiff also contends that geologist Blackwood's deposition testimony constitutes direct evidence of a leak. Blackwood testified that he was present at one of the digs when he saw an unspecified fluid coming from a pipeline on the property. (Doc. 298-12 at 132:21-133:2.) But Blackwood was unable to specify which pipeline the fluid came from, what the fluid was, and he conceded that what he observed may not have even been a leak since Plaintiff's representatives were present and taking samples of the soil. (*Id.* at 133:3-10.) To rely on such testimony to conclude that the Wynnewood Pipeline was actively leaking refined petroleum products would be speculation. "Testimony

*City Pub. Sch. System*, 871 P.2d 444, 446 (Okla. Civ. App. 1994). Thus, even viewing this evidence in the light most favorable to Plaintiff, it is insufficient to raise a genuine issue of fact.

Third, Plaintiff contends the court failed to disregard evidence favorable to Defendants. But this argument misstates the applicable summary judgment rules. *Magoffe v. JLG Indus., Inc.*, 375 F. App'x 848, 856 (10th Cir. 2010) ("While our summary judgment standard requires us to consider the evidence in the light most favorable to the nonmoving party, it does not require us to disregard undisputed evidence favoring the moving party."). Moreover, Plaintiff fails to identify which expert opinions the court allegedly erred in relying upon. The court notes that Plaintiff moved to exclude the testimony of Garrity and Larson for failure to disclose their "materials considered" forming their opinions as required by Fed. R. Civ. P. 26(a)(2)(B)(ii). (Doc. 258 at 12; Doc. 268 at 23.) But the court did not rely on Garrity or Larson's reports or testimony in reaching its findings or conclusions. (Doc. 316 at 18.) Plaintiff also fails to explain why it believes that Defendants' evidence regarding other sources for the leaks was not properly supported.

Fourth, Plaintiff contends that the court impermissibly drew inferences from the evidence supporting Defendants' favor. This argument has already been addressed above.

Finally, Plaintiff contends the court impermissibly made a credibility determination when it discounted Mr. Roos's testimony. But the court did not find Mr. Roos to be uncredible or discount any portions of his testimony. Rather, the court found that, in the absence of evidence showing the hydrocarbon levels on the property were harmful, Mr. Roos's decision to forego water sales and prohibit recreational activities was not evidence of Plaintiff's legal injury. This was a

---

which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Trujilo v. Huerfano Cnty. Bd. Of Cnty. Com'rs*, 349 F. App'x 355, 361 (10th Cir. 2009).

legal conclusion regarding the relevance of Mr. Roos's testimony to prove that Plaintiff had been injured, not a factual determination regarding Mr. Roos's credibility.

Accordingly, the court denies Plaintiff's motion to alter or amend judgment as nothing contained therein warrants modification of the court's memorandum and order. Plaintiff largely repeats all of its prior arguments made regarding the parties' summary judgment motions. To the extent Plaintiff raises new arguments and authorities, Plaintiff has failed to demonstrate that the court committed clear error of law in granting summary judgment for Defendants. Plaintiff's motion is thus denied.

### B.     Remaining Motions

Also pending before the court are Defendants' motion for attorney fees (Doc. 318), Defendants' motion for leave to file sealed documents (Doc. 329), and Plaintiff's motion for leave to conduct discovery with regards to attorney fees (Doc. 333).

First, Defendants' motion for leave to file sealed documents is denied because neither party presented any facts to overcome the presumption in favor of disclosure. *See* LCvR 79.1(b) (stating that a motion to file a portion of a document under seal "must contain sufficient facts to overcome the presumption in favor of disclosure"). Consistent with this ruling, the court orders Defendants to file publicly and without redactions, the response brief (Doc.329-1) and exhibit (Doc. 329-2) within 14 days.

Second, the court notes that the parties largely agree that Plaintiff's pending appeal on the merits will impact the court's determination of the motion for attorney's fees. In its response to Defendants' motion, Plaintiff contends that the granting of any attorney's fees and costs at this juncture would be premature. (Doc. 322 at 10.) Plaintiff thus requests the court stay the award of attorney's fees until such time as the pending motion to reconsider and appeal are resolved. In its

reply, Defendants argue the court should rule on the motion for attorney's fees, but agrees it is reasonable to stay the execution of the judgment on fees and costs pending appeal. (Doc. 328 at 10.)

Despite the appeal, this court retains jurisdiction to decide issues collateral to the final judgment such as a motion for attorney's fees. *McKissick v. Yuen*, 618 F.3d 1177, 1196-97 (10th Cir. 2010). But the district court is not required to resolve a motion for attorney's fees or costs before the appeal is completed. *See Hudson v. AIH Receivable Mgmt. Servs.*, 2012 WL 13026795, at *1-2 (D. Kan. 2012); Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendments ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.") Indeed, "district courts often defer ruling on motions for attorneys' fees and costs or deny the motions without prejudice pending the resolution of an appeal on the merits." *Chung v. Lamb*, 2019 WL 8060186, at *2 (D. Colo. 2019) (citing cases).

Here, the court finds the most appropriate course of action is to deny without prejudice Defendants' motion for attorney's fees and Plaintiff's related motion for leave to conduct discovery. Because the attorney's fees motions are predicated on the court's summary judgment order, the parties' interests would best be served by waiting for the Tenth Circuit's decision before determining if and/or what amount of attorney's fees and costs should be awarded. If the summary judgment order is reversed, Defendants will not be entitled to attorney's fees or costs as the prevailing party. And if the order is affirmed, Defendants may be entitled to additional fees and costs. Accordingly, "the interests of judicial efficiency and fairness weigh in favor of waiting for a mandate from the Tenth Circuit before awarding or denying attorneys' fees in this matter."

16

*Hudson*, 2012 WL 13026795, at *2; *see also Chung*, 2019 WL 8060186, at *3 (denying motion for attorney's fees without prejudice and deferring consideration until after the Tenth Circuit addressed the merits of the plaintiff's pending appeal). The parties shall have 14 days from the date of a Tenth Circuit mandate to renew their motions.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's motion to alter or amend judgment (Doc. 320) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for attorney's fees (Doc. 318) is DENIED without prejudice. Defendants may renew such motion, if not mooted by the Tenth Circuit's resolution of Plaintiff's appeal no later than 14 days after the date the Tenth Circuit issues a mandate in this case.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to conduct discovery with regards to attorney fees (Doc. 333) is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendants' motion for leave to file sealed documents (Doc. 329) is DENIED. Defendants shall file publicly and without redactions, Defendants' response brief (Doc.329-1) and exhibit (Doc. 329-2) no later than 14 days from the date of this Order.

IT IS SO ORDERED. Dated this 2nd day of March, 2023.

*s/ John W. Broomes*
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE