IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

LAZY S RANCH PROPERTIES, LLC, an
OKLAHOMA LIMITED LIABILITY
COMPANY,

      Plaintiff,

v.                                                                Case No.  19-CV-425-JWB

VALERO TERMINALING AND
DISTRIBUTION COMPANY, et al.,

      Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on two motions by Defendants, one to exclude the report of Philip J. Isaacs and one to exclude the testimony of Matthew Trimble, who was substituted for Philip J. Isaacs in March 2025 and adopted his report and opinions. (Doc. 388, 428.) The motions are fully briefed and ripe for decision. (Docs. 388, 400, 407, 428, 442, 446.) The motions are denied for the reasons stated herein.

**I.     Facts**

The facts in this case have previously been presented several times by the court. (Doc. 316, 335, 357, 375, 427.) Briefly repeated here, Plaintiff owns and runs cattle operations on 6,150 acres of real property in Carter County, Oklahoma (the "Lazy S Ranch" or "property"). The Roos family bought the property for approximately $8.6 million in December 2017. The Lazy S Ranch lies above a portion of the Arbuckle-Simpson Aquifer, which covers an area of over 500 square miles in south central Oklahoma. The aquifer feeds numerous freshwater springs and clear running streams in the region.

Several pipelines cross the property. Central to this case is a 12-inch refined products

pipeline operated by Valero (the "Wynnewood Pipeline"). The Wynnewood Pipeline carries gasoline and diesel from Valero's refinery at Ardmore to a refined products terminal at Wynnewood, some 30 miles to the north. Approximately three miles of the Wynnewood Pipeline is located beneath the property. This section of the pipeline runs essentially in a north-south direction about 0.5 miles east of Highway 77. The pipeline also runs about 0.5 miles east of a spring called Tulip Springs in the northwest corner of the property near Highway 77. In July 2018, Robert Charles "Cinco" Roos, a representative of Lazy S Ranch, claims to have smelled a diesel fuel odor emanating from Tulip Springs. Plaintiff then retained multiple experts to begin investigating hydrocarbon contamination of the property. One of the experts that Plaintiff retained was Philip J. Isaacs, who determined the effect of the alleged contamination on the value of the property. (Doc. 127, 198, 199.)

In December 2019, Plaintiff filed suit against Defendants, who are all related entities operating the pipeline, alleging eleven claims under Oklahoma state law. Currently, only three claims remain, and Defendants filed motions to exclude all of Plaintiff's expert witnesses under the *Daubert* standards of Federal Rule of Evidence 702. This included moving to exclude the testimony of Mr. Isaacs. (Doc. 388, 400, 407.) However, prior to the scheduled hearing on Defendants' *Daubert* motions in February 2025, Plaintiff notified the court on January 30 that Mr. Isaacs was no longer able to testify due to his personal health situation and moved to substitute Matthew Trimble instead. (Doc. 413.) The court granted the motion to substitute on March 26, 2025, and Mr. Trimble filed his Rule 26 expert report on April 1, 2025. (Docs. 422, 423.) Nevertheless, before a new round of briefing could be completed regarding Mr. Trimble's opinions, the court issued an order on Defendants' *Daubert* motions regarding Plaintiff's other experts on May 5, 2025. (Doc. 427.) This order excluded the opinions of Dr. Kevin Boyle and

limited the topics on which Plaintiffs other experts, Trae Miller, Dr. J. Burton Fisher, Dr. Kenneth Ede, and Dr. Tamzen Macbeth, could opine. The next day, Defendants filed their present motion to exclude Mr. Trimble, and a full round of briefing has ensued on Mr. Trimble's testimony in light of the undersigned's other *Daubert* rulings. (Docs. 428, 442, 446.)

**II.     Standard**

Generally, district courts have broad discretion to determine whether a proposed expert may testify. *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999). Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony bears the burden of showing the expert testimony is admissible. *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1201 (10th Cir. 2023). "First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277–78 (W.D. Okla. 2018). After determining an expert is qualified, "the district court must satisfy itself that the testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citation omitted). Generally, a district court should focus on a proffered expert's methodology and "not on the

conclusions that they generate." *Id*. at 595. However, an expert's conclusions are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222–23 (10th Cir. 2003).

