**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

LAZY S RANCH PROPERTIES, LLC, an
Oklahoma limited liability company,

                              Plaintiff,

v.

VALERO TERMINALING AND DISTRIBUTION
COMPANY; VALERO PARTNERS OPERATING
CO. LLC; and VALERO PARTNERS
WYNNEWOOD, LLC,

                              Defendants.

Case No. 19-cv-425-JWB
Judge John W. Broomes

**DEFENDANTS' RENEWED APPLICATION FOR ATTORNEY'S FEES AND OTHER**
**NON-TAXABLE COSTS AND SUBMISSION OF SUPPORTING DOCUMENTATION**

Defendants hereby submit their Renewed Application for Attorney's Fees and Costs under

12 Okla. Stat. § 1101.1(B), 12 Okla. Stat. § 940(A), and E.D. Okla. Local Rule 54.2.

Undersigned counsel conferred with counsel for Lazy S Ranch LLC on April 27,

2026.  Lazy S Ranch's counsel advised that it was sure it was going to oppose the fee application.

**I.      Introduction**

On December 21, 2022, Valero filed its initial application for fees and costs up to that time

at ECF No. 318 and related submissions, which demonstrate the fees and expenses were reasonable

for work up to that time.  A chart summarizing the prior application (ECF No. 318) follows:

| Description | Amount |
|---|---|
| Ryan Whaley Fees | $1,182,643.00 |
| Dowd Bennett Fees | $699,288.50 |
| In-House Counsel's Fees | $335,305.50 |
| Expert Fees | $570,351.65 |
| Other Costs | $136,713.58 |
| **Total** | $2,924,302.23 |

1

A summary of the fees and expenses described in this <u>2026 renewed application</u> follows:

| Description | Amount |
| --- | --- |
| Ryan Whaley Fees | $142,569.00 |
| Dowd Bennett Fees | $2,340,653.80 |
| Expert Fees | $543,705.20 |
| Other Costs | $207,788.98 |
| **Total** | $3,234,716.98 |

Based on the above, the <u>total amount</u> requested by Valero follows:

| Description | Amount |
| --- | --- |
| Ryan Whaley Fees | $1,325,212.00 |
| Dowd Bennett Fees | $3,039,942.30 |
| In-House Counsel's Fees | $335,305.50 |
| Expert Fees | $1,114,056.85 |
| Other Costs | $344,502.56 |
| **Total** | $6,159,019.21 |

## II.      Statutory Bases for Award of Fees and Costs

Title 12 Okla. Stat. § 940(A) states that the prevailing party in any action for damages to property "shall be allowed reasonable attorney's fees, court costs and interest." *Schaeffer v. Shaeffer*, 743 P.2d 1038, 1039 (Okla. 1987); ECF No. 42 ¶ 54, ¶ 60 (Plaintiff alleging negligent and willful injury to property); *id*. at ¶¶ 66, 70, 75, 80, 85, 96 (Plaintiff acknowledging § 940(A) applies to this case).

Oklahoma Statute §1101.1(B) states that a party shall be entitled to reasonable litigation costs and reasonable attorney fees incurred following an offer of judgment.  On January 18, 2022, Valero made such an offer of judgment in the amount of $735,010.00.  ECF No. 318-1 (Jantzen 2022 Aff.) ¶ 5; ECF No. 318-2 (Offer of Judgment); Declaration of James F. Bennett ¶ 12.  This statute provides an additional basis for an award of fees and costs. *Hubbard v. Kaiser-Francis Oil Co.*, 256 P.3d 69, 72-73 (Okla. 2011); *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1278-80 (10th Cir. 2011).

2

### III.    The Requested Attorney's Fees are Reasonable

The renewed application seeks an award of fees for work after December 21, 2022 in the amount of $2,483,222.80. This amount is supported by the Declarations of Alex Miller, head of litigation at Valero who attended the trial, James Bennett, and Steve Jantzen.  The Declarations provide redacted invoices, descriptions of the lawyers involved, the rates, the hours, and descriptions of the work performed.[1]

The trial court "is best positioned to judge the reasonableness of fee requests in each case," and enjoys considerable discretion in awarding fees.  *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1177, 1196 n.43 (10th Cir. 2023).  This is particularly true where the Court observed two days of Rule 702 hearings, the pre-trial conference, and two weeks of trial, in addition to ruling on many written motions.  *Moore v. City of Des Moines, Iowa*, 766 F.2d 343, 345-46 (8th Cir. 1985) ("The trial judge has a special understanding of the degree of complexity of the issues, and a unique ability to evaluate first hand the competence of the attorneys….").

