IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAZY S RANCH PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-425-JWB |
| | ) | |
| VALERO TERMINALING AND | ) | |
| DISTRIBUTION COMPANY; VALERO | ) | |
| PARTNERS OPERATING CO. LLC; and | ) | |
| VALERO PARTNERS WYNNEWOOD, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED APPLICATION FOR ATTORNEY'S FEES AND OTHER NON-TAXABLE COSTS AND SUBMISSION OF SUPPORTING DOCUMENTATION**

David P. Page, OBA No. 6852
Charles R. Willing, OBA No. 15873
**Environmental Energy & Natural
Resources Advocates, PLLC**
1921 S. Boston Ave. Tulsa, OK 74119
Telephone (918) 764-8984
dpage@eenradvocates.com
cwilling@eenradvocates.com

- and -

Jeffery L. Carmichael, *pro hac vice*
Robert Coykendall, *pro hac vice*
Benjamin Carmichael, *pro hac vice*
**Morris, Laing Law Firm**
300 N. Mead, Suite 200
Wichita, Kansas 67202
Telephone: (316) 262-2671
jcarmichael@morrislaing.com
rcoykendall@morrislaing.com
bcarmichael@morrislaing.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT AND AUTHORITIES ............................................................................. 2

I.    12 O.S. § 1101.1(B) Does Not Apply to Valero's Application. ...................................... 3

II.   Regardless of the Statute Used by Valero, either 12 O.S. § 940(A) or 12 O.S. §
      1101.1(B) (if applicable), Attorney Fees Must be Reasonable, which Determination
      Cannot be Made Using the Time Records Submitted by Valero.................................... 5

III.  Valero Cannot Recover Attorney Fees for Valero's Own In-House Lawyer............. 11

IV.   Assuming Arguendo That 12 O.S. § 1101.1(B) Applies, Valero Cannot Recover Its
      Expert Witness Fees and Other Costs as "Reasonable Litigation Costs" Under 12
      O.S. § 1101.1(B). .......................................................................................................... 13

      A.    Expert Witness Fees ........................................................................................... 14

      B.    Non-Testifying Consultant. ................................................................................ 18

      C.    Other Costs. ........................................................................................................ 18

V.    Billing at Inappropriate Rates ...................................................................................... 19

VI.   The Use of Settlement Negotiations in Determination of Attorney Fees. ................... 20

VII.  Valero's Conduct During the Hydrotest Phase of This Case Unnecessarily
      Multiplied Attorney Fees on Both Sides and Valero's Application Should be
      Adjusted Downward to Reflect Valero's Role in Causing Increased Attorney Fees.
      ........................................................................................................................................ 22

VIII. Any Award from Lazy S's Pending Motion for Attorney Fees Should be Offset
      Against Any Award to Valero. ....................................................................................... 22

CONCLUSION ............................................................................................................. 22

## TABLE OF AUTHORITIES

### CASES

*Andress v. Bowlby*, 1989 OK 78, ¶ 12, 773 P.2d 1265, 1268 .................................................. 16, 17

*Arkoma Gas Co. v. Otis Engineering Corp*., 849 P.2d 392, 395 (Okla. 1993).............................. 8

*Burk v. City of Oklahoma City*, 598 P.2d 659, 660–61 (Okla. 1979) ........................................ 8, 9

*Carter v. Sedgwick Cnty., KS*, 36 F.3d 952, 956 (10th Cir. 1994)............................................... 8

*Case v. Unified School Dist. No. 223*,157 F.3d 1243, 1250 (10th Cir. 1998) .............................7

*Cellport Sys., Inc. v. Peiker Acustic GMBH & Co*., 2016 WL 7375307, at *4 (D. Colo. Dec. 20, 2016) ..............................................................................................................................21, 22

*Centennial Archaeology, Inc. v. AECOM, Inc*., 688 F.3d 673, 680 (10th Cir. 2012).................. 12

*C-P Integrated Servs. v. Muskogee City-County Port Auth*., 2009 OK CIV APP 57, ¶ 28, 215 P.3d 835, 840 ..........................................................................................................15, 16

*Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 151 (E.D. Pa. 2000).................................. 16, 17

*Darrow v. Spencer*, 581 P.2d 1309, 1314 (Okla. 1978)................................................................ 8

*Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc*., 2019 WL 367788, at *4-5 (D. Kan. Jan. 30, 2019) ..............................................................................................................21, 22

*Finnell v. Seismic*, 67 P.3d 339, 346 & n. 38 (Okla. 2003) ........................................................ 6

*Fleet v. Sanguine, Ltd.*, 854 P.2d 892, 898-899 (Okla. 1993) .........................................................5

*Fuller v. Pacheco*, 21 P.3d 74, 81 (Okla. Ct. App. 2001)......................................... 15, 16, 17

*Green Bay Packaging, Inc. v. Preferred Packaging, Inc*., 932 P.2d 1091, 1099-1100 (Okla. 1996) ...................................................................................................................................... 8, 9

*Henderson v. Horace Mann Ins. Co*., 560 F.Supp.2d 1099, 1110 (N.D. Okla. 2008)............ 6, 7, 8

*IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist*., 2022 WL 780926, at *9 (W.D. La. Mar. 14, 2022) ........................................................................................... 12, 14

*Illinois v. Sangamo Construction Co*., 657 F.2d 855 (7th Cir. 1981) ......................................... 13

*Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) .........................................................21

*Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)....................................................... 6, 7, 20

*Justice v. Crown Cork & Seal Co., Inc*., 2009 WL 10711012, at *1 (D. Wyo. Dec. 3, 2009)21, 22

*Lazy S Ranch Props., LLC v. Valero Terminaling & Distrib. Co.*, 92 F.4th 1189 (10th Cir. 2024) ..................................................................................................................................................4

*Lunn v. Cont'l Motors, Inc*., 2025 OK 29, ¶ 6, 568 P.3d 589, 591 ............................................... 12

*Malloy v Monahan*, 73 F.3d 1012, 1018 (10th Cir 1996 ..........................................................20

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)................................. 6, 7

*Morgan v. Galilean Health Enterprises, Inc*., 977 P.2d 357, 364 (Okla. 1998).......................... 6

*Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins*. Co., 1980 OK 120, ¶ 8, 615 P.2d 291, 295 1, 7, 8, 9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 715, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) .................................................................................................... 6

*Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)................................................................. 8, 20

*Root v. KAMO Elec. Coop., Inc*., 1985 OK 8, ¶ 48 n.40, 699 P.2d 1083, 1093 .......................... 13