**III.    Analysis**

As with all experts, the court must initially determine if Mr. Trimble is qualified to offer his opinions. Given his experience, the court is convinced that Mr. Trimble has sufficient technical knowledge to opine on property appraisal. He has numerous years of experience in the field of real estate appraisal, is a Certified General Appraiser in Oklahoma, and is a member of the Appraisal Institute. He also has published articles in The Appraisal Journal and currently teaches real estate appraising at the University of Central Oklahoma. His credentials satisfy the court that he has sufficient technical and specialized knowledge that would aid the jury in their factual determinations regarding the valuation of the property.

Moving to the arguments in the *Daubert* motion, Defendants move to exclude the Land & Building Improvements Value Damages calculation of $13,050,000 from both the Isaacs report (Doc. 388) and Mr. Trimble's testimony on the Isaacs report. (Doc. 428.) Although these two motions are separate on the docket, Defendants largely make the same arguments in their briefs since Mr. Trimble adopted the opinions of Mr. Isaacs. Thus, the court will rely on the arguments and briefing regarding Mr. Trimble since those briefs constitute the most recent filings on the issues presented by Defendants. Defendants contend that Mr. Trimble's conclusions are improperly drawn under Oklahoma law, his conclusions improperly rely on other expert testimony, and his conclusions employ improper valuation methodology. (Doc. 428.) The court will address each of these in order.

First, relating to whether Mr. Trimble failed to follow the proper procedure for measuring alleged damages under Oklahoma law, Defendants contend that Mr. Trimble failed to properly calculate the exact time when the Wynnewood Pipeline began to leak and contaminate the property. (Doc. 428 at 6–8.) The substance of Defendants' argument is that without a definitive date determining when an alleged leak started, Mr. Trimble cannot identify the reasonable market value of the land immediately before and immediately after the injury to the land as required by Oklahoma law. *See Houck v. Hold Oil Corp.*, 867 P.2d 451, 461 (Okla. 1993). The court is not convinced that Oklahoma law requires such a strict temporal determination. Given the subterranean nature of the pipeline, it is quite possible that a leak could exist undetected for some time before being discovered. The fact that damage to property is undiscovered for a time should not preclude the property owner from being able to receive compensation for that damage.

Defendants argue from the case *Sinclair Oil & Gas Co. v. Allen*, 143 Okla. 290, 288 P. 981 (Okla. 1930), that Plaintiff needs to have a specific time when the contamination occurred. Defendants argue that Mr. Trimble's model is insufficient to establish damages if he cannot show the value of the property "immediately before the pollution." *Sinclair Oil & Gas Co.*, 288 P. at 983. However, the question of whether the property is contaminated is the very core of the dispute in this case. Thus, this case is factually distinct from the issues in *Sinclair Oil & Gas Co.*, because the stream that the defendant companies polluted with discharge from their oil and gas lease was open and notorious. The property owner lost cattle and mature trees due to the pollution of a stream, and there was a clear time when the contamination of the property's water started and from whom the contamination originated. Given these facts, the Oklahoma Supreme Court held that Plaintiff's failure to present the value of the property prior to the contamination was an error. Compare those facts with the alleged contamination in this case. Although there was some prior

notice that the property might be contaminated before the Roos family bought the property in 2017,[1] the underground contamination was not allegedly confirmed until Plaintiff's experts Dr. Fisher and Dr. Ede conducted their tests on the property. This court has already allowed Dr. Fisher and Dr. Ede to opine on contamination of the property. (Doc. 427.) The undersigned's prior order only excluded their opinions on whether the Arbuckle-Simpson Aquifer has been contaminated based on insufficient facts and data. (*Id.* at 16, 18.) These experts will opine that starting in 2018 they began conducting tests that allegedly confirmed the Wynnewood Pipeline is the source of contamination on the property. (Docs. 130, 131.) The court rules that these reports represent the time at which injury to the property was officially recognized (or at least recognized in a way that affects the value of the property), and thus 2018 is the date around which the reasonable market value of the land should be calculated. *See Nichols v. Burk Royalty Co.*, 576 P.2d 317, 321 (Okla. Civ. App. 1977) (affirming a property damage calculation where "witnesses based their before calculations upon the date permanent injury was first recognized").