Valero paid the fees at issue, which is typically "[t]he best evidence of the value of the lawyer's services."  *Centennial Archaeology v. AECOM*, 688 F.3d 673, 680 (10th Cir. 2012) (citation omitted).  In addition, *Burk v. Oklahoma City*, 598 P.2d 659, 661-62 (Okla. 1979), sets out factors that may be considered in assessing a fee application under Oklahoma Rule of

---

[1] The unredacted detailed billing records contain information protected by the attorney-client privilege and work product doctrines. *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) ("bills, ledgers, statements, time records and the like which also reveal the nature of the services provided, such as researching particular areas of law, also should fall within the [attorney-client] privilege"); *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492-93 (10th Cir. 1990); *U.S. v. Keystone Sanitation*, 885 F. Supp. 672, 675 (M.D. Pa. 1994) (billing records can "reveal litigation strategy and/or the nature of services performed"). Valero would provide unredacted invoices for *in camera* review, if necessary. *Team Sys. Int'l, LLC v. Haozous*, 706 F. App'x 463, 466-67 (10th Cir. 2017) (upholding award of fees where district court reviewed unredacted billing records *in camera*); *Fry v. AOK Energy Servs., LLC*, 2015 WL 13388434, at *1 (E.D. Okla. Oct. 2, 2015) (court awarded fees after *in camera* review of unredacted records).

Professional Conduct 1.5, which has been adopted by this Court in Local Rule 83.6(b). These include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Burk*, 598 P.2d at 661-62. These factors support an award of fees here.

### A.    Time and Labor Required and Novelty and Difficulty

Litigation of this six-year case required significant attorney and paralegal time and expense. Bennett Decl. ¶¶ 19-22; Jantzen Decl. ¶ 9(c). Over fifty depositions were taken, with 33 noticed by Plaintiff. Plaintiffs designated six experts – requiring depositions and the designation of competing experts. Bennett Decl. ¶ 20. The docket has 592 entries and reflects a significant amount of motion practice. The case involved in-person Rule 702 hearings, as well as a Rule 56 motion and appeal. Trial preparation and trial required an intense, concentrated effort, particularly given the technical information that needed to be distilled and presented efficiently to the jury and the legal issues and motions that needed to be addressed before and during trial. *Id.* ¶ 21. This case also involved novel theories and legal issues because of the absence of an identified leak on the pipeline. Plaintiff attempted to prove a leak through circumstantial evidence, supported by a stable of experts, which in Valero's experience is novel. *Id.* ¶ 22. The novelty of the legal theories of the case is also reflected in the adjustments to the Oklahoma pattern jury instructions for nuisance and negligence per se based on the Tenth Circuit's opinion. *Id.*

4

### B.    The Amount Involved and Results Obtained

This case made serious allegations that affected the reputation of Valero and its engineers regarding pipeline operations.  Bennett Decl. ¶ 23.  The case involved a request for injunctive relief involving pipeline replacement and remediation, valued by Plaintiff at $43,292,000.  *Id.*  It also involved a claim for lost water-sale damages of $22,537,045 and property damage claims of $13,050,000.  *Id.*  The case contained an unspecified claim for loss of use and enjoyment, for which Plaintiff requested $1 million at trial.  *Id.*  The case involved a claim for punitive damages and a claim for attorney's fees.  *Id.*  At trial, Plaintiff requested a punitive damages award in an amount twice what was permitted under Oklahoma law, but had Plaintiff requested the correct amount, such an award would have been a significant sum.  *Id.*  The result of the trial was a defense verdict.  *Id.*

### C.    Professional Relations with Client/Time Commitment/Payment

Valero and its lawyers in this case have a long-time relationship.  Bennett Decl. ¶¶ 24, 26; Miller Decl. ¶ 5.  Ryan Whaley has represented Valero throughout the life of the case, now over six years.  Dowd Bennett LLP has a long-term relationship with Valero, dating back to the firm's founding in 2006.  Dowd Bennett has successfully tried to verdict four cases for Valero (in Texas, Illinois, Louisiana and now Oklahoma) and has represented the company for over 20 years in many other cases.  Mr. Miller explains that Valero retains the firm "to represent us in complex litigation in various locations across the country" and that the firm has "earned that role by consistently having counsel who are experienced with the pertinent law and our business" and that the firm provides "high-quality legal services and excellent results."  Miller Decl. ¶ 5.