*SATA GmbH & Co. KG v. Hauber*, 2017 WL 3388182 (N.D. Okla.) ...................................... 7, 8

*SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d 1058, 1206 (N.D. Okla. 2020)..................... 15, 17

*Silver Creek Invs., Inc. v. Whitten Constr. Mgmt., Inc*., 2013 OK CIV APP 49, ¶ 23, 307 P.3d 360, 369............................................................................................................................... 12, 13

*Southwest Stainless, L.P. v. Sappington*, 2010 WL 1486935 *9 (N.D. Okla.).............................. 6

*Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1189 (Okla. 1987) ................................................................................................................................. 7
*Spencer v. Oklahoma Gas & Elec. Co.*, 171 P.3d 890, 895 (Okla. 2007) ...................................... 6
*State ex rel. Dept. of Transp. v. Norman Indus. Dev. Corp.*, 41 P.3d 960, 962 (Okla. 2001) ........ 6
*Station Operation, LLC v. Circle K Stores, Inc.*, 2010 OK CIV APP 2, 229 P.3d 1283 ................ 5
*Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387, 1396 (7th Cir. 1983) ............... 12, 13
*Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 2004 U.S. Dist. LEXIS 1428 (S.D.N.Y. Feb. 3, 2004) ...................................................................................................................... 12, 13
*Young v Spencer*, 2017 OK CIV APP 58, 405 P.3d 701, 710 ...................................................... 16

## STATUTES

12 O.S. § 1101.1(B) ........................................................................................................ 1, 3, 14, 15
12 O.S. § 1101.1(B)(1) ............................................................................................................ 4, 18
12 O.S. § 1101.1(B)(3) ............................................................................................................ 3, 12
12 O.S. § 940(A) .................................................................................................................. 1, 2, 16
26 U.S.C.A. § 7430(c)(1) ...................................................................................................... 16, 19
66 O.S. § 55(D) ............................................................................................................................ 17

## RULES

FED.R.CIV.P. 68 ............................................................................................................................. 3

## TREATISES

7 OKLA. PRAC. § 24.8 (West 1999) .............................................................................................. 8
ROBERT L. ROSSI, Attorneys' Fees § 5:3, at 5-14 (3rd ed.) ....................................................... 8

Plaintiff Lazy S Ranch Properties, LLC ("Lazy S") submits this response in opposition to the Defendants' Valero Terminaling and Distribution Company, Valero Partners Operating Co. LLC, and Valero Partners Wynnewood, LLC's ("Valero") Renewed Application for Attorney's Fees and Other Non-Taxable Costs and Submission of Supporting Documentation ("Valero's Application" or "Application").[1] [Dkt. 593]

## **INTRODUCTION**

After prevailing at trial, Valero filed its Application on April 29, 2026. In it, Valero seeks the following relief under 12 O.S. § 940(A) and 12 O.S. § 1101.1(B) as the "prevailing" party:

| Description | Amount |
|---|---|
| Ryan Whaley Legal Fees | $1,325,212.00 |
| Dowd Bennett Legal Fees | $3,039,942.30 |
| In-House Counsel's "Fees" | $335,305.50 |
| Expert Witness Fees | $1,114,056.85 |
| "Other Costs" | $344,502.56 |
| Total | $6,159,019.21 |

It is Valero's burden "to present detailed time records to the court" to justify its request for $4.7 million in attorney fees. *Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins*. Co., 1980 OK 120, ¶ 8, 615 P.2d 291, 295. Instead, of following this basic legal rule known in all jurisdictions since the 1980s, it chose to present thousands of redacted time entries, which total 65% of Valero's time entries, to support its attorney fee claim of almost $4.7 million. In that respect alone, Valero has failed to meet its burden of proof. Summarily, the Court should disallow Valero's legal fees

---

[1]   Lazy S is unable to prepare a complete response to Valero's Application because of Valero's redactions of the attorneys' time records. Over 65% of the total time entries are redacted in some form, and up to and including a complete redaction of time entries. As a result, there is currently pending Plaintiff's Motion for Leave to Conduct Discovery Regarding Defendants' Renewed Application for Attorney Fees and Other Non-Taxable Costs and Submission of Supporting Documentation [Dkt. 595], which seeks certain discovery and deposition(s) related to Valero's Application, a schedule to complete the discovery, file a full response, and schedule an evidentiary hearing.

where the description of the work performed contains a redaction. This totals $2.978 million. Valero's proposal to present the redacted time entries in unredacted form *in camera* to the Court is too little, too late. Not only is Valero out of time to present its fee request (Valero had until April 30, 2026 to file its fee application, FED.R.CIV.P. 54(d)(2)(B)(i), the "solution" creates more problems given the adversarial process – it denies Lazy S due process. [*See* Dkt. 595 at 9-12]

Thus, Valero seeks $2.978 million in attorney fees for time entries that Lazy S can't challenge because it doesn't know what work was performed.[2] It also obstructs Lazy S's analysis of the unredacted time entries because it can't identify and analyze any relationships between the work performed in the unredacted and redacted time entries. Most importantly, Valero missed the deadline and it should not be allowed to supplement *after the fact*.

Valero also seeks recovery of $335,305.50 in so called "attorney fees" for an in-house attorney at Valero. These time records were the worst example of redactions in Valero's Application, with 99% of the time entries redacted, most of them substantially redacted. However, even if these were not redacted, they are **not** recoverable under Oklahoma law.

Valero also seeks recovery of $1.458 million for what it characterizes as non-taxable costs, which it divides into "expert fees" ($1,114,056.85) and "other costs" ($344,502.56). Neither Valero's expert fees nor its "other costs" are recoverable under Oklahoma law. This is a perfect example of how Valero's lawyering creates useless arguments for which it seeks fees.

As it currently exists, with redactions and unrecoverable items, the starting point for Valero's Application is $1.7 million. It should only go down from there.

## ARGUMENT AND AUTHORITIES

Valero claims entitlement to reasonable attorney fees under 12 O.S. § 940(A) and 12 O.S.

---

[2]    Valero is limited by its own failure to no more than $1.7 million.

§ 1101.1(B), and entitlement to its non-taxable costs, such as expert witness fees and "other costs" as "reasonable litigation costs" under 12 O.S. § 1101.1(B)(3). Section 1101.1(B) does not apply to Valero's Application and even if it did, Valero can't use it to recover attorney fees for in-house counsel, expert witness fees, or "other costs."