The Isaacs Report includes comparable sales from both sides of this 2018 date (the report has comparable land sales ranging from 2016–2021) and proffers the difference in land values between unimpaired land and impaired land. (Doc. 127.) Although Defendants disagree on the methodology and conclusions of the Isaacs report, these topics are best left for development in cross examination. The court is sufficiently satisfied with the data and methodologies Mr. Trimble intends to proffer such as to satisfy a Rule 702 threshold *Daubert* determination.

Second, Defendants contend that Mr. Trimble and the Isaacs Report "uncritically adopt[s]

---

[1] Defendant cites to reports of potential contamination on the property "much earlier than July 2018, perhaps as early as 2011." (Doc. 442 at 9.) If true, this fact could become relevant for purposes of discerning the true amount of damages inflicted on the property. Although this fact is certainly something which can be developed in cross examination, it is not necessarily fatal to Mr. Trimble's damages calculations because the property value does not appear to have been affected by this contamination until later dates. Thus, this earlier report of contamination is not the same sort of open and notorious contamination with which the Oklahoma Supreme Court was concerned in *Sinclair Oil & Gas Co. v. Allen.*

opinions of other experts" (Doc. 428 at 8) such that Mr. Trimble lacks an adequate foundation for his conclusions. It is true that an expert cannot offer an opinion based on the opinion of another expert "simply because the other is an expert." *Mooring Cap. Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010). However, this decision largely relates to an expert being a vehicle for other opinions which are not otherwise available to be admitted. "[A]s a general matter, there is nothing objectionable about an expert relying upon the work a colleague." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017). Indeed, an "expert may rely upon another expert's opinion if 'the facts or data relied upon [are of] the kind that experts in the particular field would reasonably rely on ... in forming an opinion on the subject.'" *Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1144–45 (D. Utah 2021) (quoting *Gopalratnam*, 877 F.3d at 789).

As noted above, the court has already ruled on the admissibility of Plaintiff's other experts and allowed some of them to testify as to at least some of their opinions on the alleged contamination of the property. Therefore, Mr. Trimble would not be a vehicle for otherwise inadmissible expert opinion. Moreover, as argued extensively by Defendants in their briefing, Mr. Trimble and Mr. Isaacs are not environmental experts. Thus, they must reasonably rely on other experts to provide a basis for their own work. Indeed, as noted by Plaintiff in its response to the motion, "the experts upon which Trimble relies for contamination on the Lazy S Ranch *will be testifying* in the very same trial as Trimble." (Doc. 442 at 19 (emphasis in original).) Thus, Mr. Trimble will not be offering his opinions on contamination to argue in the first instance that the property is contaminated, but rather to show how this alleged contamination could shape the property value. Thus, Mr. Trimble and the Isaacs report's reliance on the opinions of Mr. Miller, Dr. Fisher, and Dr. Ede regarding contamination of the property is well within the facts and data

7

upon which experts in the field of appraisal would normally rely to satisfy Rule 702 and Rule 703 concerns.

Third and finally, Defendants contend that Mr. Trimble's "use of comparable sales and calculation of building improvement damages is based on a flawed methodology" which leaves his opinions no more than *ipse dixit*. (Doc 428 at 12.) Defendants point to numerous alleged flaws in Mr. Trimble and the Isaac Report's methodology, such as his failure to include the amount the Roos family paid for the ranch in 2017, his exclusion of benefits from the land from the value of the land itself, his choice of comparable "impaired" land sale sites, his "subject impaired" valuation of $1200 per acre, and his conclusion that $750,000 of the $1,569,000 in capital improvements on the property are a total market loss. While these are certainly concerns which can and should be developed on cross examination, they do not rise to the level of exclusion under Rule 702. Although the damages may be overstated due to the methodology employed, Mr. Trimble (and by extension the Isaacs Report) still includes sufficient facts and data on which to base his opinion along with reliable and accepted methods which were applied to this data. The fact that Defendants disagree with the conclusions does not mean that they are insufficient to survive Rule 702 or that they are unhelpful to a jury. Therefore, Defendants' motions to exclude testimony from Mr. Trimble and the Isaacs report are denied.

### IV.    Conclusion

Defendants' motions to exclude Matthew Trimble who will be offering the conclusions of Philip Isaacs (Doc. 388, 428) are DENIED. IT IS SO ORDERED. Dated this 12th day of September, 2025.

                                         s/ John W. Broomes
                                         JOHN W. BROOMES
                                         UNITED STATES DISTRICT JUDGE