**D.**       **Skill to Perform Services and Experience, Reputation and Ability**

Valero's trial counsel has extensive experience with complex, environmental federal court litigation.  Ryan Whaley's attorneys have substantial experience and expertise in complex litigation, and the firm staffed this matter with seasoned lawyers whose practices include commercial, environmental, energy, and other high-stakes civil disputes.  Jantzen Decl. ¶ 12. Dowd Bennett LLP has been the lead trial lawyer in many multi-week complex jury trials both for Valero and other major corporations and has received many honors and recognitions.  Bennett Decl. ¶¶ 5-9; 27-29.  Without belaboring the point, Dowd Bennett's trial team members have long histories of trying cases, including many multi-week (or multi-month) successful jury trials on complex issues involving engineering disciplines, claimed exposure to toxic substances, and the oil and gas industry.  *Id.* ¶¶ 27-28.  The overall Valero team has a strong academic background, considerable federal clerkship experience, and significant federal court litigation and trial experience.  *Id.* ¶¶ 29-31.  Mr. Miller states on behalf of Valero that he has personally observed three jury trials conducted by Dowd Bennett and that in his view those trials "demonstrated exceptional preparation, clear communication, and respect for the judicial process, all of which resulted in defense verdicts."  *Id.*

**E.**       **The Fee Customarily Charged in the Locality for Similar Services**

The rates for the lawyers at issue in this application are reasonable.  Dowd Bennett LLP's rates are set forth in the invoices and described at ¶¶ 32-33 of the Bennett Declaration.  Ryan Whaley's rates are set forth at ¶ 12 of the Jantzen Declaration.  The Declaration of Alex Miller explains from Valero's perspective why the rates are reasonable and establishes that Valero in fact pays higher rates for certain Oklahoma litigation. Miller Declaration ¶¶ 4-10.  Valero negotiates the rates on a regular basis, closely supervises the work, and reviews each invoice before it is paid.

*Id.* ¶¶ 4, 6, and 9.  As an Oklahoma practitioner, Mr. Jantzen explains that the rates for both law firms involved are reasonable.  Jantzen Dec. ¶¶ 12-13.

Plaintiffs may challenge the rates set forth in this application by comparison to various rate tables for general work in the area.  However, this case involved (i) complex issues of environmental law, and (ii) the presentation of complicated evidence to a federal court jury, both in a trial that carried significant stakes.  These practice areas are specialties.  *See Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) ("Environmental litigation is an identifiable practice specialty that requires distinctive knowledge.").  While many fine attorneys exist in the local area, it can be difficult for lawyers with a general practice to develop deep experience in environmental litigation and in presentation of complex issues to juries.  Bennett Decl. ¶ 35.  Courts in the Tenth Circuit have recognized, "[w]here local rates are too low for the litigation at issue, the relevant community may be said to be comprised of that group of attorneys specializing in the relevant law and in complex litigation."  *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1453 (D. Kan. 1987).  The court in *Reazin* explained that there is no "absolute rule that a district court is bound to adhere to forum community hourly rates in assessing fee awards."  *Id.*  The court relied on the Seventh Circuit's analysis in *Chrapliwy v. Uniroyal, Inc.*, where the court explained:

> [T]here are undoubtedly services which a local attorney may not be willing or able to perform.  The complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally....  Attorneys with specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation, tend to be found in large cities, where an attorney may have a greater opportunity to focus on a narrow area of law.  As a specialist, the attorney will usually charge more for performing services in his area of expertise than a general practitioner will charge for performing similar services.

*Id.* at 1454 (quoting 670 F.2d 760, 768-69 (7th Cir. 1982)).  Mr. Miller provides his perspective regarding why this case called on Valero to select trial counsel from outside Oklahoma.  Miller Decl. ¶¶ 4-7.

### F.    Prior Discussions of Fees and Costs by Plaintiff

On March 31, 2026, Plaintiff sent a demand to Valero that sought, in addition to significant other damages and injunctive relief, $5,040,000.00 in legal fees.  Plaintiff characterized the $5,040,000 amount as "a significant discount" of the fee award it expected to recover if Plaintiff prevailed at trial.  Bennett Decl. ¶ 13 and Ex. B thereto.[2]  Although defendants generally have higher expenses than plaintiffs due to document production and producing witnesses for depositions, this sum was reasonably close to Valero's fees and costs at the time, which Valero calculates at $5,412,103.92.  Bennett Decl. ¶ 14.

If it would reduce the burden on the Court in evaluating this fee request, Valero suggests that Court award Valero the figure acknowledged by Plaintiff ($5,040,000.00) for fees and costs up to March 31, 2026.  Valero requests that the Court add $707,285.66 for Valero's fees and expenses from March 31, 2026, to the end of trial, or such other amount that the Court determines is appropriate based on its observation of the trial. Under this approach, the fee and costs award would be $5,747,285.66.

## IV.    Valero's Expert Costs are Reasonable

Oklahoma law provides for recovery of expert fees under the statutes at issue.  *SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d 1058, 1206 (N.D. Okla. 2020); *Fuller v. Pacheco*, 21 P.3d 74, 81 (Okla. Ct. App. 2001).  In its prior application, Valero sought $570,351.65 in expert fees.  Those fees are reasonable for the reasons set forth in that submission.  *See* ECF No. 318 and related filings.