Second, regardless of which statute Valero tries to fall under for its fee claim, Valero's fees must be reasonable . . . they are not. Third, in-house lawyer's fees are not recoverable under the circumstances here. Fourth, Valero cannot recover its expert witness fees and other costs as "reasonable litigation costs" under 12 O.S. § 1101.1(B). Fifth, Valero's lawyering exacerbated fees because it unreasonably made an attorney-client privilege claim and unlawfully destroyed evidence concerning the hydrotests. Sixth, Valero's counsel's rates are too high. Finally, use of settlement negotiations to support Valero's Application here is wholly unsupported by Valero's authority.

## I.    12 O.S. § 1101.1(B) Does Not Apply to Valero's Application.

Valero seeks reasonable attorney fees and non-taxable costs (as "reasonable litigation costs") under 12 O.S. § 1101.1(B)(3) because it made an offer of judgment to Lazy S on January 18, 2022, pursuant to Federal Rule of Civil Procedure 68, 12 O.S. § 940(B), and 12 O.S. § 1101.1(B), in the amount of $735,010.00.[3] Lazy S did not respond to the offer of judgment and at trial, the jury returned a verdict in favor of Valero.

Section 1101.1(B)(1) provides in relevant part:

---

[3]    While its offer of judgment included references to FED.R.CIV.P. 68 and 12 O.S. § 940(B), Valero does not rely on FED.R.CIV.P. 68 or Section 940(B) here. By its terms, Section 940(B) does not apply because it provides that in the event of a judgment "for the defendant or for the plaintiff and is for a lesser amount than the defendant's offer, then the plaintiff shall not be entitled to recover attorney's fees, court costs and interest." In the event of judgment for defendant, Section 940(A) already provides relief for Valero with respect to "reasonable attorney's fees, court costs and interest" apart from any offer of judgment.

> After a civil action is brought *for the recovery of money or property* in an action other than for personal injury, wrongful death or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action.

12 O.S. § 1101.1(B)(1) [emphasis added]. The first step of any analysis related to Section 1101.1(B) begins with the nature of the action brought. Here, while Lazy S asserted a number of claims seeking damages, i.e., negligence and res ipsa loquitur, negligence per se, trespass, private nuisance, public nuisance, unjust enrichment, constructive fraud, indemnification, alter ego, amalgamation or single enterprise, and punitive damages, these were narrowed for trial by the Tenth Circuit to private nuisance, public nuisance, and negligence per se. *Lazy S Ranch Props., LLC v. Valero Terminaling & Distrib. Co.*, 92 F.4th 1189 (10th Cir. 2024). However, Lazy S has always sought the equitable remedy of abatement of the nuisance. [Dkts. 2 at 20 and 42 at 23]

Valero's offer of judgment was for $735,010.00. Period. Accepting such an offer would leave Lazy S no means to abate the nuisance and thus it constitutes no offer at all that should be subject to Section 1101.1(B). For Lazy S to accept such an offer, Lazy S would become complicit in Valero's on-going pollution of the Lazy S Ranch. Valero owns and controls its pipeline and has the sole and exclusive right to make any changes to it. In contrast to a case where a plaintiff could use funds from an accepted offer of judgment, for example, to remedy a defined (not on-going) release hazardous materials, Lazy S could not accept the offer of judgment here and then replace Valero's pipeline crossing its property.

Whether such an offer of judgment, under the unique circumstances of this case, is subject to Section 1101.1(B) is an issue of first impression. The only guidance, in the form of a non-precedential opinion by the Oklahoma Court of Civil Appeals, is *Station Operation, LLC v.*

4

*Circle K Stores, Inc*., 2010 OK CIV APP 2, 229 P.3d 1283. In *Station Operation*, plaintiff filed an action for monetary damages and permanent injunctive relief for violations of the Oklahoma Unfair Sales Act. The defendant made an offer of judgment under Section 1101.1(B) for $3,000. The plaintiff accepted the offer of judgment and then sought to use the offer of judgment as an admission of liability for purposes of an injunction. However, the court held "a § 1101 offer's acceptance extinguishes the entire cause of action and substitutes in its place the right to claim the confessed recovery." *Station Operation,* 229 P.3d at 1286 (quoting *Fleet v. Sanguine, Ltd.*, 854 P.2d 892, 898-899 (Okla. 1993)).

In *Fleet*, the plaintiff had accepted an offer of judgment and then sought to use the offer of judgment as a confession of all facts necessary to calculate prejudgment interest. Both *Fleet* and *Station Operation* make clear that acceptance of an offer of judgment extinguishes the entire cause of action. However, neither *Fleet* nor *Station Operation* addressed the issue of whether an offer of judgment, such as Valero's here in the unique circumstances of this case, should be applicable under Section 1101.1(B). If Lazy S had accepted the offer of judgment, it would have extinguished any ability to abate the nuisance.

II.    **Regardless of the Statute Used by Valero, either 12 O.S. § 940(A) or 12 O.S. § 1101.1(B) (if applicable), Attorney Fees Must be Reasonable, which Determination Cannot be Made Using the Time Records Submitted by Valero.**

Oklahoma follows the American Rule, whereby each litigant is responsible for its own attorney fees unless that rule is modified by statute or contractual provision. *State ex rel. Dept. of Transp. v. Norman Indus. Dev. Corp.*, 41 P.3d 960, 962 (Okla. 2001). "Under the typical fee-shifting statute, attorney fees are awarded to the prevailing party, but only to the extent that he or she prevails." *Henderson v. Horace Mann Ins. Co*., 560 F.Supp.2d 1099, 1110 (N.D. Okla. 2008); citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711,

715, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).[4] Moreover, "[i]n all cases the amount of fees awarded must be reasonable." *Id.* at 1111; citing *Morgan v. Galilean Health Enterprises, Inc.*, 977 P.2d 357, 364 (Okla. 1998).[5]

Thus, at all times, "it is the [fee movant's] burden to establish the reasonableness of their fee request." *Southwest Stainless, L.P. v. Sappington*, 2010 WL 1486935 *9 (N.D. Okla.); citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986). "A fee claimant must 'prove and establish [the] reasonableness of each dollar, each hour, above zero.'" *Henderson*, 560 F.Supp.2d at 1111; quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). "Lack of sufficient detail in the fee claimant's time records may make it impossible for the court to determine whether particular services are compensable and will justify a denial of all or a portion of the fees requested." *Id.*[6] Indeed:

> [In order for the court to determine] whether the hours billed by [counsel for the fee applicant] are reasonable[, c]ounsel … must submit meticulous, contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks. "A district court is justified in reducing the reasonable number of hours if the attorney's time records

---

[4]    "Although Oklahoma law governs the fee determination, federal case law is often helpful in applying the fundamental reasonableness test." *Henderson*, 560 F.Supp.2d at 1110; citing *Finnell v. Seismic*, 67 P.3d 339, 346 & n. 38 (Okla. 2003) (noting that the federal standards are substantially similar to those contained in Rule 1.5 of the Rules of Professional Conduct, 5 O.S.2001, Ch.1, App. 3–A and "an exhaustive application of either list will almost always lead to a just and reasonable result").