---

[2] Settlement correspondence is properly considered in resolving fee applications.  *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 2019 WL 367788, at \*4-5 (D. Kan. Jan. 30, 2019); *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co.*, 2016 WL 7375307, at \*4 (D. Colo. Dec. 20, 2016); *Justice v. Crown Cork & Seal Co., Inc.*, 2009 WL 10711012, at \*1 (D. Wyo. Dec. 3, 2009).

Valero now seeks to recover an additional $543,705.20 in expert fees, for a total expert award of $1,114,056.85.  These additional expert fees are reasonable for the reasons set forth in the declarations of Mr. Bennett and Mr. Miller.  Bennett Decl. ¶¶ 39-43; Miller Decl. ¶ 10.  All expert invoices were paid by Valero, either directly or through reimbursement to its law firms.  Bennett Decl. ¶ 42; Miller Decl. ¶ 10.

Plaintiff endorsed a stable of six experts, each of which required response.  Valero's experts are discussed in detail at ¶ 40 of the Bennett Declaration.  Valero's experts were valuable in assisting Valero in its strategy to address Plaintiffs' experts, in preparing its strategy for its Rule 702 motions, and in planning to depose or cross-examine the Plaintiffs' experts.  Five experts testified at trial.  Bennett Decl. ¶¶ 39-40.

Plaintiff's own use of experts establishes the reasonableness of Valero's expert fees.  By way of comparison, Plaintiff's experts attended much of the trial, attended Rule 702 hearings, and even attended the pretrial court conference.  Plaintiff's experts attended as many as 30 depositions and made many site visits.  As Mr. Trae Miller testified, his rate was $330 per hour; he went to the ranch six different times; he reviewed carefully 90,000 documents; he or other members of his company attended approximately 30 different depositions; he acted as the "right hand" at depositions for counsel; he reviewed the deposition transcripts; and he could not tell the jury "within $100,000[] how much [he was] paid" for his work.  Tr. 836-838; see also Tr. 1155-56 (Dr. Bert Fisher describing reading depositions, going to depositions, going to the ranch, going to the digs at the ranch, reviewing documents, writing three reports, and taking samples).

## V.    Other Litigation Expenses are Reasonable

In its initial application for costs, Valero explained the reason why its additional costs of litigation were recoverable and reasonable and necessary.  *See* ECF No. 318 and attachments.  That

9

application sought $136,713.58 in non-expert related costs. Valero now seeks to recover $207,788.98 for additional litigation expenses. Valero has excluded from this calculation all sums sought in its Bill of Costs under 28 U.S.C. §1920, filed herewith. These costs are recoverable under Oklahoma statutes. *Fuller v. Pacheco*, 21 P.3d at 80-81; *SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d at 1206.

The non-expert costs subject to this application are set out in the declarations of Mr. Bennett and Mr. Jantzen, including invoices and charts exported from billing systems. Bennett Decl. ¶¶ 44-48; Jantzen Decl. ¶ 14. In general, these costs include the costs of transcripts and videography for depositions not presented at trial, travel to/from depositions and hearings, additional e-discovery costs, trial-related expenses, including shipping and supply costs, daily copy of trial transcripts (which were invaluable to trial presentation and resolution of mid-trial motions and objections), and establishment of a trial site in Muskogee. These costs are reasonable, as set forth in the attached declarations of Mr. Bennett and Mr. Jantzen. Bennett Decl. ¶¶ 44-48; Jantzen Decl. ¶ 14.

## Conclusion

For the foregoing reasons, Valero requests that judgment be entered against Plaintiff in the amount of $6,159,019.21. Valero reserves the right to seek fees and expenses incurred following April 16, 2026, by separate submission.

Dated: April 29, 2026

By: */s/ James F. Bennett*  
James F. Bennett, MO Bar # 46826  
Megan S. Heinsz, MO Bar # 56377  
Matthew E. Johnson, CO Bar # 40984

Philip A. Cantwell, MO Bar # 65505
Arin H. Smith, MO Bar # 72636
Ben A. Barnes, TX Bar #24092085
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
(314) 889-7300 Telephone
(314) 863-2111 Facsimile
jbennett@dowdbennett.com
mheinsz@dowdbennett.com
mjohnson@dowdbennet.com
pcantwell@dowdbennett.com
asmith@dowdbennett.com
bbarnes@dowdbennett.com

Stephen L. Jantzen, OBA # 16247
Phillip G. Whaley, OBA # 13371
Grant M. Lucky, OBA # 17398
RYAN WHALEY PLLC
400 N. Walnut Ave.
Oklahoma City, OK 73104
(405) 239-6040 Telephone
(405) 239-6766 Facsimile
sjantzen@ryanwhaley.com
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, a true and accurate copy of the foregoing was electronically transmitted to the Clerk of Court using the ECF System for filing and transmitting to those registered to receive notices of this case via the ECF System:

By: */s/ James F. Bennett*