[5]    Additionally, "in all cases [an award of fees] must bear some reasonable relationship to the amount in controversy." *Henderson*, 560 F.Supp.2d at 1111; citing *Spencer v. Oklahoma Gas & Elec. Co.*, 171 P.3d 890, 895 (Okla. 2007).

[6]    "[I]t may be unreasonable and practically impossible for the district court to identify hours reasonably expended by billing entry or litigation activity." *Henderson*, 560 F.Supp.2d at 1111; citing *Case v. Unified School Dist. No. 223*, 157 F.3d 1243, 1250 (10th Cir. 1998). "There is no requirement ... that district courts identify and justify each disallowed hour. Nor is there any requirement that district courts announce what hours are permitted for each legal task. ... A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Id.*; quoting *Mares*, 801 F.2d at 1202.

are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."

*SATA GmbH & Co. KG v. Hauber*, 2017 WL 3388182 (N.D. Okla.); quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998); *Jane L.*, 61 F.3d at 1510.

"A reasonable fee does not necessarily result from simple multiplication of the hours spent times a fixed hourly rate." *Henderson*, 560 F.Supp.2d at 1111; quoting *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1189 (Okla. 1987). "While the time spent by attorneys in performing services is an important factor that must be considered, fees cannot fairly be awarded on the basis of time alone." *Id.*; quoting *Oliver's Sports Center v. Nat'l Standard Ins. Co.*, 615 P.2d 291, 294 (Okla. 1980). In particular:

> Beyond the adequacy of the time records, the Court must also ensure that the attorneys for the fee applicant have exercised "billing judgment." "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." Consideration of billing judgment requires two steps. First, a court looks at the specific tasks billed to determine whether they are properly chargeable. Second, the court considers the hours expended on each task to determine if they are reasonable. This analysis requires the court to consider what is reasonable considering the particulars of that case. Courts may reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative."

*SATA*, 2017 WL 3388182 *3; citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983); and *Carter v. Sedgwick Cnty., KS*, 36 F.3d 952, 956 (10th Cir. 1994). "The fact that certain services were unnecessary, unproductive, or duplicative" may warrant the reduction of reasonable hours awarded. *Id.*; *Henderson*, 560 F.Supp.2d at 1111; citing ROBERT L. ROSSI, Attorneys' Fees § 5:3, at 5-14 (3rd ed.). "In each case the court must consider what is a reasonable fee in light of the extent to which the plaintiff prevailed." *Henderson*, 560 F.Supp.2d at 1111; citing *Arkoma Gas Co. v. Otis Engineering Corp.*, 849 P.2d 392, 395 (Okla. 1993).

"The Oklahoma Supreme Court has outlined a two-step procedure for arriving at a reasonable fee: (1) determine the so-called 'lodestar' amount based on the appropriate hourly

7

rate within the market and number of hours reasonably expended, and (2) enhance or reduce this number by adding an amount arrived at by applying the Burk factors or those provided for in Rule 1.5 of the Oklahoma Rules of Professional Conduct." *Id*. at 1112; citing *Burk v. City of Oklahoma City*, 598 P.2d 659, 660–61 (Okla. 1979); 7 OKLA. PRAC. § 24.8 (West 1999).

"The burden is on Plaintiff to demonstrate that the time for which compensation is sought was reasonably incurred and necessary." *Id*.; citing *Oliver's Sports Center*, 615 P.2d at 295; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc*., 932 P.2d 1091, 1099-1100 (Okla. 1996) (holding that lawyers seeking fees must present detailed time records and offer evidence of reasonable value of services rendered). "The district court should consider: (1) what attorney services were performed; (2) which services were necessary; (3) the value of the necessary services; and (4) what a reasonable fee for the services would be." *Id*.; citing *Darrow v. Spencer*, 581 P.2d 1309, 1314 (Okla. 1978).

At the second step, as outlined in *Burk*, the factors to be considered are:

1. Time and labor required.
2. The novelty and difficulty of the questions.
3. The skill requisite to perform the legal service properly.
4. The preclusion of other employment by the attorney due to acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved, and the results obtained.
9. The experience, reputation and ability of the attorneys.
10. The 'undesirability' of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

*Id*.; citing *Burk*, 598 P.2d at 661.

Valero has failed to meet its burden. It was required "to present detailed time records to the court and to offer evidence of the reasonable value for the services performed, predicated on the standards within the local legal community." *Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins*.

8

Co., 1980 OK 120, ¶ 8, 615 P.2d 291, 295. Instead, Valero chose to present thousands of redacted time entries, many completely redacted, many with only a single word visible, many others with two or three words visible. In all, about 65% of Valero's time entries are redacted.



| Date | Attorney | For Legal Services Rendered | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/4/2024 | P. Cantwell | Communication to ▮ | 0.2 | 422.00 | 84.40 |
| 12/8/2024 | P. Cantwell | Draft communication ▮ | 0.2 | 422.00 | 84.40 |
| 12/17/2024 | P. Cantwell | Communication ▮ | 0.4 | 422.00 | 168.80 |
| 12/18/2024 | P. Cantwell | Attention to ▮ | 0.6 | 422.00 | 253.20 |
| 12/18/2024 | M. Johnson | Attend ▮ | 0.3 | 422.00 | 126.60 |
| 12/18/2024 | B. Barnes | Work on preparations for Daubert hearings. | 0.8 | 422.00 | 337.60 |
| 12/19/2024 | M. Johnson | Review ▮ | 1.3 | 422.00 | 548.60 |
| 12/19/2024 | S. Koelsch | Review ▮ | 1.4 | 355.00 | 497.00 |

Above is an example of the Dowd Bennett records. [Dkt. 593-4 at 123]



| Lazy-S Time Recording: | | |
|---|---|---|
| Date | Time (hr) | Description of legal work |
| 31-Mar | 6.4 | Review updates to ▮ ; communications ▮ ; conference call ▮ regarding ▮ ; Review ▮ ; develop strategy ▮ ; continue review of ▮ ; follow up conference call ▮ ; conference call with counsel regarding ▮ |
| 1-Apr | 5.1 | ▮ ; work with counsel to ▮ review ▮ ; review ▮ ; conference with ▮ outside counsel related to ▮ . |
| 4-Apr | 1.1 | Review ▮ |
| 5-Apr | 4.5 | Meet ▮ and prepare for deposition; continue review of EPA ▮ ; review ▮ ; communications ▮ . |
| 6-Apr | 7 | Meet ▮ prepare for deposition; finish ▮ ; review, revised, and contribute to ▮ ; conduct research and ▮ evaluate ▮ ; evaluate ▮ ; evaluate ▮ ; attention to ▮ . |
| 7-Apr | 4.9 | Review ▮ ; review ▮ ; provide summary and analysis of ▮ deposition preparations ▮ . |
| 8-Apr | 5.2 | Review ▮ ; review ▮ and ▮ provide comments ▮ ; review ▮ and provide comments ▮ related to same. |

9

The same is true of Valero's in-house counsel, Mark Donatiello, as demonstrated above.[7]

| Date | Tkpr | Task | Act | Description | Hours | Amount |
|---|---|---|---|---|---|---|
| | | | | ▮▮▮▮▮▮ | 0.30 | 109.50 |
| | GML | L310 | A103 | Work on ▮▮▮▮▮▮ | 2.00 | 530.00 |
| 11/05/2020 | MK | L310 | A103 | Finalize ▮▮▮▮▮ | 1.50 | 210.00 |
| | SLJ | L310 | A106 | Telephone conference with client re: ▮▮▮ ▮▮▮▮▮▮ | 0.30 | 109.50 |
| | SLJ | L310 | A103 | Work on ▮▮▮▮▮ | 0.80 | 292.00 |
| | GML | L310 | A103 | Finalize ▮▮▮▮▮▮ ▮ | 1.20 | 318.00 |
| 11/06/2020 | SLJ | L310 | A104 | Review/analyze ▮▮▮▮▮ ▮▮▮ | 0.30 | 109.50 |
| | SLJ | L250 | A103 | Revise and finalize ▮▮▮ ▮▮▮ | 0.20 | 73.00 |
| | SLJ | L250 | A107 | Multiple e-mail correspondence with counsel for Plaintiff | 0.30 | 109.50 |
| | SLJ | L250 | A106 | Multiple e-mail correspondence with client re: ▮▮▮▮▮▮ | 0.20 | 73.00 |
| | MK | L430 | A103 | Work on and finalize ▮▮▮▮ and ▮▮▮▮ | 1.25 | 175.00 |
| | GML | L250 | A103 | Review edits to ▮▮▮▮ ▮ | 0.20 | 53.00 |
| 11/10/2020 | MK | L200 | A104 | Review and process ▮▮▮▮▮ | 0.50 | 70.00 |
| | PGW | L110 | A104 | Attention to ▮▮▮▮ and ▮▮ | 0.20 | 77.00 |
| | PGW | L110 | A105 | Various emails with team re ▮▮▮ and ▮▮ | 0.20 | 77.00 |
| 11/12/2020 | MK | L320 | A104 | Process ▮▮▮▮ | 1.00 | 140.00 |
| 11/13/2020 | SLJ | L320 | A106 | Telephone conference ▮▮▮▮▮ | 0.30 | 109.50 |
| 11/19/2020 | GML | L250 | A104 | Receive and review ▮▮▮▮ and ▮ | | |

Finally, the same is also true of the Ryan Whaley billing records, as illustrated above.

[Dkt. 593-18 at 46]

---

[7]    In addition to redactions, Donatiello's records suffer from an extreme case of block billing. [Dkt. 318-12 at 5]

The Dowd Bennett, Ryan Whaley, and Donatiello records all suffer from the same extreme redactions. As a result, Lazy S cannot respond at this time to the reasonableness of Valero's request for attorney fees because it literally does not know what work Valero's attorneys performed.[8]

### III.    Valero Cannot Recover Attorney Fees for Valero's Own In-House Lawyer.

Valero seeks to recover $335,305.50 in attorney fees attributable to its in-house lawyer, Mark Donatiello. Valero relies on *Video-Cinema Films, Inc. v. Cable News Network, Inc*., 2004 U.S. Dist. LEXIS 1428 (S.D.N.Y. Feb. 3, 2004), *Textor v. Bd. of Regents of N. Illinois Univ*., 711 F.2d 1387, 1396 (7th Cir. 1983); *Centennial Archaeology, Inc. v. AECOM, Inc*., 688 F.3d 673, 680 (10th Cir. 2012)); *IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist*., 2022 WL 780926, at *9 (W.D. La. Mar. 14, 2022). Notably, Valero does not cite a single Oklahoma case and makes no effort to demonstrate that Section 940(A) or 1101.1(B) allows for the recovery of attorney fees, where the attorney is employed in-house by a party.

Section 1101.1(B) is a fee-shifting statute, and "the purpose of a fee-shifting statue is critical to the analysis. *Silver Creek Invs., Inc. v. Whitten Constr. Mgmt., Inc*., 2013 OK CIV APP 49, ¶ 23, 307 P.3d 360, 369. "The purpose of the fee-shifting offer of judgment statute is to promote resolutions without prolonged litigation and prevent further trial preparation costs." *Lunn v. Cont'l Motors, Inc*., 2025 OK 29, ¶ 6, 568 P.3d 589, 591. Here, Section 1101.1(B)(3) provides, in relevant part, "the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees *incurred* by the defendant with respect to the action or the claim or

---

[8]    In an effort to level the playing field and provide Lazy S an opportunity to analyze the reasonableness of attorney fee request, currently pending before the Court is Plaintiff's Motion for Leave to Conduct Discovery Regarding Defendants' Renewed Application for Attorney Fees and Other Non-Taxable Costs and Submission of Supporting Documentation [Dkt. 595], which seeks unredacted time records and discovery related to Valero's Application.

11

claims included in the offer of judgment." 12 O.S. § 1101.1(B)(3) [emphasis added]. The Oklahoma Supreme Court, in the context of interpreting a different fee-shifting attorney fee statute, held that "incur" is defined as "to become liable or subject to." *Root v. KAMO Elec. Coop., Inc.*, 1985 OK 8, ¶ 48 n.40, 699 P.2d 1083, 1093 (citing Webster's New Collegiate Dictionary (1979)). Section 1101.1(B)(3) requires the attorney fees to be "incurred." Valero did not "incur" $335,305.50 in attorney fees to its in-house counsel.

Valero's authority is inapposite. In *Video-Cinema Films*, an action under the Copyright Act, one of the defendants, ABC, exclusively used in-house counsel for its defense. The court found, "It is well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work performed by outside counsel." *Video-Cinema Films,* 2004 U.S. Dist. LEXIS 1428 at *18 (citation omitted). In contrast, this issue is not settled in Oklahoma, as Valero couldn't offer a single Oklahoma authority that provides for the recovery of such fees.

In *Textor*, another case based on federal law, the court stated in the context of determining whether attorney fees assessed against plaintiff's counsel could be recovered by defendants who were represented by in-house counsel, "The amount plaintiff actually pays his attorney is irrelevant, since the determination of what is a 'reasonable' fee is to be made without reference to any prior agreement between the parties." *Textor*, 711 F.2d at 1396 quoting *Illinois v. Sangamo Construction Co.*, 657 F.2d 855 (7th Cir. 1981). This is inconsistent with Oklahoma law. In *Silver Creek Invs., Inc. v. Whitten Constr. Mgmt., Inc.*, 2013 OK CIV APP 49, ¶ 27, 307 P.3d 360, 370, the Court of Civil Appeals held in interpreting a different fee-shifting statute:

> Although the fundamental determinant is reasonableness, ignoring the terms of the fee contract between counsel and the prevailing party would frustrate the purpose of the exception to the American Rule in section 939, that purpose being to shift the reasonable litigation costs of the prevailing party to the losing party.

12

> We recognize that there is no express limitation in section 939 to litigation costs "actually incurred" as there is the condemnation fee-shifting statute, 27 O.S.2011 § 11, at issue in *State ex rel. Department of Transportation v. Norman Industrial Development Corp.*, 2001 OK 72, 41 P.3d at 960. Nonetheless, where the client's expected litigation costs are set in advance and the end result is reasonable, imposing additional costs on the losing litigant serves no purpose consistent with a strict construction of section 939 absent unusual circumstances not present here.

Sections 940(A) and 1101.1(B) are, like Section 939, fee-shifting statutes and the analysis of *Silver Creek* applies.

In *Centennial Archaeology*, the court, citing *Textor*, held in the context of a Rule 37 sanctions, "The purpose of Rule 37 attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate." *Centennial Archaeology* has no application here as Mark Donatiello did not enter an appearance in this action and could not have been subject to Rule 37 sanctions.

Lastly, the decision in *IFG Port Holdings* offers no support for Valero's position, as it was vacated in full on appeal on September 21, 2023. *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402 (5th Cir. 2023). The defendant had uncovered an alleged undisclosed relationship between plaintiff's counsel and the magistrate judge who heard the case. The case was remanded and assigned a new judge, where it continues in the trial court.

**IV.    Assuming Arguendo That 12 O.S. § 1101.1(B) Applies, Valero Cannot Recover Its Expert Witness Fees and Other Costs as "Reasonable Litigation Costs" Under 12 O.S. § 1101.1(B).**

Valero seeks its non-taxable costs under 12 O.S. § 1101.1(B), which provides in relevant part:

> B.    Other actions.

> 1.    After a civil action is brought for the recovery of money or property in an action other than for personal injury, wrongful death or pursuant to Chapter 21 of

13

Title 25 or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action. *An offer of judgment shall be deemed to include any costs and attorney fees otherwise recoverable unless it expressly provides otherwise.* If an offer of judgment is filed, the plaintiff or plaintiffs to whom the offer of judgment is made shall, within ten (10) days, file:

a.     a written acceptance or rejection of the offer, or

b.     a counteroffer of judgment, as described in paragraph 2 of this subsection.

. . .

3.     If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, the defendant shall be entitled to *reasonable litigation costs* and reasonable attorney fees incurred by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after the date of the first offer of judgment which is greater than the judgment until the date of the judgment. Such costs and fees may be offset from the judgment entered against the offering defendant.

12 O.S. § 1101.1(B) [emphasis added]. Valero's offer of judgment excluded "any costs and attorney fees *otherwise recoverable* and accrued prior to the date of service of this Offer of Judgment." [Dkt. 593-2 at 2]

Valero seeks $1,458,559.41 in "non-taxable costs," consisting of $1,114,056.85 in expert fees and $344,502.56 in "other costs." [Dkt. 593 at 8-10] Valero relies on the "statutes at issue," *SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d 1058, 1206 (N.D. Okla. 2020), and *Fuller v. Pacheco*, 21 P.3d 74, 81 (Okla. Ct. App. 2001). Neither the "statutes at issue" nor these cases support its request.

### A.     Expert Witness Fees

As a general matter, Oklahoma does not permit recovery of expert witness fees. *C-P Integrated Servs. v. Muskogee City-County Port Auth.*, 2009 OK CIV APP 57, ¶ 28, 215 P.3d 835, 840 ("Oklahoma law does not ordinarily permit recovery of expert witness fees as

'costs.'"). However, it does "require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery [i.e., appearing for deposition], only those fees required to be paid to the opponent's expert by §3226(B)(3)(c)(1) are recoverable as costs." *Id*. [Citations omitted].

Section 940(A) provides no support for Valero's request. Section 940(A) provides, "In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, *court costs* and interest to be set by the court and to be taxed and collected as other costs of the action." 12 O.S. § 940(A). The only costs recoverable under Section 940(A) are "court costs." Court costs do not encompass expert fees, and expert fees are only recoverable when expressly made so by statute. In *Andress v. Bowlby*, 1989 OK 78, ¶ 12, 773 P.2d 1265, 1268, the Oklahoma Supreme Court held:

> Such [expert] fees are only recoverable when specifically made so by statute. Section 318.5(F) only speaks to court costs and reasonable attorney fees. The term court costs does not include expert witness fees.

*See also*, *Young v Spencer*, 2017 OK CIV APP 58, 405 P.3d 701, 710 (rejecting attempt to recover expert witness fees under "incidental costs" in Section 940(A)) Therefore, Valero must rely on Section 1101.1(B) to recover "expert fees" and "other costs" but that is also a bridge too far.

In *Fuller*, a non-precedential decision, the Court of Civil Appeals found the defendant entitled to fees for its expert "accrued during the time frame of section 1101.1, when the offer to confess judgment was outstanding . . . [as] an award of costs for this expert witness pursuant to that statute." *Fuller*, 21 P.3d at 81. However, it recognized that "neither section 1101.1 nor Oklahoma case law has defined what 'reasonable litigation costs' entails." *Id*. at 80. The Court of Civil Appeals then looked to federal authority, citing the Internal Revenue Code, 26 U.S.C.A. §

15

7430(c)(1), and *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 151 (E.D. Pa. 2000). According to the Court of Civil Appeals, the court in *Cullen* "recently interpreted the phrase 'reasonable litigation costs' to include . . . expert witnesses. *Fuller*, 21 P.3d at 80-81. However, the court in *Cullen* did not interpret the phrase "reasonable litigation costs," as an electronic search of the decision for the phrase "reasonable litigation costs" returns no hits. Instead, in *Cullen*, a class action for fraud, the court awarded fees for expert witnesses without citation to *any* authority. *Cullen,* 97 F.R.D. at 151.

*Fuller* ignored and didn't attempt to wrestle with the dictates of *Andress* that "[s]uch [expert] fees are only recoverable when specifically made so by statute." *Andress*, 773 P.2d at 1268. Moreover, the Oklahoma Legislature is fully aware of how to write a statute to provide for the recovery of expert witness fees. For example, in 66 O.S. § 55, which is related to railroad condemnation proceedings, it provides for recovery of "reasonable attorney, appraisal, engineering, and expert witness fees actually incurred because of the condemnation proceedings." 66 O.S. § 55(D). This statute provides the specificity demanded by *Andress*, Section 1101.1(B) does not.

Valero also cites *SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d 1058, 1206 (N.D. Okla. 2020) in support of its quest for expert witness fees under Section 1101.1(B). In *SFF-TIR*, defendants sought to recover expert witness fees under Section 1101.1(B) and *Fuller*. Without any analysis of the phrase "reasonable litigation costs" as found in Section 1101.1(B) in the context of a request for expert witness fees, the court, nevertheless, awarded expert witness fees. This is despite the court's statement that:

> The Court will not interpret reasonable litigation costs more broadly than the Supreme Court of Oklahoma has interpreted costs, because such a reading would contravene Oklahoma courts' strict construction of statutes that carve out exceptions to the American Rule.

*SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d at 1208. As the Oklahoma Supreme Court has yet to weigh in on whether expert witness fees are recoverable as "reasonable litigation costs" under Section 1101.1(B), the court in *SFF-TIR* ignored its own statement regarding its interpretation of reasonable litigation costs.

However, in addition to Section 1101.1(B) not specifically providing for the recovery of expert witness fees, the language of Section 1101.1(B) also indicates the Oklahoma Supreme Court would not interpret Section 1101.1(B) as providing for expert witness fees. Section 1101.1(B)(1) provides that, "An offer of judgment shall be deemed to include any costs and attorney fees *otherwise recoverable* unless it expressly provides otherwise." 12 O.S. § 1101.1(B)(1) [emphasis added]. Valero's offer of judgment excluded "any costs and attorney fees *otherwise recoverable* and accrued prior to the date of service of this Offer of Judgment." [Dkt. 593-2 at 2] The "otherwise recoverable" language on Section 1101.1(B)(1) refers to whatever authority existed for the recovery of attorney fees and costs with respect to the underlying claims. Here, that is only Section 940(A), which does not provide for the recovery of expert witness fees.

Since Sections 1101.1(B)(3) and (4) are intended as fee-shifting provisions, even when the underlying claims do not provide for attorney fees and costs to the prevailing party, the use of "reasonable litigation costs" is meant to mimic those costs that would be otherwise recoverable.[9] Otherwise, Valero would be positioned to receive a significant windfall. Under Section 940(A), it could not recover $1.114 million in expert witness fees, while it could recover those expert witness fees under Section 1101.1(B)(3). Had the Oklahoma Legislature intended

---

[9]   The phrase "reasonable litigation costs" only appears in the Oklahoma Statutes in Sections 1101.1(A)(3) and (4) and Sections 1101.1(B)(3) and (4). 12 O.S. § 1101.1(A)(3) and (4), 12 O.S. § 1101.1(B)(3) and (4).

17

expert witness fees to be a part of Section 1101.1's "reasonable litigation costs," it could have easily done so, as it had in the past in a different statute. It clearly chose not to here.

### B.    Non-Testifying Consultant.

Valero also seeks recovery of $26,503.85 "for fees paid to a non-testifying consultant retained by counsel that assisted Valero in this litigation." [Dkts. 318 at 21, 318-11 at ¶21] Valero again hides the ball claiming the "privileged invoices will be provided to the Court for in-camera review upon request." *Id*. Moreover, Valero makes no attempt to demonstrate that this expenditure falls under "reasonable litigation costs" in Section 1101.1(B). As this is apparently for a non-testifying expert consultant, it too should be denied.

### C.    Other Costs.

Valero seeks $344,502.56 in non-taxable costs under "reasonable litigation costs" in Section 1101.1(B) that it identifies as "other costs." Valero again relies on *Fuller* and *SFF-TIR.* These "other costs" can generally be characterized as including travel expenses (airfare, hotel, ground transportation), electronic discovery software, graphic consulting, shipping expenses, expedited trial transcripts, database hosting, video depositions, pro hac vice fees, Internet service, and meals.

As discussed *supra*, *Fuller* relies on the Internal Revenue Code, 26 U.S.C.A. § 7430(c)(1), and *Cullen*, yet *Cullen* cites no authority, much less any Oklahoma authority to award reasonable litigation costs under Section 1101.1. *Fuller* allows defendant to recover the costs for an enlarged exhibit under Section 1101.1 but otherwise does not deal with the types of "other costs" Valero seeks here and thus provides no support for Valero's request.

In *SFF-TIR*, defendant sought expert witness fees, deposition costs, hearing and trial transcripts, online legal research, and technology specialists as reasonable litigation costs under

18

Section 1101.1, relying on *Fuller*. The court categorically excluded online legal research and reduced the other costs. However, for the same reason that *Fuller* provides no support for Valero's request, neither does *SFF-TIR*, as it wholly relies on *Fuller*.

As with expert witness fees, the allowance of these non-taxable costs under "reasonable litigation costs" in Section 1101.1(B) results in a significant windfall for Valero. Under Section 940(A), Valero could not recover $344,502.56 in non-taxable costs because it only provides for the recovery of "court costs," while under Valero's position, it could recover those non-taxable costs under Section 1101.1(B)(3).

There is no evidence that the Oklahoma Legislature intended such a result. Valero's "other costs" are not recoverable under Section 1101.1(B).

## V.    Billing at Inappropriate Rates

Valero's requested hourly rates are unreasonable and not in line with the prevailing market rates for lawyers of comparable skill and experience practicing in the Tulsa and/or Northern/Eastern District areas. Attorneys from other areas and jurisdictions, such as those from Dowd Bennett, may receive higher rates in their area. However, this case was filed in the Eastern District of Oklahoma and the usual and the prevailing market rates in the relevant community should be applied. *Malloy v Monahan*, 73 F.3d 1012, 1018 (10th Cir 1996 ("The fee rates of the local area should be applied even when the lawyers' seeking fees are from another area." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir 1995) quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). A comparison of the hourly billing rates of key Dowd Bennett lawyers reveals a steep 65% increase in hourly billing rates beginning in 2026 for J. Bennett, M. Johnson, and M. Heinsz, and a modest increase of 4.9% for B. Barnes.

| Year | J. Bennett | M. Johnson | B. Barnes | M. Heinsz |
|------|-----------|-----------|-----------|-----------|
| 2023 | $410 | $410 | No billing. | $410 |
| 2024 | $422 | $422 | $422 | No billing. |
| 2025 | $422 | $422 | $422 | $422 |
| 2026 | $700 | $700 | $443 | $700 |

For just Bennett, Johnson, and Heinsz in 2026, the 65% increase in billing rates (net increase of $278/hour) on 897.1 hours through the last day of trial resulted in an increased in fees of $249,393.80. The increased rates for Dowd Bennett are not consistent with the usual and the prevailing market rates in the relevant community where the case was tried.

In contrast to rates charged by Dowd Bennett, Mr. Page, lead counsel for Lazy S, with 45 years of experience in northeastern Oklahoma and an emphasis on environmental litigation, charges $400 per hour. The rates charged by Dowd Bennett are excessive and should be reduced.

## VI.    The Use of Settlement Negotiations in Determination of Attorney Fees.

Valero seeks to use evidence of what occurred in settlement negotiations, specifically how much Lazy S claimed in attorney fees, in order to demonstrate that the attorney fees sought by Valero are reasonable. Valero relies on *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011), *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc*., 2019 WL 367788, at *4-5 (D. Kan. Jan. 30, 2019), *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co*., 2016 WL 7375307, at *4 (D. Colo. Dec. 20, 2016), and *Justice v. Crown Cork & Seal Co., Inc*., 2009 WL 10711012, at *1 (D. Wyo. Dec. 3, 2009). None of these cases support using what a party claimed as attorney fees as part of settlement negotiations in awarding attorney fees to the other party.

In *Ingram*, the court used settlement negotiations to measure the litigant's success for purposed of awarding the litigant attorney fees. The plaintiff in *Ingram* rejected a number of settlement offers and then received a jury verdict less than the settlement offers. The court

20

considered the plaintiff's limited success at trial in setting the plaintiff's attorney fee award. *Ingram*, 647 F.3d at 927.

In *Energy Intelligence*, the court denied attorney fees to the prevailing party because of its unreasonable litigating positions, especially related to settlement offers. *Energy Intelligence,* 2019 U.S. Dist. LEXIS 14632 at *11-12.

In *Cellport*, the prevailing party had rejected a settlement offer that approximately equaled what it ultimately recovered at trial, but it took five years of litigation after the rejected settlement offer to get to trial. The court found "this time and expense was largely unnecessary and unreasonable in view of the results obtained and the settlement offer that was made." *Cellport*, 2016 U.S. Dist. LEXIS 175791 at *13 (D. Colo. Dec. 20, 2016). The court essentially awarded only 10% of the attorney fees which occurred after the rejected settlement offer.

Finally, in *Justice*, yet another case of a court potentially using settlement negotiations to inform its decision on awarding attorney fees. "Here, the defendant has offered evidence of the offer to settle this case as evidence that would justify a reduction in an award of attorney's fees to Mr. Justice, a plaintiff who made high settlement demand and recovered substantially less at trial." *Justice v. Crown Cork & Seal Co*., 2009 U.S. Dist. LEXIS 143377, at *2 (D. Wyo. Dec. 2, 2009).

The common theme running through *Ingram*, *Energy Intelligence*, *Cellport*, and *Justice* is the use of settlement negotiations to reduce the award of the prevailing party because it had rejected settlement offers that exceeded what was recovered at trial. In no case cited by Valero has a court used a non-prevailing party's settlement demand to find that the prevailing party's attorney fees are reasonable.

21

**VII.    Valero's Conduct During the Hydrotest Phase of This Case Unnecessarily Multiplied Attorney Fees on Both Sides and Valero's Application Should be Adjusted Downward to Reflect Valero's Role in Causing Increased Attorney Fees.**

As thoroughly documented in its Motion to Compel [Dkt. 450 and 463] and its Motion for Finding of Spoliation and Sanctions [Dkt. 491 and 524], Valero's conduct from the onset of the hydrostatic test phase of this case was one of obstruction and hide the ball. From bogus claims of attorney-client privilege to hiding clearly relevant discovery that it only produced after a third-party identified it existed, such as the group text thread, Valero's actions increased Lazy S's attorney fees and its own attorney fees. Any attorney fee award to Valero should be reduced to reflect Valero's role in unnecessarily increasing its own attorney fees. Given Valero's extensive redactions of its billing records, Lazy S is unable to recommend amount to reduce such fees at this time.

**VIII.    Any Award from Lazy S's Pending Motion for Attorney Fees Should be Offset Against Any Award to Valero.**

After the Court granted Lazy S's Motion to Compel in full [Dkt. 465], Lazy S filed its Motion for Attorney Fees on December 19, 2025. [Dkt. 471] In it, Lazy S sought $48,022.50 in reasonable attorney fees. It was referred to Magistrate Snow "for final disposition pursuant to Title 28, United States Code, Section 636(b)(1)" on December 22, 2025. [Dkt. 472] As of today, it remains pending.

## CONCLUSION

Lazy S requests that with redactions and unrecoverable items, the starting point for Valero's Application is $1.7 million. It should only go down from there.

22

Respectfully submitted,

*/s/David P. Page*

David P. Page, OBA No. 6852
Charles R. Willing, OBA No. 15873
**Environmental Energy and**
**Natural Resources Advocates, PLLC**
1921 S Boston Ave
Tulsa, Oklahoma 74119
Telephone: 918.764.8984
Email:    dpage@eenradvocates.com
              cwilling@eenradvocates.com

- and -

Jeffery L. Carmichael
Robert Coykendall
Benjamin K. Carmichael
**Morris, Laing Law Firm**
300 N. Mead, Suite 200
Wichita, Kansas 67202
Telephone: (316) 262-2671
Email:    jcarmichael@morrislaing.com
              rcoykendall@morrislaing.com
              bcarmichael@morrislaing.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/David P. Page*

23